# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

EIGHT MILE STYLE, LLC; MARTIN
AFFILIATED, LLC,

          *Plaintiffs*,

v.

SPOTIFY USA INC.,

          *Defendant*.

Civil Case No. 19-CV-00736

Hon. Aleta A. Trauger

---

## SPOTIFY USA INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Kathleen M. Sullivan
Carey R. Ramos
Cory Struble
51 Madison Avenue, 22nd Floor
New York, NY 10010

Thomas C. Rubin
600 University Street, Suite 2800
Seattle, WA 98101

Robert P. Vance, Jr.
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

MAYER BROWN LLP

Allison Levine Stillman
Matthew D. Ingber
Rory K. Schneider
1221 Avenue of the Americas
New York, NY 10020

Andrew J. Pincus
Archis A. Parasharami
1999 K Street, N.W.
Washington, D.C. 20006

NEAL & HARWELL, PLC

Aubrey B. Harwell III
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203

*Counsel for Defendant Spotify USA Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER SPOTIFY, AND
        THIS DISTRICT IS AN IMPROPER VENUE FOR THIS CASE ................................... 3

        A.      Spotify Is Not Subject To General Jurisdiction In Tennessee .............................. 4

        B.      Spotify Is Not Subject To Specific Jurisdiction In Tennessee Or This
                District ................................................................................................................. 5

                1.      Spotify Has Not Purposefully Availed Itself Of Or Directed Its
                        Conduct Towards This State Or This District ............................................. 5

                2.      Plaintiffs' Claims Do Not Arise Out Of Spotify's Suit-Related
                        Contacts In Tennessee Or This District ...................................................... 7

                        a.      The presence of Spotify users in this forum does not justify
                                the assertion of specific jurisdiction .............................................. 7

                        b.      Spotify's other alleged contacts with Tennessee are not
                                suit-related and therefore also do not support specific
                                jurisdiction .................................................................................. 11

                3.      It Would Be Unreasonable To Exercise Specific Jurisdiction Here ........ 12

II.     ALTERNATIVELY, THE CASE SHOULD  BE TRANSFERRED TO THE
        SOUTHERN DISTRICT OF NEW YORK ................................................................ 13

        A.      Virtually All Of The Relevant Factors Support Transferring This Case To
                The Southern District Of New York ................................................................... 14

                1.      Plaintiffs' Choice Of Forum Is Entitled To Little, If Any,
                        Deference Given The Suit's, and Plaintiffs', Remote Connection
                        To This District ...................................................................................... 15

                2.      The Southern District Of New York Is More Convenient For All
                        Parties .................................................................................................... 16

                3.      Transfer Will Ensure The Convenience And Availability Of Party
                        And Non-Party Witnesses Alike ............................................................. 17

                4.      The Southern District Of New York Has An Interest In And The
                        Ability To Adjudicate This Matter ......................................................... 19

        B.      The Court Can Transfer Without Deciding Personal Jurisdiction Or Venue ...... 20

CONCLUSION ................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ...........................................................................9, 11

*Beydoun v. Wataniya Rest. Holding, Q.S.C.*,
    768 F.3d 499 (6th Cir. 2014) .............................................................................7, 8

*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002) ...............................................................................10

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017)........................................................................................4, 5

*Bridgeport Music, Inc. v. Still N The Water Publ'g*,
    327 F.3d 472 (6th Cir. 2003) .............................................................................6, 9

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*,
    137 S. Ct. 1773 (2017)........................................................................3, 9, 10, 11, 12

*Bulso v. O'Shea*,
    730 F. App'x 347 (6th Cir. 2018) ......................................................................5, 12

*Cap. Confirmation, Inc. v. Auditconfirmations, LLC*,
    2009 WL 2823613 (M.D. Tenn. Aug. 28, 2009) .......................................................6

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
    2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015).......................................................19

*City of Pontiac Gen. Emps. Ret. Sys. v. Wal-Mart Stores, Inc.*,
    2012 WL 12543462 (M.D. Tenn. July 25, 2012) ..................................................17

*Clayton v. Heartland Resources, Inc.*,
    2008 WL 2697430 (M.D. Tenn. June 30, 2008)....................................................20

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)....................................................................................1, 4, 5

*Devnani v. DKM Sols., Inc.*,
    2017 WL 4682273 (E.D. Mich. Oct. 18, 2017) ....................................................6, 8

*Ferrick v. Spotify USA Inc.*,
    2016 WL 11623778 (C.D. Cal. Oct. 26, 2016)....................................................1, 3, 14, 16

*Ficarelli v. Champion Petfoods USA, Inc.*,
    2018 WL 6832075 (M.D. Tenn. Dec. 28, 2018)....................................................4

*Fitness Quest, Inc. v. Inxstous*,
2009 WL 10688950 (N.D. Ohio Mar. 17, 2009) ......................................................8

*Flight Sols., Inc. v. Club Air, Inc.*,
2010 WL 276094 (M.D. Tenn. Jan 14, 2010).........................................................19

*J4 Promotions, Inc. v. Splash Dogs, LLC*,
2009 WL 385611 (N.D. Ohio Feb. 13, 2009) ...........................................................4

*Johnson v. UMG Recordings, Inc.*,
2018 WL 4111912 (M.D. Tenn. Aug. 29, 2018) ........................................15, 17, 19

*Livermore v. Engles*,
2010 WL 2220307 (E.D. Tenn. Mar. 31, 2010) ....................................................20

*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018) ..........................................................................11

