IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EIGHT MILE STYLE, LLC; MARTIN AFFILIATED, LLC,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>SPOTIFY USA INC.,<br><br>　　　　　　　　　Defendant. | Case No. 3:19-cv-00736<br><br>District Judge Aleta A. Trauger<br><br>**JURY DEMAND** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO LIFT THE STAY OF DISCOVERY**

**AND**

**PLAINTIFFS' MOTION TO ALLOW DISCOVERY ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER (DOC. 47)**

**AND**

**PLAINTIFFS' MOTION TO EXTEND TIME TO RESPOND TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER (DOC. 47)**

## INTRODUCTION

Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC (collectively, "Plaintiffs" or "Eight Mile") submit this Memorandum in Support of Plaintiffs' Motion To Lift The Stay Of Discovery, To Allow Discovery On Defendant's Motion To Dismiss Or Transfer (Doc. 47), And To Extend Time To Respond To Defendant's Motion To Dismiss Or Transfer (Doc. 47) ("Eight Mile's Motion"). Eight Mile filed this action on August 21, 2019 in the Middle District of Tennessee. (Doc. 1). Eight Mile granted Defendant ("Spotify") an extension to October 28, 2019 to file a response to Eight Mile's Complaint. In turn, on October 28, 2019, Spotify filed a Motion

1

to Dismiss ("Spotify's Motion" or the "Motion"). (Doc. 47-48). Spotify has supported the Motion with the Declaration of Anna Lundström. (Doc. 50). Spotify filed the Motion claiming a lack of jurisdiction, even though it has spent the last two years litigating four nearly identical cases in this very Court, and even though Eight Mile therefore relied on Spotify's recognition of this Court's jurisdiction in those cases to decide to file this action in this Court. Not once during the course of two years of litigation did Spotify claim that Tennessee was in any way inconvenient, and Spotify did not challenge jurisdiction. As mentioned in prior submissions, it is clear that Spotify only raises these issues now because it was unhappy with this Court's rulings in those actions, and wants out of this Court for that reason. Furthermore, while Spotify attempts to have this case heard in the Southern District of New York, it conveniently fails to mention that the "Spotify Terms and Conditions of Use" requires disputes or claims to be resolved in the *Northern District of California*. Exhibit B. In other words, Spotify itself does not choose New York to be a convenient forum for it to litigate disputes. It is clear that Spotify's Motion is nothing more than an attempt to cause undue delay, forum shop, and avoid the resolution of this case on the merits.

Eight Mile opposes Spotify's Motion and requests that this Court: (1) lift the current Rule 26(d)(1) stay on discovery that is in place until the parties conduct a Case Management Conference; (2) allow Eight Mile 90 days to conduct jurisdictional discovery to oppose Spotify's Motion; and (3) extend Eight Mile's response deadline to Spotify's Motion from November 12, 2019, to twenty (20) days after the parties complete jurisdictional discovery. Eight Mile respectfully asserts that the requested jurisdictional and venue discovery will show, consistent with the law discussed below, which was essentially ignored by Spotify in the Motion, that Spotify is indisputably subject to this Court's jurisdiction, and that there is no reasonable basis to transfer this action to New York.

2

**ARGUMENT**

**I.    DISCOVERY SHOULD GO FORWARD PENDING SPOTIFY'S MOTION**

On August 21, 2019, pursuant to this Court's standard notice setting Case Management Conference, discovery was stayed pursuant to Fed. R. Civ. P. 26(d), until the conducting of the initial Case Management Conference. (Doc. 5). On October 28, 2019, pursuant to an extension of time agreed to by Eight Mile, Spotify filed the Motion. (Doc. 47). On October 29, 2019, this Court Ordered that the Case Management Conference, previously scheduled for November 4, 2019, be continued and reset, if appropriate, following disposition of Spotify's Motion. (Doc. 54).

