# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

EIGHT MILE STYLE, LLC; MARTIN
AFFILIATED, LLC,

*Plaintiffs*,

v.

SPOTIFY USA INC.,

*Defendant.*

Civil Case No. 19-CV-00736

Hon. Aleta A. Trauger

---

## SPOTIFY USA INC.'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL
## JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO
## TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Kathleen M. Sullivan
Carey R. Ramos
Cory Struble
51 Madison Avenue, 22nd Floor
New York, NY 10010

Thomas C. Rubin
600 University Street, Suite 2800
Seattle, WA 98101

Robert P. Vance, Jr.
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

MAYER BROWN LLP

Allison Levine Stillman
Matthew D. Ingber
Rory K. Schneider
1221 Avenue of the Americas
New York, NY 10020

Andrew J. Pincus
Archis A. Parasharami
1999 K Street, N.W.
Washington, D.C. 20006

NEAL & HARWELL, PLC

Aubrey B. Harwell III
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203

*Counsel for Defendant Spotify USA Inc.*

# TABLE OF CONTENTS

**Page(s)**

I.   SPOTIFY IS NOT SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN TENNESSEE OR THIS DISTRICT ................................................................................ 1

   A.   Plaintiffs Fail To Show Purposeful Availment ...................................................... 2

   B.   Plaintiffs Fail To Show Suit-Related Contacts ..................................................... 5

   C.   The Exercise Of Specific Jurisdiction Would Not Be Reasonable ........................ 9

   D.   Courts Have Rejected The Argument That A Party Cannot Raise Personal Jurisdiction Because It Failed To Raise The Defense In Prior Cases ................. 10

II.  IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED .................... 12

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ................................................................2, 3

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*,
    768 F.3d 499 (6th Cir. 2014) ........................................................ *passim*

*BGDG Enters., LLC v. Barley & Swine*,
    2014 WL 12479650 (W.D. Tex. Jan. 23, 2014) ......................................4

*BNSF Railway Co. v. Tyrell*,
    137 S. Ct. 1549 (2017) .........................................................................10

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017) ........................................................... *passim*

*Cap. Confirmation, Inc. v. Auditconfirmations, LLC*,
    2009 WL 2823613 (M.D. Tenn. Aug. 28, 2009) ....................................2

*Capitol Records, Inc. v. MP3tunes, LLC*,
    2008 WL 4450259 (S.D.N.Y. Sept. 29, 2008)........................................3

*Cincinnati Ins. Co. v. O'Leary Paint Co.*,
    676 F. Supp. 2d 623 (W.D. Mich. 2009) ..............................................15

*Coffey v. Hartford Life & Accident Ins. Co.*,
    2016 WL 154128 (W.D. Ky. Jan. 12, 2016)........................................14

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................4, 10

*Dow Chem. Co. v. Calderon*,
    422 F.3d 827 (9th Cir. 2005) ...............................................................11

*Dumitrescu v. DynCorp Int'l, LLC*,
    257 F. Supp. 3d 13 (D.D.C. 2017).......................................................11

*FireClean, LLC v. Tuohy*,
    2016 WL 3952093 (E.D. Va. July 21, 2016).........................................5

*Gullen v. Facebook.com, Inc.*,
    2016 WL 245910 (N.D. Ill. Jan. 21, 2016)............................................3

*Harvey D. Bailey, Inc. v. Markel Ins. Co. of Canada*,
　　2010 WL 2710511 (S.D. Ohio Feb. 19, 2010)........................................................................11

*Klinghoffer v. S.N.C. Achille Lauro*,
　　937 F.2d 44 (2d Cir. 1991)...................................................................................................11

*Lynch v. Olympus Am., Inc.*,
　　2018 WL 5619327 (D. Colo. Oct. 30, 2018) ........................................................................11

*Malibu Boats, LLC v. Nautique Boat Co.*,
　　2014 WL 202379 (E.D. Tenn. Jan. 16, 2014)......................................................................14

*Man-D-Tec, Inc. v. Nylube Prods. Co.*,
　　2012 WL 1831521 (D. Ariz. May 18, 2012) ..........................................................................5

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
　　647 F.3d 1218 (9th Cir. 2011) ...............................................................................................3

*Naranjo v. Nusenda Credit Union*,
　　2019 WL 2601352 (E.D. Mich. June 25, 2019)......................................................................6

*New Hampshire v. Maine*,
　　532 U.S. 742 (2001)........................................................................................................11, 12

*Rabinowitz v. Samsung Elecs. Am., Inc.*,
　　2014 WL 5422576 (N.D. Cal. Oct. 10, 2014)......................................................................13

*Ramsey v. Greenbush Logistics, Inc.*,
　　263 F. Supp. 3d 672 (M.D. Tenn. 2017)..............................................................................12

*Rozenblat v. Sandia Corp.*,
　　2006 WL 678923 (Fed. Cir. 2006).......................................................................................10

