# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

EIGHT MILE STYLE, LLC; MARTIN
AFFILIATED, LLC,

                  Plaintiffs,

v.

SPOTIFY USA INC.,

                  Defendant.

**Case No. 3:19-cv-00736**

**District Judge Aleta A. Trauger**

**JURY DEMAND**

---

## PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION TO SPOTIFY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK

---

# INTRODUCTION

Spotify's analysis in its Reply, as it has throughout its briefing on these issues, attempts to put a round peg in a square hole: the specific jurisdiction cases Spotify relies on involve "single or occasional acts" that occur or have their impact within the forum state. In those cases, the defendant needs protection against unfairly having to defend a case where it has not taken affirmative steps to affiliate with a jurisdiction or secure benefits within a specific jurisdiction. That is the rationale behind the purposeful availment principle – a defendant should not be required to defend where it has not projected itself into a State and sought out the State's benefits.

The circumstances in this case are far different: Spotify has here engaged in systemic conduct, including physical presence and use of the Nashville music infrastructure. It is Spotify's business through its interactive website that creates the causes of action, and is unlike a single or occasional act such as a random car accident or defective tire that results in an accident. Spotify's conduct is an integrated, holistic set of local activities that make it fair and reasonable for Spotify to have to defend this litigation in Nashville, Tennessee. In *Kulko v. Superior Court of Cal.,* 436 U.S. 84, 91 (1978)*,* the Supreme Court stated that there must be a "sufficient connection between the defendant and the forum state to make it fair to require defense in the forum." Once federalism considerations are excluded (and they are here because no independent State interests are involved), the balancing is between plaintiff's interest in choosing the forum and the burden on defendant, which is the "primary concern" under consideration of fairness. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). In this regard, physical entry into a state (e.g. Spotify's entry into the Nashville market), is a relevant consideration under *Walden. Walden v. Fiore*, 571 U.S. 277, 285 (2014). There is simply nothing unfair or unreasonable about requiring Spotify to defend this action in this Court when the infringement occurs and harm results in this District through the use by Tennessee citizens of Spotify's interactive website, when New York

1

has no independent, cognizable interests in this dispute, when Spotify litigated four identical cases in this Court for two years without complaint, and when Spotify has a significant presence in Tennessee through its Nashville, Tennessee office.  As explained below, the authority Eight Mile relies on is absolutely good law, and requires denial of Spotify's motion.

I.      **Spotify Fails to Demonstrate that This Court Lacks Specific Personal Jurisdiction**

Eight Mile need only make a prima facie case to establish personal jurisdiction, and it has easily satisfied this relatively slight burden.  *See Speedeon Data, LLC v. Integrated Direct Mktg., LLC*, 718 F. App'x 333, 335-36 (6th Cir. 2017).  Spotify claims that Eight Mile does not have a response to recent decisions governing specific jurisdiction.  (Doc. 75 at 7).  Spotify, however, ignores the voluminous case law post-*Walden v. Fiore* that still applies the principles set forth by Eight Mile and holds that these principles as applied are still good law.

A.      **Spotify Has Ignored the Sixth Circuit Standard for Purposeful Availment Based on an Interactive Website**

According to Spotify, courts have "consistently rejected the argument" that purposeful availment may be found based upon an interactive website.  (Doc. 75 at 7).  This is wrong, especially in the Sixth Circuit.  Instead of citing decisions where courts have ***consistently rejected*** jurisdiction based on an interactive website, Spotify cites a single Seventh Circuit case that is at odds with the Sixth Circuit's application of the principle.  Defendant cites *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802-03 (7th Cir. 2014) for the proposition that "simply operating an interactive website accessible in the forum state" does not satisfy purposeful availment.  In that case, the court stated that "[t]he interactivity of a website is also a poor proxy for adequate in-state contacts."  *Id*. at 803.  This proposition, however, is directly at odds with the standard for interactive websites Sixth Circuit courts have uniformly applied.

2

Under the Sixth Circuit standard, "[t]he operation of an Internet website can constitute purposeful availment of the privilege of acting in a forum state . . . 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). This Circuit applies a "sliding scale" approach, which "distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site. . . . Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction." *Global Force Entm't, Inc. v. Anthem Sports & Entm't Corp.*, 385 F. Supp. 3d 576, 585 (M.D. Tenn. 2019).