*Memory Integrity, LLC v. Intel Corp.*,
2015 WL 632026 (D. Del. Feb. 13, 2015) ..............................................................19

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*,
8 F.3d 441 (7th Cir. 1993) ........................................................................................4

*Moses v. Bus. Card Express, Inc.*,
929 F.2d 1131 (6th Cir. 1991) ................................................................................14

*Neogen Corp. v. Neo Gen Screening, Inc.*,
282 F.3d 883 (6th Cir. 2002) ...................................................................................6

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1999)................................................................................................20

*S. Mach. Co. v. Mohasco Indus., Inc.*,
401 F.2d 374 (6th Cir. 1968) ...............................................................................5, 6

*Sacklow v. Saks Inc.*,
377 F. Supp. 3d 870 (M.D. Tenn. 2019)................................................................14

*Sanhua Int'l, Inc. v. Riggle*,
2019 WL 2088431 (S.D. Ohio May 13, 2019) ......................................................16

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007)................................................................................................20

iii

*Sony/ATV Music Publ'g LLC v. CAVS USA, Inc.*,
  2009 WL 2177110 (M.D. Tenn. July 21, 2009) ........................................................................9

*TailGate Beer, LLC v. Boulevard Brewing Co.*,
  2019 WL 2366948 (M.D. Tenn. June 5, 2019)..........................................................................4

*Theunissen v. Matthews*,
  935 F.2d 1454 (6th Cir. 1991) ..................................................................................................3

*Triple Up Ltd. v. Youku Tudou Inc.*,
  235 F. Supp. 3d 15 (D.D.C. 2017) ..........................................................................................12

*Walden v. Fiore*,
  571 U.S. 277 (2014)..........................................................................................................5, 7, 8, 9

*Wellgen Standard, LLC v. Maximum Legal Holdings, LLC*,
  2019 WL 1890589 (M.D. Tenn. Mar. 6, 2019) ......................................................................20

*Word Music, LLC v. Priddis Music, Inc.*,
  2007 WL 3231835 (M.D. Tenn. Oct. 30, 2007) ..................................................................9, 10

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980).................................................................................................................10

## STATUTES

17 U.S.C. § 115..............................................................................................................................16

28 U.S.C. § 1400.........................................................................................................................3, 4

28 U.S.C. § 1404............................................................................................................................14

# INTRODUCTION

In this case, two music publishers that are incorporated and headquartered in Michigan contend that an online music service incorporated in Delaware and headquartered in New York engaged in copyright infringement based on practices that occurred in New York.

Spotify denies that it is liable for copyright infringement. But as a threshold matter, this Court lacks personal jurisdiction over Spotify, and this District is an improper venue to hear this dispute. The Court should either dismiss the action or transfer it to the Southern District of New York—where personal jurisdiction and venue plainly exist.

Supreme Court precedent makes clear that Spotify is not subject to general jurisdiction here because—as a Delaware corporation headquartered in New York—it is not "at home" in Tennessee. *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014). Nor has Spotify engaged in purposeful conduct aimed at Tennessee—much less aimed at this District, as required by 28 U.S.C. § 1400(a)—that bears a connection to the claim sufficient to permit the exercise of specific jurisdiction. Although Plaintiffs allege that Spotify has users in Tennessee who have heard the works at issue, that fact does not distinguish this State or this District from every other forum in the country: Spotify users live in all 50 states, and any allegedly infringing activity was not aimed in particular at Tennessee (let alone this District). Accordingly, this lawsuit should be dismissed for lack of personal jurisdiction and improper venue.

That said, this Court need not resolve the personal jurisdiction and venue issues because it can, in the alternative, transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Federal courts routinely grant transfer motions without deciding questions of personal jurisdiction. In fact, a federal court recently did so in a class action involving similar allegations of copyright infringement against Spotify. *Ferrick v. Spotify USA Inc.*, 2016 WL 11623778 (C.D. Cal. Oct. 26, 2016) (transferring to Southern District of New York).

Transfer to the Southern District of New York is similarly warranted here: That is where Spotify is headquartered, where its challenged practices occurred, and where most of the relevant party and third-party witnesses are located. By contrast, no party is located in Tennessee, and no information relating to the key questions in this case—including whether the procedures followed by Spotify complied with the recently-enacted Music Modernization Act—is located here. These considerations weigh heavily in favor of transferring this case.

## BACKGROUND

Spotify is a popular digital music streaming service that allows users to stream music over the Internet to a range of devices, including their personal computers, tablets, and smartphones. *See* Compl. (Doc. 1) ¶¶ 7 & 39. Users create Spotify accounts and use software or applications downloaded to their devices to access content when they desire. Decl. of Anna Lundström ¶¶ 12-13. The catalog of content available is the same no matter where in the United States a user is located at the time he or she decides to access the service. *Id.* ¶ 14.

Spotify is a Delaware corporation headquartered in New York. Compl. ¶ 23. Spotify's New York office is by far its largest in the United States. Lundström Decl. ¶ 9. Employees of Spotify in New York are principally responsible for, among other things, taking steps necessary to comply with copyright law, including actions relating to licenses for musical compositions. *Id.* ¶ 15. Spotify is assisted by the Harry Fox Agency ("HFA"), its third-party licensing administrator for rights covering musical compositions in the United States and (though not a defendant) the subject of allegations in the Complaint. *See* Compl. ¶ 61. HFA is similarly headquartered in New York, and the HFA employees with whom Spotify principally communicates regarding licensing services are located in New York. Lundström Decl. ¶¶ 27-29.

Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC, a pair of music publishers

incorporated and headquartered in Michigan, allegedly own 243 musical compositions—most of which were written or co-written by the recording artist Eminem. Compl. ¶¶ 20-21, 35. Plaintiffs allegedly granted certain rights over those compositions to a third party, Kobalt Music Services America Inc. ("Kobalt"), a music publishing and rights management company based in New York. *Id.* ¶ 20; *see also* Decl. of Rory Schneider Ex. A (corporate entity record).

Plaintiffs allege that Spotify infringed the musical composition copyrights by making those compositions available without obtaining licenses and paying royalties. Compl. ¶¶ 52-75, 78-80. Plaintiffs recognize that the recent Music Modernization Act would prohibit virtually all of their requests for damages (*id.* ¶ 83), but they allege that the Act does not apply because it is unconstitutional and Spotify did not comply with its requirements (*id.* ¶¶ 1 & 9).

Plaintiffs purport to have opted out of *Ferrick*, an earlier class action involving similar allegations. Compl. ¶ 67. That case was originally brought in the Central District of California, but was transferred to the Southern District of New York. *Ferrick*, 2016 WL 11623778, at *6.

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER SPOTIFY, AND THIS DISTRICT IS AN IMPROPER VENUE FOR THIS CASE.

Plaintiffs bear the burden of establishing personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). There are two forms of personal jurisdiction. General, or "all-purpose," jurisdiction permits a court to "hear *any* claim against th[e] defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) ("*BMS*"). Specific, or "case-linked," jurisdiction exists only when the suit arises out of the defendant's contacts with the forum State. *Id.* As we explain below, Plaintiffs cannot meet their burden as to either form of personal jurisdiction.

Nor is venue proper in this District. Under 28 U.S.C. § 1400(a), "[c]ivil actions . . .

3

arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." That provision "requires district courts to consider a defendant's contacts with a particular judicial district in determining where that defendant may be found. A defendant's amenability to personal jurisdiction must relate to the judicial district in which the action was filed to place venue there under section 1400(a)." *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 445 (7th Cir. 1993).[1]

As we discuss below, Spotify's contacts are insufficient to establish personal jurisdiction in Tennessee—much less venue in this District.[2]

### A.    Spotify Is Not Subject To General Jurisdiction In Tennessee.

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general] all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. A "court may assert general jurisdiction over foreign . . . corporations" only "when their affiliations with the State are so 'continuous and systematic as to render them essentially at home in the forum State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). "The 'paradigm' forums in which a corporate defendant is 'at home,' are [its] place of incorporation and its principal place of business." *Id.* "Absent 'exceptional' circumstances," a "corporation will be considered 'at home' only in" those places. *Ficarelli v. Champion Petfoods USA, Inc.*, 2018 WL 6832075, at *3 (M.D. Tenn. Dec. 28, 2018). Here, Spotify is incorporated in Delaware and has its principal place of business in New York. Compl. ¶ 23. Nor is this an "exceptional case" in which Spotify's operations are so

---

[1]    *See also J4 Promotions, Inc. v. Splash Dogs, LLC*, 2009 WL 385611, at *26 (N.D. Ohio Feb. 13, 2009) (whether "copyright infringement claim is properly venued in the Northern District of Ohio depends upon whether Defendants . . . would be subject to personal jurisdiction in that district if it were a separate state") (citing *Milwaukee Concrete* and similar cases).

[2]    Because Tennessee's long-arm statute is coterminous with the due-process limits on personal jurisdiction, we focus exclusively on the latter. *See TailGate Beer, LLC v. Boulevard Brewing Co.*, 2019 WL 2366948, at *1 (M.D. Tenn. June 5, 2019).

4

"substantial and of such a nature as to render [it] at home" here. *Daimler*, 571 U.S. at 139 n.19.

Plaintiffs assert that Spotify "has continuous and systematic contacts within [this] District . . . such that it can be found to be essentially at home" here. Compl. ¶ 25. The premise that Spotify's contacts are "continuous and systematic" is mistaken; Spotify has few employees in its Nashville office. Lundström Decl. ¶ 23. But in any event, "'the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts; "'[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *BNSF*, 137 S. Ct. at 1559 (citation omitted). Spotify is only "at home" in New York and Delaware—not Tennessee.

**B.      Spotify Is Not Subject To Specific Jurisdiction In Tennessee Or This District.**

Spotify also is not subject to specific jurisdiction here. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). For specific jurisdiction to exist: (1) a defendant "must purposefully avail [it]self of the privilege of acting in" or "causing a consequence in" Tennessee; (2) "the cause of action must arise from [its] activities" in Tennessee; and (3) "the acts of" "or consequences caused by the defendant must have a substantial enough connection with [Tennessee] to make the exercise of jurisdiction . . . reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *see also Bulso v. O'Shea*, 730 F. App'x 347, 349 (6th Cir. 2018) (citing *Mohasco*). Most significantly, "the defendant's suit-related conduct" must "create a substantial connection with the forum State." *Walden*, 571 U.S. at 283-84. Plaintiffs cannot establish a sufficient connection between Spotify's suit-related conduct in Tennessee—much less this District—and their claim.

**1.      Spotify Has Not Purposefully Availed Itself Of Or Directed Its Conduct Towards This State Or This District.**

Plaintiffs' assertion that this Court can exercise specific jurisdiction over Spotify appears

to rest principally on the fact that "Spotify provides its interactive streaming service and platform to individuals in Tennessee and Tennessee residents," some of whom Plaintiffs allege "have used such platform to stream the Infringed Works at issue in this case." Compl. ¶ 28. "As a result," Plaintiffs assert, "the brunt of the harm caused by Spotify's actions is felt in Tennessee." *Id.* ¶ 31. But Plaintiffs' contentions are both legally and factually incorrect.