As discussed below, Eight Mile must conduct jurisdictional and venue discovery prior to the initial Case Management Conference in order to adequately and fully present to the Court all the relevant facts for consideration of Spotify's Motion. Local Rule 16.01(g) of this Court creates a presumption in favor of proceeding with discovery even while a motion to dismiss is pending. *See* L.R. 16.01(g) ("Discovery is not stayed, including during the pendency of dispositive motions, unless specifically authorized by Fed. R. Civ. P. 26(d) or by order of the Court, or with regard to e-discovery, as outlined in Administrative Order 174-1.").

It is also well established in case law that a motion to dismiss for lack of personal jurisdiction does not support a stay of discovery. *See Bolletino v. Cellular Sales of Knoxville, Inc.*, 2012 U.S Dist. LEXIS 112132, at *5 (E.D. Tenn. Aug. 9, 2012) (When considering stays on discovery for motions to dismiss based on alleged lack of jurisdiction, "Courts in the Sixth Circuit have found that such motions do not support staying discovery."); *DSM Desotech, Inc. v. Momentive Specialty Chems., Inc.*, 2015 U.S. Dist. LEXIS 15, at *31 (S.D. Ohio Nov. 24, 2015) (denying a stay of discovery and finding that "the merits-based discovery at issue will be available for use in any subsequent action, and granting a stay will only delay resolution of Plaintiffs'

3

claims"). Staying discovery is considered inappropriate because "[a]ny discovery taken while such a motion is pending would, of course, be available for the parties to use if the case is dismissed other than on the merits and then refiled in a Court where subject matter or personal jurisdiction is proper." *Charvat v. NMP, LLC*, 2009 U.S. Dist. LEXIS 96083, at *5 (S.D. Ohio Sep. 30, 2009).

"A court may authorize a party to take discovery before conducting a Rule 26(f) conference in the interests of justice." *Tennier Indus. v. Am. Recreation Prods., LLC*, 2013 U.S. Dist. LEXIS 138283, at *4 (E.D. Tenn. Sep. 26, 2013) (*citing* Fed. R. Civ. P. 26(d); *Arista Records, LLC v. Does 1-15*, 2007 U.S. Dist. LEXIS 97283, at *2 (S.D. Ohio May 17, 2007)). In order to make this determination, "[c]ourts within the Sixth Circuit require a showing of good cause in order to permit early discovery." *Id.* at *4 (*citing Arista Records*, 2007 U.S. Dist. LEXIS 97283, at *2; *Caston v. Hoaglin*, 2009 U.S. Dist. LEXIS 49591, at * 2 (S.D. Ohio June 12, 2009)). Eight Mile plainly meets this standard.

As discussed in detail below, good cause exists for allowing discovery to proceed prior to the Case Management Conference because it will move the case forward and allow Eight Mile the ability to respond to Spotify's Motion. *Tennier Indus.*, 2013 U.S. Dist. LEXIS 138283, at *4; s*ee* Fed. R. Civ. P. 26(d)*; Vittetoe v. Blount Cty.*, 2017 U.S. Dist. LEXIS 166835, at *4 (E.D. Tenn. Oct. 10, 2017); *see also Arista Records, LLC*, 2007 U.S. Dist. LEXIS 97283, at *2, 4, 7 (*citing Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.")). Additionally, permitting jurisdictional and venue discovery will not prejudice Spotify. Eight Mile therefore asks this Court to lift the standard stay of discovery currently in place prior to the Case Management Conference.