*S. Mach. Co. v. Mohasco Indus., Inc.*,
　　401 F.2d 374 (6th Cir. 1968) .............................................................................................2, 9

*Sacklow v. Saks Inc.*,
　　377 F. Supp. 3d 870 (M.D. Tenn. 2019)..............................................................................14

*Showhomes Franchise Corp. v. LEB Sols., LLC*,
　　2017 WL 3674853 (M.D. Tenn. Aug. 24, 2017)..................................................................12

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
　　549 U.S. 422 (2007)...............................................................................................................7

*TailGate Beer, LLC v. Boulevard Brewing Co.*,
　　2019 WL 2366948 (M.D. Tenn. June 5, 2019)......................................................................4

*Thomas v. Home Depot, U.S.A., Inc.*,
    131 F. Supp. 2d 934 (E.D. Mich. 2001)................................................................14, 15

*Toma v. Motley Crue, Inc.*,
    2012 WL 4793508 (N.D. Ill. Oct. 9, 2012)..................................................................12

*Torrent Pharm. Ltd. v. Daiichi Sankyo, Inc.*,
    196 F. Supp. 3d 871 (N.D. Ill. 2016) ..........................................................................11

*Triple Up Ltd. v. Youku Tudou Inc.*,
    235 F. Supp. 3d 15 (D.D.C. 2017) ............................................................................6, 8

*Walden v. Fiore*,
    571 U.S. 277 (2014)........................................................................................... *passim*

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)......................................................................................................9

**Statutes**

28 U.S.C. § 1400........................................................................................................2

28 U.S.C. § 1406......................................................................................................12

28 U.S.C. § 2072......................................................................................................10

28 U.S.C. § 2073......................................................................................................10

28 U.S.C. § 2074......................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 4(k)...................................................................................................10

Fed. R. Civ. P. 45.....................................................................................................14

Case 3:19-cv-00736   Document 75   Filed 01/17/20   Page 5 of 22 PageID #: 560

Plaintiffs Eight Mile Style and Martin Affiliated fail to explain why the Middle District of Tennessee is an appropriate forum for claims brought by two *Michigan* plaintiffs against a *Delaware* corporation headquartered in *New York*, involving alleged *conduct occurring outside Tennessee* concerning songs written by an artist who *does not live or work in Tennessee*, whose availability on Spotify's service is *not alleged to cause harm in Tennessee*.

With respect to general personal jurisdiction, Plaintiffs have backed away from their complaint (at ¶ 25); they now concede that there is no general jurisdiction over Spotify. But their theory of specific jurisdiction—that whenever a company operates an interactive website, it submits to specific jurisdiction wherever its website is available—has been rejected by courts as equally misguided because it has no limiting principle, and would subject a defendant that does business online to personal jurisdiction in every State. Moreover, Plaintiffs give short shrift to the defining principle governing specific jurisdiction: that the *defendant's* contacts with the forum must be *related to* the claims in the lawsuit. Indeed, controlling Sixth Circuit precedent holds that the contacts must be the proximate cause of a plaintiff's claims. Yet Plaintiffs offer no coherent explanation of how Spotify's limited contacts with Tennessee relate to their copyright infringement claim—much less proximately caused the claim to arise.

For these reasons, no specific jurisdiction exists and this District is not a proper venue under the copyright venue statute. Alternatively, this Court can transfer this lawsuit to the Southern District of New York. As discussed below, nearly all of the applicable factors support transfer, and the one that Plaintiffs rely on most heavily—the plaintiff's choice of forum—is entitled to little, if any, weight when, as here, *the plaintiffs do not reside in that forum*.

## I.    SPOTIFY IS NOT SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN TENNESSEE OR THIS DISTRICT

The opposition confirms that Plaintiffs have no real response to the Supreme Court's

recent decisions governing specific jurisdiction. They ignore *Walden v. Fiore*, which holds that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's **suit-related** conduct must create a **substantial connection** with the forum State." 571 U.S. 277, 284 (2014) (emphasis added). And they give short shrift to *Bristol-Myers Squibb Co. v. Superior Court*, which holds that "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." 137 S. Ct. 1773, 1781 (2017).

These principles underscore why Plaintiffs fail to meet their burden (Mem. 3) of satisfying all three requirements for specific jurisdiction under the *Mohasco* test. *See* Mem. 5 (discussing test under *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

### A.    Plaintiffs Fail To Show Purposeful Availment

Plaintiffs' theory of purposeful availment chiefly depends upon the fact that Spotify maintains a globally available interactive website through which Tennessee users "access[ed]" the music at issue. Opp. 11-13. But courts have consistently rejected that argument. As the Seventh Circuit has held, under the Supreme Court's decision in *Walden*, "simply operating an interactive website accessible in the forum state" does not suffice. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802-03 (7th Cir. 2014). Spotify cited *Advanced Tactical* (Mem. 9, 11), and Plaintiffs' failure to say a word about it speaks volumes.