While Spotify claims that Eight Mile ignores *Walden v. Fiore*, if it reviewed the post-*Walden* case law related to interactive websites, it would understand that Sixth Circuit courts have uniformly considered the ***level of interactivity*** of a website in assessing purposeful availment.[1] This overwhelming precedent demonstrates that the operation of an interactive website reaching customers in a forum may subject the defendant operating the website to the jurisdiction of that forum. As set forth in Eight Mile's Response, Spotify does in fact operate a ***highly interactive*** website, through which it purposefully avails itself of the privilege of transacting business in

---

[1] *See Dochnal v. Thomson Reuters Corp.*, 2018 U.S. Dist. LEXIS 178458, at *9 (E.D. Tenn. Oct. 17, 2018) ("A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state."); *Comerica Bank v. Enagic Co.*. 2017 U.S. Dist. LEXIS 191984, at *22 (E.D. Mich. Nov. 21, 2017) (same); *Olbers v. Thompson*, 2017 U.S. Dist. LEXIS 136854, at *16 (W.D. Ky. Aug. 25, 2017) (same); *Cross v. Rodgers*, 2017 U.S. Dist. LEXIS 119777, at *10 (M.D. Tenn. Jul. 31, 2017) (same); *Sanders v. Sennholz*, 2017 U.S. Dist. LEXIS 118566, at *10 (E.D. Mich. Jul. 28, 2017) (same); *Buschle v. Coach, Inc.*, 2017 U.S. Dist. LEXIS 45681, at * (S.D. Ohio Mar. 28, 2017) (same); *Tempur Seal Int'l v. Wondergel, LLC*, 2016 U.S. Dist. LEXIS 44354, at *5 (E.D. Ky. Apr. 1, 2016); *Shaun Jackson Design, Inc. v. Mohawk USA LLC*, 2015 U.S. Dist. LEXIS 172405, at *9-10 (Dec. 29, 2015) (same); *Gutman v. Allegro Resorts Mktg. Corp.*, 2015 U.S. Dist. LEXIS 166647, at * (E.D. Mich. Dec. 14, 2015) (same).

Tennessee. (Doc. 69 at 10-14). Indeed, the only service that Spotify offers to its customers in this District is, under the terms of the Copyright Act, an "interactive service." 17 U.S.C. 114(j)(7).

### B. Spotify Is Incorrect that the Location of a Server is Not Relevant to Personal Jurisdiction

Spotify claims that the "location of a server does not amount to targeting a particular forum." (Doc. 75 at 9). The cases on which Spotify relies, however, fail to support its argument. Spotify's reliance on *FireClean, LLC v. Tuohy*, 2016 U.S. Dist. LEXIS 96294 (E.D. Va. Jul. 21, 2016) and *BGDG Enters., LLC v. Barley & Swine*, 2014 U.S. Dist. LEXIS 199599 (W.D. Tex. Jan. 23, 2014) are misplaced as the cases dealt with servers hosting passive websites, not interactive websites with servers used to reproduce and distribute copyrighted music. Spotify's quotation of *Man-D-Tec, Inc. v. Nylube Prods. Co., LLC*, 2012 U.S. Dist. LEXIS 69626, at *6 (D. Ariz. May 18, 2012) is misleading at best because the quoted material is from the court's discussion of **general** personal jurisdiction.

On the other hand, in *Ferron v. e360Insight, LLC*, 2008 U.S. Dist. LEXIS 75085, at *9-10 (S.D. Ohio Sep. 29, 2008), the court stated that "defendants knew or reasonably should have known that their emails would reach individuals located in other states through servers located in other states. It is therefore reasonable to conclude that defendants purposefully availed themselves of the privilege of conducting activities in those other states." Likewise, in *Ferron v. 411 Web Directory*, 2009 U.S. Dist. LEXIS 109898, at *12 (S.D. Ohio Jul. 6, 2009), the court found that the defendant purposefully availed itself when it "knew or should have known that its e-mails would reach individuals located in Ohio through servers located in Ohio." The court in *Columbia Pictures Indus. v. Fysch*, 2007 U.S. Dist. LEXIS 11234, at *5-6 (W.D. Mich. Feb. 16, 2007) also considered the location of the server relevant to its analysis.

4

Spotify does not dispute that it has servers in Tennessee that deliver the infringing Eight Mile Compositions to Tennessee residents.