*First*, Spotify has not "purposefully availed [it]self of the privilege of acting in" Tennessee (let alone this District). *Mohasco*, 401 F.2d at 381. "Purposeful availment is 'something akin to a deliberate undertaking,' that is, a deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum." *Cap. Confirmation, Inc. v. Auditconfirmations, LLC*, 2009 WL 2823613, at *5 (M.D. Tenn. Aug. 28, 2009) (quoting *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003)). For "intentional tort" claims like copyright infringement, "the purposeful availment analysis [assesses] whether the defendant's conduct was 'purposefully directed' or 'expressly aimed' at the forum state." *Devnani v. DKM Sols., Inc.*, 2017 WL 4682273, at *6 (E.D. Mich. Oct. 18, 2017). That Spotify's service is available to users across the country (including in this District) does not mean that Spotify has specifically directed or aimed its activities toward this District.

Making a website available to residents in the forum cannot alone constitute purposeful availment because the website's operator "is no more benefiting from the laws of [the forum] than from the laws of any other state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). "[T]he plaintiff must show that the defendant engaged in some sort of intended, deliberate activity with the forum state, beyond the operation of a generally accessible, interactive commercial website." *Cap. Confirmation*, 2009 WL 2823613, at *7.

Plaintiffs cannot make that showing here. All that Spotify does when it makes content

available—to users in Tennessee and every other part of the country—is operate a generally accessible, Internet-based service. Spotify makes content available for users, and the music catalog remains the same in the United States no matter from where or how content is accessed. Lundström Decl. ¶¶ 11, 14. That residents of Tennessee (and this District in particular) may subscribe to Spotify's service—and that some may have used it to access the compositions at issue—neither differentiates Tennessee (or this District) from every other State (or judicial district) nor establishes Spotify's purposeful direction of conduct here.

*Second*, the notion that Spotify "cause[d] a consequence" in Tennessee (or this District) is nonsensical; the entities whose rights were supposedly infringed have no presence here. As explained below, any alleged harm would have been felt (if at all) in Michigan. *See* p. 8 *infra*.

> **2.      Plaintiffs' Claims Do Not Arise Out Of Spotify's Suit-Related Contacts In Tennessee Or This District.**

This Court lacks personal jurisdiction—and venue is improper here—for the independent reason that Spotify's contacts with Tennessee (and this District) lack a "substantial connection" to the claim, and thus are not sufficiently "suit-related" to support personal jurisdiction and venue. *Walden*, 571 U.S. at 284. "To satisfy the 'arising from' prong . . . the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 506-07 (6th Cir. 2014). "More than mere but-for causation is required to support a finding of personal jurisdiction"; "the plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state." *Id.* at 507-08. Plaintiffs cannot meet this standard.

> **a.      The presence of Spotify users in this forum does not justify the assertion of specific jurisdiction.**

Plaintiffs allege that Spotify has a number of users in Tennessee who supposedly listened to the music at issue. But even assuming (without conceding) that at least some users accessed

7

recordings of some of the compositions here, the same assumption would apply equally to every other State and federal judicial district in the Nation. The presence of such users here is an insufficient basis on which to exercise specific jurisdiction for multiple reasons.

*First*, Plaintiffs' theory is that Spotify infringed their copyrights by failing to obtain licenses that they say were needed to make the musical works available. But none of Spotify's licensing-related activities took place in Tennessee. Lundström Decl. ¶ 19. Those are the activities that give rise to Plaintiffs' claim. That Tennessee users may have accessed recordings of the works is not even a "but-for" cause, much less a "proximate[] cause[]" (*Beydoun*, 768 F.3d at 508), of Plaintiffs' claim. Surely Plaintiffs would not drop their entire claim if (for example) all Eminem listeners lived outside of Tennessee.

*Second,* no harm was experienced in Tennessee because Plaintiffs do not reside here. To be sure, because the "*defendant's* conduct" is what matters (*Walden*, 571 U.S. at 285 (emphasis added)), the fact that the *effects* of that conduct are felt in a particular State is not sufficient to confer jurisdiction. In fact, *Walden* "forecloses [any] theory of personal jurisdiction based [solely] on the argument that jurisdiction is proper where a plaintiff felt the effects of a defendant's actions." *Devnani*, 2017 WL 4682273, at *10. But the location of the alleged harm is nonetheless *relevant* to whether specific jurisdiction is permissible—and here, any harm that may have been caused by the alleged infringement would be felt (if at all) in Michigan, where Plaintiffs are located. *See Fitness Quest, Inc. v. Inxstous*, 2009 WL 10688950, at *5 (N.D. Ohio Mar. 17, 2009) (stating that injury caused by copyright infringement is felt where the plaintiff is located). Accordingly, the case for finding the necessary "substantial connection" to Tennessee is weakened substantially by the fact that Plaintiffs are not even Tennessee residents.

*Third*, the contacts with Tennessee on which Plaintiffs rely are generated by users—not

8

by Spotify. Spotify provides an online service that is accessible only when a person chooses to become a user. Lundström Decl. ¶¶ 12, 13. But "it is the *defendant's* conduct that must form the necessary connection with the forum State." *Walden*, 571 U.S. at 285 (emphasis added). And as the Seventh Circuit has explained, "the operation of an interactive website does not show that the *defendant* has formed a contact with the forum state." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014).