**II.     GOOD CAUSE EXISTS FOR JURISDICTIONAL AND VENUE DISCOVERY ON SPOTIFY'S CONTACTS WITH THE STATE OF TENNESSEE**

### A. Courts Generally Allow Jurisdictional Discovery When Additional Facts Are Needed To Determine Whether The Court May Exercise Personal Jurisdiction

It is well settled that jurisdictional discovery is routinely granted prior to a court deciding a motion to dismiss for alleged lack of jurisdiction. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (a court "may permit discovery in aid of the motion" challenging jurisdiction); *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (stating that, in deciding a motion to dismiss for lack of personal jurisdiction, a district court may "permit discovery in aid of deciding the motion"); *Telos Holdings, Inc. v. X5 Group AB*, 2008 U.S. Dist. LEXIS 29518, at *1 (M.D. Tenn. Apr. 10, 2008) (lifting stay and granting plaintiff's motion to conduct jurisdictional discovery).

In fact, the Sixth Circuit has made clear that if there are disputed issues of fact relevant to the determination of jurisdictional issues, jurisdictional discovery is required. *Drexel Chem. Co. v. SGS Depauw & Stokoe*, 1995 U.S. App. LEXIS 15760, at *7 (6th Cir. June 22, 1995) ("In order to resolve those issues, the district court should have allowed further discovery or held an evidentiary hearing."). When there is a concern as to the sufficiency of a defendant's in-forum conduct, "the best course of action is for the parties to engage in limited jurisdictional discovery on the issue of whether [a] [c]ourt has personal jurisdiction . . . " *Murtech Energy Servs., LLC v. ComEnCo Sys.*, 2014 U.S. Dist. LEXIS 85502, at *29 (E.D. Mich. June 24, 2014); *see also SFS Check, LLC v. First Bank of Del.*, 2013 U.S. Dist. LEXIS 80166, at *9 (E.D. Mich. June 7, 2013) (finding "the best course of action is to provide [p]laintiff with discovery on the limited issue of whether the [c]ourt has personal jurisdiction"); *Lindsey v. Cargotec USA, Inc.*, 2010 U.S. Dist. LEXIS 88492, at *4 (W.D. Ky. Aug. 25, 2010) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing

5

jurisdictional discovery unless the plaintiff's claim is clearly frivolous."). Jurisdictional discovery is warranted when "additional facts are likely available to assist the court in making the jurisdictional determination." *DSM Desotech, Inc.*, 2015 U.S. Dist. LEXIS 158632, at *27.

This Court has specifically found that jurisdictional discovery is appropriate when it is unable to make a jurisdictional ruling based on the pleadings. *See Telos Holdings, Inc.*, 2008 U.S. Dist. LEXIS 29518, at *2 (Trauger, J.) ("Because the court is unable to rule in the plaintiff's favor on the papers as they stand, it is hereby ORDERED that the stay of discovery is LIFTED so that the parties may engage in discovery relevant to specific personal jurisdiction only for sixty (60) days from the entry of this Order."); *Embraer Aircraft Maint. Servs. v. Aerocentury Corp.*, 2013 U.S. Dist. LEXIS 157647, at *11 (M.D. Tenn. Nov. 4, 2013) (Trauger, J.) (ordering "that the stay of discovery is lifted so that the parties may engage in discovery relevant to personal jurisdiction only for forty-five (45) days from the entry of this Order"). Here, additional facts are needed to determine whether this Court may exercise personal jurisdiction over Spotify, and an analysis would be incomplete if this Court were to determine jurisdiction based on the pleadings alone. By demonstrating Spotify's specific contacts and transactions with the State of Tennessee, there will be no doubt that Spotify is subject to the jurisdiction of this Court.

> **B. Spotify Has Continuous Contacts With The State Of Tennessee, And Jurisdictional Discovery Will Confirm That This Court May Exercise Specific Personal Jurisdiction Over Spotify and Venue is Proper**
>
> > **1. Spotify Attempts To Mislead The Court With Irrelevant Authority and By Misrepresenting The Facts of The Authority It Cites**

Here, Spotify has continuous contacts with the State of Tennessee, and discovery will remove any doubt that both jurisdiction and venue are proper in this Court. In Spotify's Motion, however, it has attempted to minimize the extent of its contacts with the State of Tennessee. Instead, it focuses on its nationwide contacts and that its service is available across the country. It