Rather, purposeful availment requires "something more in the way of a specific, meaningful connection with the forum state in particular, as opposed to a connection with the nation as a whole." *Cap. Confirmation, Inc. v. Auditconfirmations, LLC*, 2009 WL 2823613, at *6-7 (M.D. Tenn. Aug. 28, 2009) (Trauger, J.). That "something more" does not exist here.

***Spotify's Globally Available Website.*** For starters, Plaintiffs cannot dispute that Spotify's Internet-based services are not targeted or expressly aimed at Tennessee **in particular**—much less this District, as 28 U.S.C. § 1400(a) requires. *See* Mem. 5-7. Plaintiffs'

recognition that "Spotify operates an interactive digital music service **throughout the United States**" (Opp. 1 (emphasis added)) is a "tacit admission" that Spotify's service is "not targeted at [Tennessee] residents," reducing Plaintiffs' position to arguing "simply that [Defendant] operates an interactive website available to" Tennessee residents. *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (granting dismissal). That is not enough. *See id*.[1]

The undisputed fact that Spotify's services are not targeted at Tennessee in particular also undermines Plaintiffs' reliance (Opp. 11-12) on *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011), a decision that predates both *BMS* and *Walden*. *Mavrix*'s elevation of the plaintiff's "interests . . . in proceeding . . . in [his] forum of choice" to justify asserting jurisdiction over a corporation whose website was available to a "national market" (647 F.3d at 1231) cannot be squared with the Supreme Court's subsequent explanations that limits on personal jurisdiction "principally protect[] the liberty of the nonresident **defendant**, not the interests of the plaintiff." *Walden*, 571 U.S. at 290 n.9 (emphasis added); *see also BMS*, 137 S. Ct. at 1780 ("the primary concern is the burden on the defendant") (quotation marks omitted).

The other cases on which Plaintiffs rely are also contrary to binding precedent. In *Capitol Records, Inc. v. MP3tunes, LLC*, 2008 WL 4450259 (S.D.N.Y. Sept. 29, 2008) (cited at Opp. 12-13), the court considered it sufficient for personal jurisdiction that the defendant operated an interactive website with which New York users interacted. *Id.* at *4. But that pre-*Walden* approach cannot be squared with post-*Walden* decisions such as *Advanced Tactical*, which explains that such an approach "would violate the principles on which *Walden* and

---

[1] Plaintiffs also argue that Spotify "target[s] local advertisements" to users in Tennessee, and speculate that "[t]he ads in all likelihood involve the musical compositions" that Plaintiffs say they own and control. Opp. 2. But even assuming *arguendo* that the speculation were accurate, it does not support specific jurisdiction here. Plaintiffs have provided no reason to believe that any such advertising would be targeted to Tennessee residents in particular, and there is no logical reason that such ads would be geographically limited in that way.

3

*Daimler* rest," because "[h]aving an 'interactive website' (which hardly rules out anything in 2014)"—much less in 2020—"should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." 751 F.3d at 803.

The decision in *TailGate Beer, LLC v. Boulevard Brewing Co.*, 2019 WL 2366948 (M.D. Tenn. June 5, 2019) (cited at Opp. 11), is similarly inconsistent with *Walden* and *BMS*. *TailGate Beer* relied on the same pre-*Walden* cases addressed by Spotify in its opening brief (at 9-10). 2019 WL 2366948, at *4 & n.3. Moreover, the Court in *TailGate Beer* failed to apply the proximate cause standard in assessing the connection between a defendant's in-forum contacts and the cause of action, even though, as this Court has explained, "the Sixth Circuit applies a proximate causation standard," *Bates v. CogniSens Athletics, Inc.*, 2018 WL 3572382, at *6 (M.D. Tenn. July 24, 2018) (Trauger, J.) (citing *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014)).

**_Third-Party Server._** Plaintiffs next attempt to manufacture jurisdiction by asserting that Spotify uses a Google-owned server located in Tennessee. Opp. 3-5. Even if that assertion were true, it would make no difference because the happenstance location of a server does not amount to targeting a particular forum. As one court put it, "[the] plaintiff points to no case[] in which a court exercised personal jurisdiction based on such a theory"; that court thus declined to consider relevant "the servers [that were] hosting . . . websites and these servers' physical locations." *BGDG Enters., LLC v. Barley & Swine*, 2014 WL 12479650, at *4 (W.D. Tex. Jan. 23, 2014).

Plaintiffs' reliance on servers is doubly misplaced because, as they recognize, Spotify does not own or operate those servers. Kohn Decl. ¶ 23. "To the extent a hosting company transmits [defendant's] online content through servers located in [a particular state], those unilateral actions by the hosting companies are not evidence of [defendant's] purposeful

targeting of [that state]." *FireClean, LLC v. Tuohy*, 2016 WL 3952093, at *6 (E.D. Va. July 21, 2016). After all, it is the "defendant, not the plaintiff *or third parties*, who must create contacts with the forum State." *Walden*, 571 U.S. at 291 (emphasis added).