## II.    Spotify Fails to Recognize the Lenient Standard Sixth Circuit Courts Apply in Assessing Suit-Related Contacts

Spotify next claims that Eight Mile relies on older cases that have been superseded by subsequent Supreme Court decisions. Spotify cites *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781, stating "specific jurisdiction requires 'a connection' between the forum and the 'specific claims at issue.'" (Doc. 75 at 10) (emphasis omitted). Yet, this is the same standard set forth in Eight Mile's Response. "[T]he cause of action, of whatever type, [must] have a substantial connection with the defendant's in-state activities." (Doc. 69 at 15) (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). Nothing in *Bristol-Myers Squibb Co. v. Superior Court* changed this standard, and *Bird v. Parsons* has subsequently been cited by this Court with approval.[2]

Spotify has completely ignored the recent precedent describing the "arising from" prong as subject to a lenient standard.[3] Spotify has focused on its nationwide business practices, attempting to bury its actual contacts with Tennessee. The fact remains that it has substantial suit-related contacts with Tennessee because Tennessee users have streamed and downloaded the Eight Mile Compositions. In *Shaun Jackson Design, Inc.*, 2015 U.S. Dist. LEXIS 172405, at *8, the Court stated, "[i]t is true that much of the alleged infringement occurred throughout the United

---

[2] *Bates v. CogniSens Aths., Inc.*, 2018 U.S. Dist. LEXIS 123581, at *17 (M.D. Tenn. Jul. 24, 2018) (Trauger J.); *Servpro Intellectual Prop. v. Zerorez Franchising Sys.*, 2018 U.S. Dist. LEXIS 114504, at *16 (M.D. Tenn. Jul. 9, 2018); *Bonner v. UPS*, 2018 U.S. Dist. LEXIS 130911, at *7 (M.D. Tenn. Aug. 2, 2018).

[3] *Bates*, 2018 U.S. Dist. LEXIS 123581, at *17 (Trauger J.); *CrossCountry Mortg., Inc. v. Messina*, 2019 U.S. Dist. LEXIS 189380, at *34 (N.D. Ohio Oct. 31, 2019); *Parker Hannifin Corp. v. Std. Motor Prods.*, 2019 U.S. Dist. LEXIS 183469, at 36 (N.D. Ohio Oct. 23, 2019); *Complete Prototype Servs., Inc. v. Trans Am Worldwide, LLC*, 2017 U.S. Dist. LEXIS 136641, at *20 (E.D. Mich. Aug. 25, 2017); *Shaun Jackson Design, Inc.*, 2015 U.S. Dist. LEXIS 172405, at *17.

States. But because some allegedly occurred in [Michigan], and '[i]n light of the lenient standard that applies when evaluating the "arising from" criterion,' the plaintiff's causes of action arise from the defendant's contacts with Michigan." (Internal citation omitted).

Spotify next makes the claim that licensing-related activities do not take place in Tennessee. If Spotify never obtained a license, nothing was done anywhere. Spotify cannot point to New York as the place it did nothing and avoid jurisdiction on that basis. When the acts giving rise to this cause of action are properly classified as the illegal downloading and streaming of the Eight Mile Compositions by Tennessee residents on Spotify's interactive website, through Tennessee located servers, there can be no doubt that the cause of action arises from Spotify's contacts with Tennessee. This targeted activity by Spotify is expressly aimed at Tennessee, creates harm in Tennessee, and is the proximate cause of Eight Mile's cause of action.

### III.      The Exercise of Specific Jurisdiction Is Fair And Reasonable

"In determining whether personal jurisdiction is present, a court must consider a variety of interests. These include 'the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice.'" *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. "[T]he 'primary concern' is 'the burden on the defendant.'" *Id.* Spotify's only claim in its Reply related to burden is that "its relevant employee witnesses are located in New York or the United Kingdom." (Doc. 75 at 14). This, however, was not an issue in the prior cases. As stated in the Declaration of Richard S. Busch, the parties spent more time at depositions outside of New York than in New York. In the prior cases, counsel traveled to New York, Los Angeles, Washington, D.C., Baltimore, and conducted a deposition by video conference for a witness located in Sweden. (Doc. 69-3 at 3). The substantial physical presence of Spotify in Nashville strongly suggests that there is minimal burden on Spotify to litigate in Tennessee. Spotify is engaged in a process of

business development that creates the cause of action. This is not a "single or occasional act" such as a car accident or a defective tire that causes an accident. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, (2011). Despite Spotify's argument that the "unitary business principle" is irrelevant, Eight Mile would stress that this concept is relevant to the facts of this case, to show that the broad array of activities that are suit-related must be understood in this context – not the one-off context of a single specific act but as part of an ongoing process of violations.