*Fourth*, any attempt by Plaintiffs to rely on earlier cases in which courts in this District have exercised jurisdiction over out-of-state defendants based at least in part on their distribution of copyrighted material to Tennessee residents through generally available websites would be misplaced: Those decisions are either distinguishable or inconsistent with subsequent binding precedent—or both. For starters, most involved plaintiffs who resided in Tennessee, and the courts considered it highly significant that the consequences of the alleged infringement were thus felt in Tennessee.[3] That factor is wholly absent here because Plaintiffs have no apparent connection to Tennessee (beyond their counsel being located here). *See BMS*, 137 S. Ct. at 1782 (citing fact that "plaintiffs are not [forum] residents and do not claim to have suffered harm in that State" in holding that a substantial connection between the forum and claims was missing).

Moreover, those decisions applied a "lenient" approach to assessing the sufficiency of the

---

[3]     *See Sony/ATV Music Publ'g LLC v. CAVS USA, Inc.*, 2009 WL 2177110, at *7 (M.D. Tenn. July 21, 2009) ("Plaintiffs' allegations that [defendants] committed violations of copyright law by selling and soliciting sales of music recordings that infringe Plaintiffs' copyrights throughout the United States (including Tennessee), and that such sales caused them injury in Tennessee *where Plaintiffs conduct business*, is sufficient to meet the 'related to' prong." (emphasis added)); *Word Music, LLC v. Priddis Music, Inc.*, 2007 WL 3231835, at *9 (M.D. Tenn. Oct. 30, 2007) (same). And in *Bridgeport Music*, which involved non-resident plaintiffs, the Sixth Circuit held that there was purposeful availment based in part on Internet sales of copyrighted records to Tennessee customers, but it remanded to the district court to address whether the claims were sufficiently connected to the out-of-state company's forum contacts to permit jurisdiction. 327 F.3d at 484.

9

forum connection—an approach rejected by subsequent precedent. As one of those decisions put it, the "lenient standard" required only that "the operative facts [be] at least marginally related to the alleged contacts between" the defendant and forum. *Word Music*, 2007 WL 3231835, at *9 (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). Yet that "lenient" approach is contrary to both the proximate-causation requirement the Sixth Circuit has since adopted and the Supreme Court's recent holding in *Walden* that the connection between the defendant's suit-related contacts and the forum must be "substantial" rather than "marginal[]." *See* p. 5 *supra*.

*Fifth*, federalism interests that are critical to the personal jurisdiction analysis weigh strongly against exercising specific jurisdiction here. "[R]estrictions on personal jurisdiction" do not simply confer "immunity from inconvenient or distant litigation"; instead, "the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *BMS*, 137 S. Ct. at 1780-81. Preventing "a State that may have little legitimate interest in the claims" from exercising jurisdiction serves "federalism interest[s]" by preserving each State's "sovereign power to try causes in their courts." *Id.* at 1780-81 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).

Here, the fact that Spotify has users in a State who may have accessed recordings of works owned by a non-resident does not give Tennessee any greater interest in regulating Spotify's out-of-state conduct than any other State. Subjecting companies like Spotify to jurisdiction for copyright infringement claims in every State would infringe the sovereignty of States (such as New York) that have a greater interest in regulating conduct within their borders.

Addressing an analogous situation, the Seventh Circuit held that a defendant was not subject to personal jurisdiction simply because it placed an allegedly trademark-infringing product announcement on an interactive website available to forum residents (some of whom

purchased the product). *Advanced Tactical*, 751 F.3d at 803. The court explained: "if having an interactive website were enough in situations like this one," then "there is no limiting principle— a plaintiff could sue everywhere." *Id*. As the Ninth Circuit put it even more recently in affirming a dismissal for lack of personal jurisdiction, when claims "'arise from' only the online activities that [defendant] aimed at the entire world"—such that "[defendant] can be haled into California merely on the basis of its universally accessible website"—"then . . . it can be haled into every state, and respectively, every online advertiser worldwide can be haled into California." *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018). "Such a result would violate the principles on which *Walden* and *Daimler* rest. Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." *Advanced Tactical*, 751 F.3d at 804.

That approach is antithetical not only to the concept of *specific* jurisdiction, but also to Congress's conscious choice, through 28 U.S.C. § 1400(a), to *further* restrict the venues in which defendants can be sued for copyright infringement to only those judicial districts where a defendant has sufficient contacts—rather than any judicial district within a State with sufficient minimum contacts. A statute that is designed to limit available venues should not be interpreted to allow plaintiffs an unlimited choice of venues.

> **b.** **Spotify's other alleged contacts with Tennessee are not suit-related and therefore also do not support specific jurisdiction**.

Plaintiffs identify two other contacts. But both are "forum contacts that are unrelated to th[e] claims" (*BMS*, 137 S. Ct. at 1781) and therefore cannot support specific jurisdiction.

*First*, Plaintiffs allege that Spotify "provides targeted ads to individuals in Tennessee and Tennessee residents, including those who have streamed the Infringed Works in Tennessee." Compl. ¶ 28. But the advertisements have nothing to do with Plaintiffs' claim of infringement,

11

which is based on the assertion that Spotify failed to obtain licenses before making certain compositions available on its service. That Spotify's users may also hear advertisements is wholly unrelated to, and certainly not a proximate cause of, Plaintiffs' copyright claim. Plaintiffs' reliance on the ads thus cannot support specific jurisdiction for the same reason that the Court in *BMS* held that "the bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State." 137 S. Ct. at 1783. Plaintiffs' allegations do not establish any relationship, and certainly not a sufficient relationship, between the ads and their claim. *See Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 27-28 (D.D.C. 2017) (finding that "[t]he existence of geographically-targeted advertisements [was] causally independent of the alleged availability of the films at issue" in copyright case).