6

states that "[a]ll that Spotify does when it makes content available – to users in Tennessee and every other part of the country – is operate a generally accessible, Internet-based service." (Doc. 48 at 7). It claims that the presence of users in Tennessee is an insufficient basis for jurisdiction. **Spotify, however, has *neither cited to nor briefed for the Court the applicable law*.**[1] Spotify cites to *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002) to argue simply making a website available to residents of a forum does not constitute purposeful availment. Spotify fails to acknowledge, however, that in *Neogen*, the defendant's website consisted "primarily of passively posted information," and that the Sixth Circuit found personal jurisdiction proper still based on the defendant's other contacts with the state which were "more than random or fortuitous events." *Id*. at 890-92. Eight Mile has never alleged that Spotify simply making its website available to residents in Tennessee constitutes purposeful availment. Rather, as set forth fully herein, Spotify's operation of an interactive website in connection with its other contacts in Tennessee, which are more than random or fortuitous events, makes personal jurisdiction proper here.[2] Similarly, Spotify's citation to *Capital Confirmation, Inc. v. Auditconfirmations, LLC*, 2009 U.S. Dist. LEXIS 77440 (M.D. Tenn. Aug. 28, 2009) (Trauger J.) points to the court's discussion

---

[1] Spotify ignores important case law on specific jurisdiction relating to interactive websites that it certainly knows exists. Based on Spotify's rather absurd arguments in recent litigation in this District, this type of behavior is not shocking and is par for the course. Plaintiffs invite this Court to look back at Spotify's briefing over the past two years. For example, instead of moving to dismiss past cases for lack of jurisdiction or improper venue, Spotify chose to file a Motion for a More Definite Statement on August 30, 2017 in response to two Complaints filed against it in the Middle District of Tennessee, specifically, *Bluewater v. Spotify USA Inc.*, (Case No. 3:17-cv-01051); and *Gaudio v. Spotify USA Inc.*, (Case No. 3:17-cv-01052). Those motions, and just about every other motion filed by Spotify in those prior actions, were ultimately denied by Judge McCalla.

[2] Spotify alleges that it is "not subject to general jurisdiction here because—as a Delaware corporation headquartered in New York—it is not 'at home' in Tennessee." (Doc. 48 at 6). However, whether Spotify is "at home" in Tennessee, as well as its reliance on *Daimler,* is irrelevant and misplaced because Spotify is subject to specific jurisdiction.

7

on purposeful availment without identifying the many factual dissimilarities as compared to this case. In *Capital Confirmation*, the court found "no evidence that [defendant] has taken any specific, deliberate step to establish a substantial connection with Tennessee," including no indications that the defendant "marketed itself in Tennessee, had any Tennessee employees or agents, or that [defendant] has had any legitimate Tennessee customers." *Id*. at *26. The court highlighted that the defendant had nothing resembling a business relationship with Tennessee because no one from Tennessee "has legitimately sought out [defendant's] services and actually signed up for an account with [defendant] that he or she intended to use." *Id*. at *27. It is clear from Spotify's own admissions that it has marketed itself in Tennessee, has Tennessee employees, and has Tennessee customers with Spotify accounts, wholly distinguishing the facts here from those in *Capital Confirmation*.

Spotify has done nothing more than hide the true nature of its contacts with the State of Tennessee.[3] Based upon the actual law governing this issue, which Eight Mile has studied and