Courts have uniformly rejected exercising personal jurisdiction based on a server's location for good reason: "If the mere location of a server could create personal jurisdiction, any state where a server is located would have personal jurisdiction over any user of that server." *Man-D-Tec, Inc. v. Nylube Prods. Co.*, 2012 WL 1831521, at *2 (D. Ariz. May 18, 2012). Indeed, accepting Plaintiffs' theory would be equivalent to holding that every company whose packages are routed through FedEx's World Hub in Memphis can be sued in Tennessee.

In short, the fact that residents of Tennessee (or of this District in particular) may use Spotify's generally-accessible service does not come close to establishing Spotify's purposeful direction of conduct here. Accordingly, the purposeful-availment requirement is not met.

## B. Plaintiffs Fail To Show Suit-Related Contacts

Plaintiffs essentially ignore the past decade of controlling decisions addressing the suit-related requirement, instead relying on older cases applying standards superseded by subsequent Supreme Court decisions. *See* Opp. 14-15 (citing cases from 2007, 2002, and 1989). As the Supreme Court has since underscored, specific jurisdiction requires "a connection" between the forum and the "*specific claims at issue*." *BMS*, 137 S. Ct. at 1781 (emphasis added).

While the Sixth Circuit may have previously described the relatedness requirement "in a number of different ways" (Opp. 14), the Sixth Circuit's recent holding in *Beydoun* makes clear that proximate causation is necessary: "more than mere but-for causation is required to support a finding of personal jurisdiction"; "the plaintiff's cause of action must be *proximately caused* by the defendant's contacts with the forum state." 768 F.3d at 507-08 (emphasis added).

Indeed, the Sixth Circuit's proximate cause standard falls at the "most restrictive end of

5

the spectrum" of the varying approaches to deciding whether the defendant's contacts are sufficiently related to the claims at issue. *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 26-27 (D.D.C. 2017), *aff'd*, 2018 WL 4440459 (D.C. Cir. July 17, 2018)). For that reason, under *Walden* and *Beydoun*, even multiple in-forum contacts that are "but-for causes" of a claim may remain "too remote to be proximate causes of [the] cause of action." *Naranjo v. Nusenda Credit Union*, 2019 WL 2601352, at *3-4 (E.D. Mich. June 25, 2019).

Spotify does not dispute that people in Tennessee—like people all over the country—listen to music on Spotify, likely including at least some of the compositions purportedly owned by Plaintiffs. Mem. 7-8. But Plaintiffs' attempt to secure jurisdiction based on those users' activity is misplaced for two reasons.

First, to the extent that Plaintiffs contend that the alleged "activity giving rise to Eight Mile's claims . . . is the streaming and downloading of the . . . [c]ompositions" at issue (Opp. 15), that activity is not limited to Tennessee. As Plaintiffs themselves allege, the "activity" is initiated "by Tennessee residents, and residents all over the United States." *Id.* But as previously discussed (Mem. 6-7), relying on alleged streaming activity that takes place nationwide proves too much because it would subject every online interactive business to specific jurisdiction in Tennessee (and every other state in the country). Such a theory of universal specific jurisdiction is antithetical to Supreme Court precedent. *See* Mem. 5-10.

Second, the conduct upon which this action actually turns is whether Spotify made available the compositions at issue pursuant to a valid license (it did). Plaintiffs' own opposition confirms that it is the presence or absence of a license that matters for their lawsuit. *See* Opp. 15 (noting that the relevant activity is "streaming and downloading . . . ***all without a license***." (emphasis added)); *id.* ("[T]he acts giving rise to this cause of action are . . . the streaming of the

6

Eight Mile Compositions by Tennessee residents on Spotify's website **and for which Spotify has never obtained a license**[.]" (emphasis added)). And the fact that this lawsuit centers on licensing is further underscored by Plaintiffs' retention of Bob Kohn, who claims "expertise" on "the acquisition and licensing of rights in musical compositions." Kohn Decl. ¶ 1.[2]

Plaintiffs nonetheless argue that the location of Spotify's licensing-related activities—which all occur in New York, not Tennessee (Mem. 8, 16)—is "irrelevant," contending that "*no such licensing-related activities occurred* with respect to the Eight Mile Compositions." Opp. 15. But the relevant question for purposes of jurisdiction is where the alleged actions **or failures to act** took place. Moreover, Plaintiffs' argument improperly depends on having this Court accept their view of the merits, even though "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction[.]" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). Finally, even accepting Plaintiffs' merits contention as true, it proves too much—if licensing activities never occurred, it makes no sense to assert contacts with Tennessee on the basis that the activities "never occurred" in Tennessee.