Spotify also incorrectly states that Eight Mile has not offered an argument for Tennessee's interest in exercising jurisdiction. (Doc. 75 at 10). The lack of federalism concerns, however, makes this averment a red herring regarding jurisdiction.  In fact, regarding venue, Tennessee does have an interest in exercising jurisdiction here. First, Spotify's entry into the Nashville market is a relevant consideration under *Walden*.  *See Walden v. Fiore*, 571 U.S. at 285 ("physical entry into the State — either by the defendant in person or through an agent, goods, mail, or some other means — is certainly a relevant contact"). Second, the suit-related conduct is the streaming of the Eight Mile Compositions by Tennessee residents, and residents all over the United States, all without a license. (Doc. 69 at 22). Tennessee has an interest in addressing copyright infringement perpetrated by a company operating within its borders, and Eight Mile's decision to seek relief in Tennessee is subject to significant weight. *See Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008). Finally, litigating this action will promote judicial efficiency as this Court has already heard the four prior cases, is familiar with Spotify and the issues involved, and Tennessee has an interest in upholding the principles previously established in the prior cases.

 Eight Mile's reliance on Spotify's conduct to litigate the prior cases in Tennessee is also a relevant factor. In *Geber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011), the Sixth Circuit clarified

the test for finding forfeiture of a personal-jurisdiction defense through conduct: "we ask whether a defendant's conduct prior to raising the defense has given the plaintiff 'a reasonable expectation' that the defendant . . . will defend the suit on the merits or whether the defendant has caused the court to 'go to some effort that would be wasted if personal jurisdiction is later found lacking.'" **Spotify absolutely gave Eight Mile a reasonable expectation that it would defend this case in Tennessee.** This case is the same cause of action of copyright infringement and a similar set of facts as the prior cases. **This is the very reason this case was marked as a related case.** (Doc. 1-3). Spotify also cannot and does not deny that New York is a more congested and expensive forum.

## IV. Spotify's Decision To Raise Personal Jurisdiction Is Inconsistent

Eight Mile also asserts judicial estoppel not to establish jurisdiction, but to prevent Spotify from forum shopping and its unreasonable gamesmanship. At minimum, the litigation of four cases in this Court for two years shows conclusively that it is reasonable for this Court to hear this case, and that there is no unreasonable burden on Spotify. Spotify relies on a broad range of case law arguing in short, "a defendant does not forfeit the due process right to challenge personal jurisdiction in a subsequent case by not raising it in a prior case." R*ozenblat v. Sandia Corp*., 2006 WL 678923, at *3 (Fed. Cir. 2006). Unlike *Rozenblatt*, however, Spotify did not just make an appearance in one case. *Id*. Spotify litigated **four** cases in this forum, for **two years**, and **four** times Spotify proceeded with litigating on the merits for years. Unlike Rozenblat, Eight Mile does not simply allege "that personal jurisdiction was established because these parties appeared in that court in another action previously filed by Mr. Rozenblat." *Id*. Eight Mile has alleged an independent basis for this Court to exercise specific jurisdiction based on its conduct and presence in Tennessee. Spotify's reliance on *Dow Chem. Co. v. Calderon*, is also misplaced. There, "the Companies … expressly eschewed any 'minimum contacts' specific jurisdiction analysis, and rest

8

only on the contention that the Managuan defendants have consented to suit." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 835 (9th Cir. 2005). Again, Eight Mile is not alleging that judicial estoppel establishes personal jurisdiction in this case. Instead, the factors establishing judicial estoppel are present, and (in any event), the acceptance of jurisdiction in those four cases is relevant to show the lack of any burden on Spotify. Spotify did not just make an appearance in one case, as in *Harvey D. Bailey, Inc. v. Markel Ins. Co. of Canada*, but litigated four cases with more than 344 pleadings in just one of them, *Bluewater v. Spotify USA Inc.*, (Case No. 3:17-cv-01051), with all very close to trial when they settled.[4] This case is nearly identical in all respects to those four cases.

Finally, Spotify places reliance on *Toma v. Motley Crue, Inc.*, 2012 WL 4793508 (N.D. Ill. Oct. 9, 2012) to somehow persuade the Court that Spotify chose to "waive its objections to jurisdiction in the earlier case for reasons unrelated to the merits of the defense, or else the nature of claims in that lawsuit may have made specific jurisdiction seem more appropriate." This is false. In its attempt to transfer this case, Spotify has on numerous occasions called attention to the fact that Eight Mile does not reside in Tennessee. (Doc. 75 at 6). This too is a factor that existed in the prior cases.[5] The prior plaintiffs also involved some non-Tennessee residents.