*Second*, Plaintiffs allege that Spotify has maintained a Nashville office since 2013 and "hired top executives from within the music industry to head its streaming operations" there. Compl. ¶¶ 27 & 29. But any contacts that Spotify has through its Nashville office are also not "suit-related"—and therefore similarly cannot support personal jurisdiction or venue. None of the employees in that office, including the employees to whom the Complaint specifically refers (at ¶ 29), are responsible for licensing of compositions (or even the acquisition or distribution of content on the service). Lundström Decl. ¶¶ 23, 25.

### 3. It Would Be Unreasonable To Exercise Specific Jurisdiction Here.

Even if Spotify's contacts satisfy the first two requirements for specific jurisdiction, it would be unreasonable to exercise that jurisdiction here. "In determining reasonableness, [courts] examine three factors: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief." *Bulso*, 730 F. App'x at 351. All three factors highlight that exercising jurisdiction would be unreasonable here.

*First*, the burden on Spotify would be substantial. While Spotify has a modest presence

12

in Tennessee, that presence has nothing to do with the claim here. Spotify would accordingly still experience the considerable cost and inconvenience of defending in a distant jurisdiction. Moreover, exercising specific jurisdiction here would necessarily subject online businesses to copyright infringement actions in any judicial district in the United States where a plaintiff chose to sue. It is unreasonably burdensome—and anathema to the very purpose of the due process limitations on personal jurisdiction—to require that Spotify defend itself anywhere that a plaintiff chooses, including forums with no apparent interest in the parties or their dispute.

*Second*, Tennessee lacks a particular interest in the dispute. As already discussed, it has no substantial connection to the claim because Spotify did not engage in any of the challenged conduct here. Allowing Tennessee to exercise jurisdiction would allow every state in the Nation to displace the authority of states like New York with a much greater interest. *See* p. 10 *supra*.

*Third*, for the same reasons, Plaintiffs have no legitimate need to obtain relief in this District (as opposed to other appropriate forums). Even if Spotify's alleged suit-related conduct did generate adequate minimum contacts with Tennessee (*but see* Part I.B.1 & I.B.2 *supra*), the connection is far too insubstantial to deem jurisdiction here "reasonable."

* * *

Because the Court cannot exercise either general or specific jurisdiction, this case should be dismissed for lack of personal jurisdiction and improper venue.

## II. ALTERNATIVELY, THE CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK.

This Court need not reach questions of personal jurisdiction and venue, because it has the power instead to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). That District is a far more convenient and appropriate forum for this litigation.

13

### A. Virtually All Of The Relevant Factors Support Transferring This Case To The Southern District Of New York.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Plaintiffs indisputably could have instituted this federal copyright case in the Southern District of New York, because Spotify is subject to general jurisdiction there.

In assessing whether to transfer under Section 1404(a), the Sixth Circuit has explained that the relevant considerations include "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systematic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

Chief Judge Crenshaw has recently detailed a series of factors that should be applied in assessing private and public interests:

> Private interests include: (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum. Public interests include the enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law.

*Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019) (citations omitted).

Assessing equivalent factors, a federal judge in the Central District of California transferred to the Southern District of New York a putative class action against Spotify involving copyright-infringement claims similar to those here. *See Ferrick*, 2016 WL 11623778, at *6. The case for transfer of this lawsuit is even stronger because, unlike in that class action, none of the plaintiffs here even reside in the forum. Virtually all of the relevant factors support transfer.

14

### 1. Plaintiffs' Choice Of Forum Is Entitled To Little, If Any, Deference Given The Suit's, and Plaintiffs', Remote Connection To This District.

Plaintiffs presumably will argue that their choice of forum deserves deference. But "although a plaintiff's choice of forum normally carries 'substantial weight,' that is not the case when the plaintiff does not live in the forum and the action has a limited connection to it." *Johnson v. UMG Recordings, Inc.*, 2018 WL 4111912, at *9 (M.D. Tenn. Aug. 29, 2018) (citation omitted). Here, the same considerations afford Plaintiffs' choice of forum only "minimal weight in this analysis." *Id.* at *9.

Neither Plaintiff is incorporated or has its principal place of business in—or, for that matter, appears even to have offices in—this District or Tennessee: Both are *Michigan*-based music publishers, whose supposed injury (if one occurred) would have been felt in Michigan. *See* Compl. ¶¶ 20-21; *see* p. 8 *supra* (harm from infringement occurs where rights held).

Nor do their claims have a legitimate connection to Tennessee arising from some other source: To be sure, Plaintiffs allege (at Compl. ¶ 31) that Spotify has users in Tennessee who have listened to the works at issue. But that unexceptional fact does not support allowing the case to proceed here. Spotify has users in every state. Plaintiffs, as alleged owners of compositions (not users of Spotify's service), allege that Spotify failed to obtain copyright licenses and pay royalties—failures that, if they happened, happened in New York, where Spotify's licensing and royalty-payment activities take place.

In a similar situation—where the only connection between an out-of-state plaintiff's misappropriation claim and this District was "that a fraction of [the defendant's] nationwide sales of the allegedly misappropriated products were made in Nashville"—this Court concluded that the connection was "limited" and ultimately transferred the case elsewhere. *Johnson*, 2018 WL 4111912, at *9. For the same reasons, transfer is equally warranted here.