---

[3] Spotify has substantial contacts with the State of Tennessee, making it different from any other state. Spotify has maintained an office in Nashville, Tennessee, and has employed the State's residents since at least 2016. Its Tennessee employees include the Head of Artist & Label Marketing and the Manager in Artist & Label Marketing, who are responsible for developing and executing marketing campaigns which target the State's residents. (Doc. 50 at ¶¶ 24(b), (c)). Spotify targets the State's residents by advertising on billboards throughout the State and within Nashville. Furthermore, as set forth on Spotify's website, Spotify hosted "Spotify House" at a local restaurant and music venue during a popular music festival in Nashville, Tennessee, from June 6, 2019 to June 9, 2019. Numerous public press articles detail Spotify's intentional and ongoing efforts to expand its presence within the State. *See* Joseph Hudak, *How Spotify Is Trying to Take Over Nashville*, ROLLING STONE (Jan. 16, 2019 9:18 AM) https://www.rollingstone.com/music/music-country/spotify-streaming-country-music-nashville-779010/; Cherie Hu, *With Open House and New Hires, Spotify Shows Drive to Win Nashville's Support*, BILLBOARD (Dec. 22, 2017) https://www.billboard.com/articles/business/8078567/spotify-nashville-outreach-open-house-new-hires-country. Thus, Spotify has an intentional, continuous, and significant presence in the State targeting music consumers and transacts business within the State.

8

taken into account in preparing document requests, Eight Mile is confident that discovery will demonstrate that Spotify is subject to jurisdiction in this Court.

Indeed, as discussed below, Spotify attempts to distract from the issue and its significant presence, contacts, and the extent of its business transacted in Tennessee relating to the Eight Mile Compositions by stating that "[a]lthough Plaintiffs allege that Spotify has users in Tennessee who have heard the works at issue, that fact does not distinguish this State or this District from every other forum in the Country . . . ." (Doc. 48 at 6). Thus, Spotify is essentially contending that, despite operating a fully interactive website throughout the world, and in every jurisdiction in the United States, where it has committed massive copyright infringement on a daily basis for nearly the last ten years,[4] it is only subject to jurisdiction in one place in the United States: New York. That is not the law, and Spotify knows it. Spotify operates an interactive website, which allows users to download tracks, and choose the tracks to listen to. It is subject to jurisdiction where those tracks are infringed. Its market cap now exceeds $25 billion with footprints throughout the United States. Its goal essentially was to become the market leader, which it has done through infringement on a global scale. It cannot now complain that defending an infringement action in Tennessee is unreasonable. The correct specific jurisdiction analysis, which is not addressed by

---

[4] This is not hyperbole or speculation. Robert Levine, *Spotify Settles Class Action Lawsuits Filed By David Lowery and Melissa Ferrick With $43.4 Million Fund*, BILLBOARD.COM (May 26, 2017) https://www.billboard.com/articles/business/7809561/spotify-settles-class-action-lawsuits-filed-by-david-lowery-and-melissa; Ed Christman, *Spotify and Publishing Group Reach $30 Million Settlement Agreement Over Unpaid Royalties*, BILLBOARD.COM (Mar. 17, 2016) https://www.billboard.com/articles/business/7263747/spotify-nmpa-publishing-30-million-settlement-unpaid-royalties.

9

Spotify in its Motion, but discussed below, will reveal, once jurisdictional discovery is complete, that this Court may exercise jurisdiction over it.

### 2. The Relevant Case Law Demonstrates Why Jurisdictional Discovery Is Needed

Relevant case law demonstrates that this Court has jurisdiction over Spotify, and jurisdictional discovery will leave no doubt in the Court's mind that it may exercise jurisdiction in this case. The Court has found that the operation of an interactive website reaching customers in a forum may subject the defendant operating the website to the jurisdiction of that forum. *See Tailgate Beer, LLC v. Blvd. Brewing Co*, 2019 U.S. Dist. LEXIS 94271, at *10-11 (M.D. Tenn. June 5, 2019) (finding jurisdiction over the defendant when the defendant "ha[d] sold items to Tennessee residents and remains ready to do business with customers in Tennessee."). The court in *Tailgate Beer, LLC* noted that "[e]ven though Defendant's . . . sales to Tennessee residents may be relatively small in number (especially when compared to its overall sales volume), Defendant . . . has sold items to Tennessee residents and remains ready to do business with customers in Tennessee." *Id.* at *10-11. The court also cited, with approval, cases supporting the notion that infringement committed through the operation of an interactive website supports causes of action arising from the operation of the website reaching residents of the forum. *Id.* at *12-14.