Plaintiffs also fail to identify any other contacts with Tennessee (much less this District) that satisfy the Sixth Circuit's proximate-cause test. First, Plaintiffs' assertion that Spotify seeks to "break[] new artists" in Nashville (Opp. 5) and Mr. Kohn's that "you have to have a presence in Nashville" "to be involved in country [music]" (Kohn Decl. ¶ 27) are irrelevant—it cannot be disputed that Eminem is **not** a new artist, **not** based in Nashville, and **not** a country music artist. *See* Compl. Ex. A (listing Eminem compositions with "copyright date[s]" as far back as 1998).

Next, Plaintiffs reiterate the allegations in their complaint that Spotify ran ads in Tennessee and that some such ads "in all likelihood involve" the asserted compositions. Opp. 2;

---

[2] Spotify reserves the right to challenge the admissibility of Mr. Kohn's declaration, including whether the declaration satisfies the standards for expert testimony.

*see* Compl. ¶ 28. But as Spotify has already explained (Mem. 11-12), assuming such ads do exist, they are unrelated to, and certainly not a proximate cause of, Plaintiffs' copyright claim—as evidenced by the fact that Plaintiffs' claim of infringement would not change even if the Spotify service "featured no advertisements at all." *Triple Up*, 235 F. Supp. 3d at 27-28.

Plaintiffs also rely upon the "'unitary business' principle" derived from Supreme Court decisions involving taxation. Invoking this theory, Plaintiffs seek to ground jurisdiction on Spotify's "overall business" in the forum state. Opp. 18-19. But that approach violates the Supreme Court's holding that specific jurisdiction requires a "substantial connection" between the defendant's "***suit-related*** conduct" and the forum State—unrelated conduct is irrelevant. *Walden*, 571 U.S. at 284 (emphasis added); *see also BMS*, 137 S. Ct. at 1781.[3] Unsurprisingly, Plaintiffs cannot cite any case in which a court exercised specific jurisdiction on that basis.

Plaintiffs' assertions that Spotify is a "$26 billion company" that happens to have an office and employees in Nashville (Opp. 1, 5, 19) are distractions as well. Spotify's valuation and limited presence in Nashville are not "relevant" to Plaintiffs' copyright claim at all, much less "sufficient" to form the proximate cause of the claim. *BMS*, 137 S. Ct. at 1781; *see* Mem. 12. Plaintiffs' assertion that "Spotify would be responsible for Tennessee taxes" (Opp. 6) is similarly irrelevant, because such taxes have nothing to do with Plaintiffs' copyright claim.

The Supreme Court has warned that to exercise specific jurisdiction on the basis of these irrelevant considerations would impermissibly "resemble[] a loose and spurious form of general jurisdiction." *BMS*, 137 S. Ct. at 1781. In *BMS*, for example, the plaintiffs argued that the defendant was a Fortune 500 company that made more than $900 million in the forum state alone

---

[3] The cases Plaintiffs rely on (at 18-19) all focus on the ability of the States to tax multistate businesses—a completely different setting. Moreover, the tax-related decisions predate *BMS* and *Walden* by decades, and nothing in those older decisions should be read to supersede the Court's more recent rulings squarely addressing the standard for specific personal jurisdiction.

from sales of nearly 187 million pills of the drug at issue. *Id.* at 1778. Moreover, the defendant had six different offices and hundreds of employees in the forum state, and had advertised and distributed the drug in the forum. *Id.* at 1777-78. These facts could not justify exercising specific jurisdiction over the nonresidents' claims, the Court explained, because they were entirely unrelated to the claims of the nonresident plaintiffs who did not obtain or ingest the drug in the forum. *Id.* at 1781-82. There, as here, "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.* at 1781.

## C.  The Exercise Of Specific Jurisdiction Would Not Be Reasonable

None of the three factors applicable to the final *Mohasco* requirement that the exercise of jurisdiction must be "reasonable"—*i.e.*, (1) the burden on Spotify; (2) Tennessee's interests; or (3) Plaintiffs' interest (*Beydoun*, 768 F.3d at 508)—helps Plaintiffs here. *First*, Spotify has shown why it faces a significant burden in litigating this case in Nashville, including because all of its relevant employee witnesses are located in New York or the United Kingdom. Mem. 16-19. *Second*, Plaintiffs do not argue that Tennessee has any interest in this case, and Plaintiffs (who reside in Michigan) cannot have experienced any harm in Tennessee. Mem. 8.