---

[4] *See* Case No. 3:17-cv-01051, Doc. 308 (jury trial in this matter, which is anticipated to last **20-25 days**, is set to begin on May 18, 2020 at 9:30 a.m.); Case No. 3:17-cv-1256, Doc. 49 (jury trial in this matter, which is anticipated to last **10-12 days**, is set to begin on January 14, 2020 at 9:30 a.m.); Case No. No. 3:17-cv-01052, Doc. 48 (jury trial in this matter, which is anticipated to last **8-10 days**, is set to begin on October 1, 2019 at 9:30 a.m.); Case No. 3:17-cv-1616, Doc. 65 (jury trial in this matter, which is anticipated to last **8-10 days**, is set to begin on June 18, 2019 at 9:30 a.m.).

[5] *See* Case No. 3:17-cv-01052, Doc. 1 at 8 (Four Seasons is a partnership operating out of California); See Case No. 3:17-cv-01616, Doc. 1 at 4 (Dolby is an individual residing in Maryland, Lost Toy People is a California entity, Optic Noise is a California entity); Case No. 3:17-cv-01256, (A4V is California entity, J&J is a New York entity, Lakshmi is a Connecticut entity, Lindabet is a New York entity, Music by Shay is a California entity, Music of the West is a Nevada entity, Swinging Door Music is a New York entity).

9

## V.    Spotify Has Failed To Establish That A Transfer Is Warranted

Transfer of venue of this case remains unwarranted. *First*, Spotify fails to justify a transfer of this case to New York.[6] Spotify has only shown that New York proves, at best, to be equally convenient or inconvenient, and this is not enough to warrant a transfer. *See Imperial Prods. v. Rice Endura Prods*., 109 F. Supp. 2d 809, 818 (S.D. Ohio 2000) ("Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient."). *Second*, Spotify's motivation here is rooted in shifting any inconvenience solely to Eight Mile. *See Imperial Prods.* 109 F. Supp. 2d at 818. ("The venue transfer provisions of Section 1404(a) [are] not meant to merely shift the inconvenience to the plaintiff.") *Id. Third*, Spotify has failed to present in its Reply new evidence or arguments that a transfer is warranted. Spotify contends there is a new witness in New York, i.e., Bob Kohn. (Doc. 75 at 19). Mr. Kohn is not new. In fact, Mr. Kohn served as an expert for plaintiffs in the prior cases, and his deposition was taken in Los Angeles, not New York. He will also be an expert for Eight Mile in this case, and will make himself available wherever requested. Spotify's similarly desperate argument that King & Ballow has a secondary office in California, and that counsel Richard S. Busch is licensed in California and has often litigated in other forums, is also irrelevant. (Doc. 75 at 20). King & Ballow's secondary office in California would not assist with a case in New York. And those facts do not change the additional expense or burden on Eight Mile to litigate in New York.

## CONCLUSION

For the foregoing reasons, Eight Mile respectfully requests the Court deny Spotify's Motion.

---

[6] In the Reply, Spotify relies on *Showhomes Franchise Corp. v. LEB Sols., LLC,* 2017 WL 3674853, at *1 (M.D. Tenn. Aug. 24, 2017) (Trauger, J.). However, unlike here, in *Showhomes,* there was a valid forum-selection provision in the Parties' agreement).

10

Dated:  January 27, 2020

Respectfully submitted,

/s/ Richard S. Busch
Richard S. Busch (TN Bar #14594)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone:      (615) 726-5422
Facsimile:      (615) 726-5417
rbusch@kingballow.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Plaintiffs' Sur-Reply To Spotify USA Inc.'s Reply Memorandum of Law in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, To Transfer Venue To The Southern District of New York has been served upon the following parties in this matter using the ECF system this 27th day of January, 2020. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including the following:

NEAL & HARWELL, PLC
Aubrey B. Harwell III (BPR #017394)
Marie T. Scott (BPR # 032771)
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573
tharwell@nealharwell.com
mscott@nealharwell.com

Allison Levine Stillman*
Matthew D. Ingber*
Rory K. Schneider*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
mingber@mayerbrown.com
astillman@mayerbrown.com
rschneider@mayerbrown.com

Andrew J. Pincus*
Archis A. Parasharami*
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3328
apincus@mayerbrown.com
aparasharami@mayerbrown.com

12

Carey R. Ramos*
Kathleen M. Sullivan*
Cory Struble*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 895-2500
kathleensullivan@quinnemanuel.com
careyramos@quinnemanuel.com
corystruble@quinnemanuel.com


Thomas C. Rubin*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, WA 98101
Telephone : (206) 905-7000
tomrubin@quinnemanuel.com

Robert P. Vance, Jr.*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
bobbyvance@quinnemanuel.com

*Attorneys for Spotify USA Inc.*

/s/Richard S. Busch
*Attorney for Plaintiffs*