15

### 2. The Southern District Of New York Is More Convenient For All Parties.

This District is not a convenient forum for any of the parties. True, Spotify has a small office in Nashville, but no Spotify employees with knowledge and experience concerning the company's acquisition of mechanical licenses—that is, no employees who work in "the primary business department implicated" by copyright claims (*Ferrick*, 2016 WL 11623778, at *4)—are based there. *See* Lundström Decl. ¶¶ 23, 24. And for their part, Plaintiffs are both incorporated and have their principal places of business in Michigan. *See* Compl. ¶¶ 20-21. Perhaps they chose this District because their *counsel* has his office here. But "the convenience of counsel is not a factor to be considered when ruling on motion for transfer." *Sanhua Int'l, Inc. v. Riggle*, 2019 WL 2088431, at *6 (S.D. Ohio May 13, 2019) (collecting cases).

By contrast, the Southern District of New York is a far more convenient forum in which to litigate this dispute. Spotify's U.S. headquarters are in New York. Lundström Decl. ¶ 8. Its employees there include individuals with knowledge about and responsibility for the practices at issue in this lawsuit. Some of the most central issues in this case—including whether Spotify licensed the compositions at issue and, if not, whether Plaintiffs can obtain any damages other than statutory royalties (*see* 17 U.S.C. § 115(d)(10)(B))—will focus on Spotify's practices regarding licensing and royalty payments. Most of the Spotify employees with knowledge concerning those practices are in New York—and none are in Tennessee. Lundström Decl. ¶¶ 15-19. Relevant Spotify documents in the United States are also most likely to be in the possession of these employees, and would therefore be collected and reviewed at Spotify's New York office. Thus, it would be far more convenient for Spotify to defend, and for Plaintiffs to prosecute, this lawsuit in the Southern District of New York.

16

### 3. Transfer Will Ensure The Convenience And Availability Of Party And Non-Party Witnesses Alike.

The Southern District of New York would also be more convenient for individual witnesses. Though "[t]he convenience of party witnesses, or witnesses who are employed by a party, weighs less than the convenience of non-party witnesses . . . , [it] is still a factor in the analysis." *Johnson*, 2018 WL 4111912, at *6. And as the discussion above shows, that factor favors transfer because neither party will have witnesses here, and Spotify's witnesses will mainly be in, or close to, the Southern District of New York.

Moreover, the location of *non-party* witnesses weighs decisively in favor of transfer. "Convenience of [such] non-party witnesses . . . is one of the most important factors in the transfer analysis." *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, 2012 WL 12543462, at *1 (M.D. Tenn. July 25, 2012). Here, the potentially relevant non-party witnesses we have identified at this stage are located outside this District, and the Southern District of New York would be more convenient for most, if not all, of them.

*Former Spotify Employees.* Several former Spotify employees who still reside in New York may be knowledgeable about Spotify's licensing practices and royalty payments during the time they worked at the company, including: Stefan Blom, Spotify's former Chief Content Officer and Chief Strategy Officer; Kenneth Parks, Spotify's former Chief Content Officer; James Duffett-Smith, Spotify's former Head of Publisher Relations; Annika Goldman, Spotify's former Director of Music Publishing; and Adam Parness, Spotify's former Global Head of Publishing. Lundström Decl. ¶ 18.

*European Employees of Spotify Affiliates.* In addition, one employee of Spotify Limited—Spotify's affiliate in the United Kingdom—is knowledgeable about Spotify's licensing of musical compositions in the United States and/or the Spotify-HFA relationship. Lundström

17

Decl. ¶¶ 15, 26. To the extent that the UK-based witness might need to appear in connection with this litigation, it would be more convenient if it proceeds in New York. Flights from London to New York are shorter and more plentiful, and Spotify is better able to host a foreign employee of its affiliates there.

Moreover, potential witnesses from other third parties are similarly located in New York.

*HFA*. HFA, which serves as Spotify's third party licensing administrator for mechanical rights in the United States, is headquartered in New York. Lundström Decl. ¶ 27. Plaintiffs allege that HFA plays an important role. For example, they allege that Spotify did not engage in commercially reasonable efforts to match musical compositions because HFA's system was purportedly deficient. Compl. ¶ 62. Plaintiffs also allege that HFA's knowledge should be imputed to Spotify. *Id.* ¶¶ 3, 16. Spotify disagrees with the substance of Plaintiffs' allegations, but they show that HFA employees in New York (*see* Lundström Decl. ¶ 29) will have documents and provide testimony that is relevant to Plaintiffs' claims and Spotify's defenses.

*Kobalt*. The testimony of and documents from employees of Kobalt, a music publishing and rights management company, will be highly relevant as well. Plaintiffs admit that they "conveyed certain limited rights" to Kobalt, including the "right to receive income arising from licenses" for the compositions at issue. Compl. ¶ 20. Plaintiffs allege that Kobalt "does not have the right or ability to license Eight Mile compositions for digital mechanical licenses" because they "specifically reserved" that right for themselves. *Id.* Again, Spotify disagrees with that allegation; it can show that Kobalt in fact did convey rights to Spotify. No matter what, though, Kobalt's role is relevant to Plaintiffs' claims and Spotify's defenses. And although Plaintiffs do not indicate where the Kobalt employees with whom they contracted are located, Kobalt's U.S. operations are headquartered in New York (*see* p. 3 *supra*), and its employees would

18

undoubtedly find it more convenient to testify there than here.