"The Sixth Circuit has identified three levels of interactivity for Internet websites: '(1) passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to exchange information with the host computer.'" *Silent Events, Inc. v. Quiet Events, Inc.*, 2016 U.S. Dist. LEXIS 113026 (M.D. Tenn. Aug. 24, 2016) (*quoting See, Inc. v. Imago Eyewear, Ltd.*, 167 F. App'x. 518, 522 (6th Cir. 2006)). "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically

intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) (*citing Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ("intentional interaction with the residents of a forum state, the *Zippo* court concluded, is evidence of a conscious choice to transact business with inhabitants of a forum state in a way that the passive posting of information accessible from anywhere in the world is not")).

"[J]jurisdiction is more likely the greater the 'level of interactivity and commercial nature of the exchange of information that occurs' with the forum state." *MGM Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1087 (C.D. Cal. 2003) (*quoting Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). "[O]peration of a passive website is not adequate to establish personal jurisdiction over a defendant, whereas operation of an interactive, commercial website is often sufficient." *Rhapsody Int'l Inc. v. Lester*, 2014 U.S. Dist. LEXIS 23160, at *16-17 (N.D. Cal. Feb. 24, 2014).

In *Capitol Records, Inc. v. MP3tunes, LLC*, 2008 U.S. Dist. LEXIS 75329, at *12 (S.D.N.Y. Sep. 29, 2008), the court found that a defendant's contacts with the forum through its website were sufficient to support personal jurisdiction because the website provided software to users in the forum, transferred music to and from customers, and allowed users to exchange emails and postings. The court found that the website formed the basis of the plaintiff's claims, which were that "MP3tunes violates federal copyright law by enabling users to listen to infringing music through sideload.com, to make copies of infringing music to store in a 'locker,' and to download copies of music to multiple locations and to multiple individuals." Therefore, the court found that the defendant transacted business in New York and "has minimum contacts with New York such that the assertion of personal jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.* The basis of these transactions was that "[a]t least 400 New York users

11

engaged in approximately 950 paying transactions with MP3tunes" and, within a twelve-month period, "users with New York internet protocol ('IP') addresses played a song approximately 100,000 times and downloaded 189,000 music files from the mp3tunes.com website to the user's computer." *Id.* at *3-4.

If there is a question about a defendant's contacts with a forum through the operation of a website, jurisdictional discovery is appropriate. In *Victoria's Secret Stores Brand Mgmt. v. Bob's Stores LLC*, 2014 U.S. Dist. LEXIS 34503, at *2 (E.D. Ohio Mar. 17, 2014), the defendant did not have a store located in Ohio. The defendant, however, operated a website through which some of its products were made available to consumers. As noted by the court, "the crux of Plaintiff's claim that jurisdiction exists is that the website is 'highly interactive' and available to Ohio consumers." *Id.* at *3. The parties disputed whether the products were available for purchase on the defendant's website. Because there were disputed factual issues regarding defendant's website, the court found that jurisdictional discovery was warranted. *Id.* at *4. Thus, in *Victoria's Secret*, a dispute regarding whether products were made available to consumers on a defendant's website was sufficient to justify jurisdictional discovery.

In *Cobbler Nevada, LLC v. Doe*, 2015 U.S. Dist. LEXIS 160665, at *16 (E.D. Mich., Dec. 1, 2015), the plaintiffs sought early discovery of information regarding "Internet Service Providers ('ISP') associated with the Doe Defendants' IP addresses." The court allowed the discovery because the plaintiff had stated "a plausible claim for copyright infringement and specifically identified the discovery sought." *Id*. The court found the information necessary to prosecute the claims and that the information was otherwise unavailable.