*Third*, Plaintiffs misleadingly quote *BMS* for the proposition that "the plaintiff has an important interest 'in proceeding with the cause in the plaintiff's forum of choice.'" Opp. 17 (quoting 137 S. Ct. at 1780). What the Court ***actually*** said is that the plaintiff's interest is among the "variety of interests" to be considered; the Court then underscored in the very next sentence: "But the 'primary concern' is 'the burden on the defendant.'" 137 S. Ct. at 1780 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)); *see also Walden*, 571 U.S. at 284. Moreover, the Sixth Circuit has explained that—even assuming "plaintiffs' interest in obtaining relief" in the forum could "counsel[] in favor of a finding of reasonableness"—the other two factors "weigh heavily against such a finding" when, as here, the "relevant underlying

9

events" occurred outside the forum state; most of the discovery will involve documents and witnesses located outside the forum state; and Plaintiffs offer "no argument" that the forum state "has an interest in exercising its jurisdiction." *Beydoun*, 768 F.3d at 508-09.

Finally, Plaintiffs contend that the federalism concerns animating the Supreme Court's personal jurisdiction decisions "do not apply in the context of a federal court applying federal law." Opp. 17. But Federal Rule of Civil Procedure 4(k)—necessarily approved by the Supreme Court and Congress (*see* 28 U.S.C. §§ 2072-2074)—states that federal courts generally are subject to the limits applicable to state courts in exercising personal jurisdiction. Specifically, under Rule 4(k)(1)(A), "service of process is effective to establish personal jurisdiction over a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Although Congress can grant broader personal jurisdiction authority for particular federal claims (*see BNSF Railway Co. v. Tyrell*, 137 S. Ct. 1549, 1555-56 (2017)), when it does not do so—as was the case in *Walden*, and is the case under the Copyright Act—the inquiry is "whether the exercise of jurisdiction 'comports with the limits imposed by federal due process' on the State[.]" *Walden*, 571 U.S. at 283 (quoting *Daimler*, 571 U.S. at 125).

### D. Courts Have Rejected The Argument That A Party Cannot Raise Personal Jurisdiction Because It Failed To Raise The Defense In Prior Cases

Finally, Plaintiffs attempt to short-circuit the personal jurisdiction inquiry by asserting that Spotify cannot challenge jurisdiction here because it did not previously contest personal jurisdiction in different lawsuits filed against it. But that argument is contrary to a mountain of case law and common sense. Indeed, *every* circuit court to consider the issue has held that a defendant does not forfeit the due process right to challenge personal jurisdiction in a subsequent case by not raising the defense in a prior case. *Rozenblat v. Sandia Corp.*, 2006 WL 678923, at

*3 (Fed. Cir. 2006) ("[plaintiff] argued . . . that personal jurisdiction was established because these parties appeared in that court in another action previously filed by [the plaintiff]; however, the district court correctly observed that the prior appearance did not necessarily waive the personal jurisdiction requirement in future actions[.]"); *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 835-36 (9th Cir. 2005) (defendant's "choice in the [prior] action to defend on the merits" was "not consent to [personal] jurisdiction in this action"); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) ("A party's consent to [personal] jurisdiction in one case . . ., extends to that case alone."). And numerous district courts have reached the same conclusion.[4]

Plaintiffs identify no case to the contrary, nor is Spotify aware of any. In short, Plaintiffs cannot overcome the overwhelming authority rejecting the argument that a defendant waives its personal jurisdiction rights for all time by not raising the defense in every case.[5]

Perhaps recognizing that they have no answer to the decisions rejecting waiver, Plaintiffs try to shoehorn their argument into the framework of judicial estoppel. But that effort fails because Plaintiffs cannot satisfy any of the three factors required for judicial estoppel—much less all of them. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

First, and most significantly, Spotify did not "persuade[] the court to accept its earlier

---

[4] *See, e.g.*, *Lynch v. Olympus Am., Inc.*, 2018 WL 5619327, at *5 (D. Colo. Oct. 30, 2018) ("consent in one case does not affect the propriety of a court's exercise of personal jurisdiction in another case, even if related and even if in the same forum."); *Dumitrescu v. DynCorp Int'l, LLC*, 257 F. Supp. 3d 13, 19 n.3 (D.D.C. 2017) ("allegation that defendant did not object to personal jurisdiction in another matter. . . is not dispositive of—or even relevant to—the personal jurisdiction inquiry"); *Torrent Pharm. Ltd. v. Daiichi Sankyo, Inc.*, 196 F. Supp. 3d 871, 877 (N.D. Ill. 2016); *Harvey D. Bailey, Inc. v. Markel Ins. Co. of Canada*, 2010 WL 2710511, at *7 (S.D. Ohio Feb. 19, 2010) ("To the extent that plaintiff argues defendant's appearance in a prior lawsuit somehow waives its objections to jurisdiction in this action, plaintiff has not cited to any authority in support of this proposition [and t]he Court finds it to be wholly unsupported.").

[5] Relatedly, Plaintiffs also assert that Spotify was unhappy with prior rulings (Opp. 8-9) but, even if that were true, no authority supports the notion that a defendant's alleged displeasure with rulings in prior litigations in a particular forum somehow precludes that defendant from contesting personal jurisdiction in that forum in subsequent litigation.

position" (*id.* at 750), given that the issue was not actually litigated or decided in those cases.