Indeed, the location of third-party witnesses is not simply a matter of convenience; those witnesses may also be outside this Court's subpoena power under Rule 45(c). If any third-party witness proves unwilling to appear or provide documents, retaining the case here could hamper access to critical information. *See, e.g.*, *Flight Sols., Inc. v. Club Air, Inc.*, 2010 WL 276094, at *4 (M.D. Tenn. Jan 14, 2010) (noting, in granting transfer, that this Court "would lack the power to subpoena the witnesses for trial if they refuse to testify").

### 4. The Southern District Of New York Has An Interest In And The Ability To Adjudicate This Matter.

The Southern District of New York also has a greater interest in adjudicating this matter than this District (to the extent this District has any identifiable interest). To start, New York has a "local interest" in claims against a corporation headquartered there. *See Johnson*, 2018 WL 4111912, at *8 (recognizing interest in transferring case to forum where defendant was at home).

What is more, the Southern District of New York has already considered the *Ferrick* case, which raised many of the same issues. The plaintiffs in that case alleged (like Plaintiffs here) that Spotify lacked licenses for musical compositions that it made available on its service. *See* Consolidated Complaint, *Ferrick v. Spotify USA Inc.*, No. 15-cv-9929 (C.D. Cal. June 27, 2016), ECF No. 75. In approving the class settlement in *Ferrick* after the case was transferred, the court necessarily weighed the merits of the copyright claims at issue.[4]

---

[4]     Plaintiffs have noted that four other cases that were filed by other plaintiffs who alleged that they opted out of *Ferrick* were litigated in this District. *See* ECF No. 19 at 1-2. But courts generally decline to consider whether a defendant has previously litigated in a particular district because Section 1404(a) requires a case-by-case analysis. *See, e.g.*, *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *5 (S.D.N.Y. Apr. 30, 2015) (declining to "consider [defendant's] prior course of litigation in this District in assessing [convenience] factor" because "motions for transfer are determined . . . on a case-by-case basis"); *Memory Integrity, LLC v. Intel Corp.*, 2015 WL 632026, at *3 (D. Del. Feb. 13, 2015) (fact that defendant had previously

19

**B.       The Court Can Transfer Without Deciding Personal Jurisdiction Or Venue.**

"[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).   "[W]hen considerations of convenience, fairness and judicial economy so warrant," a court may "bypass[] questions of subject-matter and personal jurisdiction" to decide that "the merits of a case should be adjudicated elsewhere"—in *Sinochem*, by dismissing on *forum non conveniens* grounds.  *Id.* at 432.

This Court thus need not resolve a motion to dismiss for lack of personal jurisdiction and improper venue before deciding whether to transfer the case to another district under 28 U.S.C. § 1404(a).  When the issue of transfer is easily resolved, courts in this District and elsewhere have exercised their discretion to do so.  In *Clayton v. Heartland Resources, Inc.*, 2008 WL 2697430 (M.D. Tenn. June 30, 2008), for example, this Court declined to address the personal jurisdiction issue presented there because "the relevant considerations under § 1404(a) strongly favor[ed] transfer."  *Id.* at *1; *see also Wellgen Standard, LLC v. Maximum Legal Holdings, LLC*, 2019 WL 1890589, at *2 (M.D. Tenn. Mar. 6, 2019) (addressing transfer before personal jurisdiction); *Livermore v. Engles*, 2010 WL 2220307, at *1 (E.D. Tenn. Mar. 31, 2010) (same). The reasons for transferring this case to the Southern District of New York are just as strong.

## CONCLUSION

The Court should dismiss this case for lack of personal jurisdiction and improper venue or, in the alternative, transfer the case to the Southern District of New York.

---

filed suit in the district was "irrelevant to the transfer analysis in this case" because "§ 1404(a) requires individualized, case-by-case consideration of convenience and fairness").

Dated: October 28, 2019

Respectfully Submitted,

By: */s/ Aubrey B. Harwell III*

Kathleen M. Sullivan (*pro hac vice*)
Carey R. Ramos (*pro hac vice*)
Cory Struble (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 895-2500
kathleensullivan@quinnemanuel.com
careyramos@quinnemanuel.com

Thomas C. Rubin (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, WA 98101
Telephone: (206) 905-7000
tomrubin@quinnemanuel.com

Robert P. Vance, Jr. (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
bobbyvance@quinnemanuel.com

Aubrey B. Harwell III (BPR #017394)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: (615) 238-3526
tharwell@nealharwell.com

Allison Levine Stillman (*pro hac vice*)
Matthew D. Ingber*
Rory K. Schneider (*pro hac vice*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
mingber@mayerbrown.com
astillman@mayerbrown.com
rschneider@mayerbrown.com

Andrew J. Pincus*
Archis A. Parasharami[†]
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3328
apincus@mayerbrown.com
aparasharami@mayerbrown.com

*Counsel for Defendant Spotify USA Inc.*
*application for pro hac vice admission pending
[†] application for admission to M.D. Tenn. Bar forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on October 28, 2019 with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

James F. Blumstein
Of Counsel
Vanderbilt University
131 21st Avenue South
Nashville, TN 37203
(615) 343-393
james.blumstein@vanderbilt.edu

Richard S. Busch
King & Ballow
315 Union Street
Suite 1100
Nashville, TN 37201
(615) 259-3456
rbusch@kingballow.com

Mark H. Wildasin
U.S. Attorney's Office (Nashville Office)
Middle District of Tennessee
110 Ninth Avenue
Suite A961
Nashville, TN 37203
(615) 736-2079
mark.wildasin@usdoj.gov

*/s/ Aubrey B. Harwell III*