In this case, the discovery Eight Mile proposes to take will address these issues among other relevant issues. Spotify has not disclosed the extent of its transactions with the State of

12

Tennessee. The information sought will not only reveal that Spotify is involved in much of the same business that supported jurisdiction in *Capitol Records, Inc. v. MP3tunes, LLC*, but Spotify has already admitted as much. As set forth in the Declaration of Anna Lundström supporting Spotify's Motion, Spotify's users "download Spotify software or applications to their personal computers or mobile devices." (Doc. 50 at ¶ 12). Spotify's users are able to "decide whether and when music is transmitted through the Spotify service to their devices." *Id.* at ¶ 13. "In order to play music using the Spotify service, users must first log on to the Spotify service through the Spotify application or website on their devices." *Id.* at ¶ 14. Thus, it is clear that Spotify's website is not merely a passive website, but is in fact a very interactive website and mobile app. Here, the level of interactivity and commercial nature of the information exchanged in Tennessee supports the Court's jurisdiction over Spotify. Jurisdictional discovery will solidify to the Court that jurisdiction is proper and likely reveal that Spotify directed substantial activity toward Tennessee with respect to the Eight Mile Compositions. *See MGM Studios Inc.*, 243 F. Supp. 2d at 1087.

The discovery Eight Mile proposes is designed to establish the nexus between Spotify's activity, the Eight Mile Compositions, and the State of Tennessee. For example, Plaintiffs will seek documents that identify users of Spotify's interactive streaming located in the State of Tennessee and Tennessee users who have streamed the Eight Mile Compositions. This information is directly relevant to jurisdiction of the Court. The court in *Capitol Records, Inc.* specifically found that the number of users in the forum and the number of transactions in the forum are relevant to the jurisdictional analysis. 2008 U.S. Dist. LEXIS 75329, at *12. Additionally, early discovery of this information is important as set forth in *Cobbler Nevada LLC*, 2015 U.S. Dist. LEXIS 160665, at *16. Eight Mile's Proposed First Set of Discovery Requests for Production of Documents that it intends to serve upon Spotify is attached hereto as Exhibit A.

As another example, Plaintiffs will seek information related to targeted advertising in the State of Tennessee by Spotify related to the Eight Mile Compositions. Such information is relevant in determining the extent Spotify targeted the State of Tennessee and perpetuated the infringement of the Eight Mile Compositions. *See MGM Studios Inc.*, 243 F. Supp. 2d at 1086 (considering geo-targeted advertising aimed at the forum for purposes of personal jurisdiction). Plaintiffs will also seek information related to sales revenue generated in Tennessee and by the exploitation of the Eight Mile Compositions. This will establish the extent of Spotify's business in the State of Tennessee related to the Eight Mile Compositions. This discovery is permissible because it will aid the Court in determining the jurisdiction issue. *See DSM Desotech, Inc.*, 2015 U.S. Dist. LEXIS 158632, at *27 (finding that "jurisdictional discovery is warranted as additional facts are likely to assist the court in making the jurisdictional determination"). Plaintiffs ask that the Court permit the parties to engage in jurisdictional discovery to allow Plaintiffs to discover facts that will leave no doubt that Spotify is subject to the jurisdiction of this Court, and that there is no basis to transfer this case anywhere.[5]

### III. GOOD CAUSE EXISTS FOR EXTENDING THE DEADLINE FOR RESPONDING TO SPOTIFY'S MOTION UNTIL JURISDICTIONAL AND VENUE DISCOVERY IS PRODUCED

Spotify's Motion was filed on October 28, 2019. (Doc. 47-48). Pursuant to Local Rule 7.01(a)(3), Eight Mile's opposition to Spotify's Motion would be due on November 12, 2019. For

---

[5] Pursuant to 28 U.S.C. § 1400, a civil suit for copyright infringement "may be instituted in the district in which the defendant or his agent resides or may be found." "It is widely accepted that, for the purposes of this venue provision, a defendant is 'found' wherever personal jurisdiction can be properly asserted against it." *Bridgeport Music v. Agarita Music*, 182 F. Supp. 2d 653, 659 (M.D. Tenn. 2002) (*citing Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207, 214 (S.D.N.Y. 1995)). The discovery being sought will also involve requests related to venue.