Second, Plaintiffs have failed to explain how they are "prejudiced" by Spotify's exercise of its due process rights. The closest they come is to suggest that they relied upon Spotify's prior choice not to contest jurisdiction in filing this case, but they cite no case that would support any such reliance, and—as discussed above—the relevant case law is to the contrary.

Third, Spotify's decision to raise personal jurisdiction in this case is not "clearly inconsistent" with its choices in prior litigations. As another district court explained in rejecting a similar judicial estoppel argument, a defendant's "participation in the earlier lawsuit is not 'clearly inconsistent' with its argument that we lack personal jurisdiction over the defendants in this case. [The defendant] might have chosen to waive its objections to jurisdiction in the earlier case for reasons unrelated to the merits of the defense, or else the nature of [the plaintiff's] claims in [the prior] lawsuit may have made specific jurisdiction seem more appropriate." *Toma v. Motley Crue, Inc.*, 2012 WL 4793508, at *5 (N.D. Ill. Oct. 9, 2012).

## II.    IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED

The parties agree that this Court has "broad discretion" to transfer this case. Opp. 20; Mem. 20. And this Court has previously concluded that it may transfer without deciding jurisdiction or proper venue. *Showhomes Franchise Corp. v. LEB Sols., LLC*, 2017 WL 3674853, at *1 (M.D. Tenn. Aug. 24, 2017) (Trauger, J.).[6]

*Parties.* Not one of the five entities listed in the "Parties" section of Plaintiffs' complaint is based here. Compl. ¶¶ 20-23. And all three members of the Plaintiff LLCs are citizens of Michigan. Docs. 6 and 7. Plaintiffs have no connection to this District that would entitle their choice of forum to anything beyond minimal weight, and—despite having multiple bites at the

---

[6] Courts also regularly transfer under 28 U.S.C. § 1406 when resolving a motion to transfer. *See Ramsey v. Greenbush Logistics, Inc.*, 263 F. Supp. 3d 672, 675 (M.D. Tenn. 2017).

apple—have not identified a single party witness in or near this District who is knowledgeable about the practices they challenge.  Mem. 15-16; *see also* Opp. 24 (conceding that "Plaintiffs' choice of forum is afforded less deference" when plaintiffs reside outside the forum).

***Third-party witnesses are located in New York.***  As Plaintiffs themselves have argued in a prior case, "it is the convenience of ***non-party witnesses*** that is crucial," and that "[o]ne chief witness's convenience, in fact, may outweigh the convenience of other, less significant witnesses."  Schneider Decl. Ex. 1 at 13 (emphasis added).  Spotify agrees.  High on the list of "chief witness[es]" are employees of Kobalt, an entity significant enough that Plaintiffs referred to it repeatedly throughout the complaint—including immediately after their own business names under the "Parties" section (though they avoid mentioning it in their opposition).  Compl. ¶¶ 20, 32, 38.  As Spotify explained: (1) Kobalt is headquartered in New York; (2) it conveyed rights to Spotify; and (3) the two Kobalt employees with whom Spotify principally communicates are located in New York.  Mem. 18-19; Lundström Decl. ¶¶ 30-32.

Another third party is the Harry Fox Agency ("HFA").  It also is so central to this litigation that it appears on the first page of Plaintiffs' complaint.  Compl. ¶ 1; *see also id.* ¶ 61. Rather than acknowledge Spotify's showing that all of the HFA employees with whom Spotify principally communicates concerning licensing are located in New York (Mem. 2), Plaintiffs rely on the fact (Opp. 22 n.13) that HFA's *parent corporation* (SESAC) is located in Nashville.  But they fail to show why the location of HFA's *parent* affects the burden on third-party witnesses, and in any event do not dispute that the relevant HFA witnesses are in New York, *not* Nashville.

Last, Plaintiffs ignore that at least five potentially relevant *former* Spotify employees— who would all be third-party witnesses—are located in New York.  Mem. 17; *Rabinowitz v. Samsung Elecs. Am., Inc.*, 2014 WL 5422576, at *5-6 (N.D. Cal. Oct. 10, 2014) (former

employees of defendant in transferee district favored transfer). Thus, three categories of important third-party witnesses—(1) Kobalt employees; (2) HFA employees; and (3) former Spotify employees—all reside in New York and are thus outside this Court's subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(A); *see also Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 878 (M.D. Tenn. 2019). Plaintiffs have not shown that any of these witnesses (much less all of them) would voluntarily appear here—which is unsurprising given the inconvenience to those witnesses.[7]

*Party witnesses are concentrated in New York and Michigan.* Spotify identified nine Spotify witnesses who are anticipated to be important to resolution of this dispute. Mem. 16; Lundström Decl. ¶¶ 15-19, 26. Eight are located in New York and the ninth is in London. Plaintiffs make a passing reference to two Spotify employees located in Nashville (Opp. 19), but Spotify already explained that these particular employees have no information relevant to this action (Lundström Decl. ¶¶ 23-25), and Plaintiffs offer nothing suggesting otherwise. Plaintiffs speculate that "there will undoubtedly be a number of party and expert witnesses located outside of New York[; s]ome may be located in Nashville." Opp. 21. But courts reject such "mere conclusory allegation[s]." *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 938 (E.D. Mich. 2001). If anything, Plaintiffs' opposition only adds another potential witness based in New York—putative expert Bob Kohn (Kohn Decl. p. 15). That fact further favors transfer.