14

the reasons set forth above, Eight Mile hereby moves the Court for relief from the 14-day deadline as required by the local rules until the completion of limited jurisdictional and venue discovery.

It is not possible to conduct the requested discovery in the very limited time remaining under Local Rule 7.01(a)(3). Per Local Rule 6.01(a), Eight Mile respectfully requests that the Court grant an extension of time to oppose Spotify's Motion until twenty (20) days after Spotify has produced all jurisdictional discovery requested in the attached Exhibit A. Eight Mile anticipates that discovery requests, Spotify's responses, production, and a deposition if necessary, may take approximately ninety (90) days. Such a timetable is fair and largely in the hands of Spotify who holds and controls the information sought by Eight Mile's Motion. Failure to grant the extension to respond to Spotify's Motion would unduly prejudice Eight Mile who would be forced to oppose without the benefit of collecting evidence to rebut Spotify's claims.

Eight Mile requests that the Court adopt the following briefing schedule for Spotify's Motion:

| | |
|---|---|
| Eight Mile's Response: | 20 days after completion of jurisdictional discovery. |
| Spotify's Reply: | 7 days after Eight Mile's Response. |
| Eight Mile's Sur-Reply: | 5 days after Spotify's Reply with 10-page limit. |

## **CONCLUSION**

For the foregoing reasons, Eight Mile respectfully requests that the Court grant its Motion To Lift The Stay of Discovery, To Allow Discovery On Defendant's Motion To Dismiss Or Transfer (Doc. 47), And To Extend Time To Respond To Defendant's Motion To Dismiss Or Transfer (Doc. 47) and grant the extended briefing schedule as outlined directly above.

Dated: November 6, 2019  By: /s/ Richard S. Busch
Richard S. Busch (TN Bar # 14594)
KING & BALLOW

315 Union Street, Suite 1100
Nashville, TN 37201
Telephone: (615) 726-5422
Facsimile: (615) 726-5417
rbusch@kingballow.com
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Memorandum In Support Of Plaintiffs' Motion To Lift The Stay Of Discovery And Plaintiffs' Motion To Allow Discovery On Defendant's Motion To Dismiss Or Transfer (Doc. 47) And Plaintiffs' Motion To Extend Time To Respond To Defendant's Motion To Dismiss Or Transfer (Doc. 47) has been served upon the following parties in this matter using the ECF system this 6th day of November, 2019. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including the following:

NEAL & HARWELL, PLC
Aubrey B. Harwell III (BPR #017394)
Marie T. Scott (BPR # 032771)
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573
tharwell@nealharwell.com
mscott@nealharwell.com

Allison Levine Stillman*
Matthew D. Ingber*
Rory K. Schneider*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
mingber@mayerbrown.com
astillman@mayerbrown.com
rschneider@mayerbrown.com

Andrew J. Pincus*
Archis A. Parasharami*
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3328
apincus@mayerbrown.com
aparasharami@mayerbrown.com

Carey R. Ramos*
Kathleen M. Sullivan*
Cory Struble*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 895-2500
kathleensullivan@quinnemanuel.com
careyramos@quinnemanuel.com
corystruble@quinnemanuel.com


Thomas C. Rubin*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, WA 98101
Telephone : (206) 905-7000
tomrubin@quinnemanuel.com

Robert P. Vance, Jr.*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
bobbyvance@quinnemanuel.com

*Attorneys for Spotify USA Inc.*

                                                 /s/Richard S. Busch
                                                 *Attorney for Plaintiffs*