*Plaintiffs' Counsel.* Plaintiffs make the remarkable assertion that litigating in Nashville would be more convenient because they chose *counsel* located here. *E.g.*, Opp. 6, 24. But it is established that the "location of counsel" is both "irrelevant and improper for consideration in determining the question of transfer of venue." *Coffey v. Hartford Life & Accident Ins. Co.*,

---

[7] This case is thus unlike *Malibu Boats, LLC v. Nautique Boat Co.*, 2014 WL 202379 (E.D. Tenn. Jan. 16, 2014) (cited at Opp. 21)—in which the plaintiff was able to resolve concerns about the limits of the court's subpoena power by submitting a declaration from a witness who was willing to travel to appear at trial voluntarily, "making a subpoena unnecessary." *Id.* at *6.

2016 WL 154128, at *3 (W.D. Ky. Jan. 12, 2016); *see also* Mem. 16. This "rule" is not only "sensible" but is "universally observed by circuit and district courts nationwide." *Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 633 (W.D. Mich. 2009).

Plaintiffs' argument about the convenience of counsel falls especially flat because Plaintiffs do not contend that they will need to change trial counsel if the case is transferred. In fact, Mr. Busch has previously litigated on behalf of Plaintiffs in other forums.[8] Even if counsel's location were relevant, Mr. Busch often has listed in court filings and on his bar licensee profile an address that is in Century City, California. *E.g.*, Schneider Decl. Exs. 2-4.

Finally, Plaintiffs offer no evidence for why litigating this case in New York rather than Nashville would be more expensive for three Michigan-based plaintiffs. Opp. 6; Martin Decl. ¶¶ 11-14. Where (as here) a party offers no substantiation concerning financial hardship, it "has put the Court in no position to conclude that traveling to [the transferee State] for a trial would pose a hardship for Plaintiff[s]." *Thomas*, 131 F. Supp. 2d at 937.

## CONCLUSION

The Court should dismiss this case for lack of personal jurisdiction and improper venue or, in the alternative, transfer the case to the Southern District of New York.

---

[8] Mr. Busch previously filed copyright infringement claims on behalf of the same Plaintiffs—in Michigan—over Eminem's works. *Eight Mile Style, LLC et al. v. Apple Computer, Inc. et al.*, No. 07-cv-13164 (E.D. Mich. filed July 30, 2007). One of the Plaintiffs filed another case over Eminem's works in the Central District of California—once again represented by Mr. Busch. Schneider Decl. Ex. 5. During the California litigation, Joel Martin (a member of both Plaintiff LLCs) was deposed in New York City—where he was defended by Mr. Busch. *Id.* Ex. 5-6.

Dated: January 17, 2020

Respectfully submitted,

By: */s/ Aubrey B. Harwell III*

Kathleen M. Sullivan (*pro hac vice*)
Carey R. Ramos (*pro hac vice*)
Cory Struble (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 895-2500
kathleensullivan@quinnemanuel.com
careyramos@quinnemanuel.com

Thomas C. Rubin (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, WA 98101
Telephone: (206) 905-7000
tomrubin@quinnemanuel.com

Robert P. Vance, Jr. (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
bobbyvance@quinnemanuel.com

Aubrey B. Harwell III (BPR #017394)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: (615) 238-3526
tharwell@nealharwell.com

Allison Levine Stillman (*pro hac vice*)
Matthew D. Ingber
Rory K. Schneider (*pro hac vice*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
mingber@mayerbrown.com
astillman@mayerbrown.com
rschneider@mayerbrown.com

Andrew J. Pincus
Archis A. Parasharami
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3328
apincus@mayerbrown.com
aparasharami@mayerbrown.com

*Counsel for Defendant Spotify USA Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on January 17, 2020 with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

James F. Blumstein
Of Counsel
Vanderbilt University
131 21st Avenue South
Nashville, TN 37203
(615) 343-393
james.blumstein@vanderbilt.edu

Richard S. Busch
King & Ballow
315 Union Street
Suite 1100
Nashville, TN 37201
(615) 259-3456
rbusch@kingballow.com

Mark H. Wildasin
U.S. Attorney's Office (Nashville Office)
Middle District of Tennessee
110 Ninth Avenue
Suite A961
Nashville, TN 37203
(615) 736-2079
mark.wildasin@usdoj.gov

*/s/ Aubrey B. Harwell III*