UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EIGHT MILE STYLE, LLC and<br>MARTIN AFFILIATED, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SPOTIFY USA INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 3:19-cv-0736<br>)  Judge Aleta A. Trauger<br>)<br>)<br>)<br>) |

## MEMORANDUM

Spotify USA Inc. ("Spotify") has filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, In the Alternative, to Transfer Venue to the Southern District of New York (Docket No. 47), to which Eight Mile Style, LLC ("Eight Mile Style") and Martin Affiliated, LLC ("Martin Affiliated") have filed a Response (Docket No .69), and Spotify has filed a Reply (Docket No. 75), to which Eight Mile Style and Martin Affiliated have filed a Sur-Reply (Docket No. 79). Eight Mile Style and Martin Affiliated have filed a Motion to Lift the Stay of Discovery (Docket No. 58), to which Spotify has filed a Response (Docket No. 62), and Eight Mile Style and Martin Affiliated have filed a Reply (Docket No. 66). For the reasons set out herein, both motions will be denied.

## I. BACKGROUND

Eight Mile Style and Martin Affiliated are Michigan-based companies that own and control musical compositions written by Marshall Mathers, also known as Eminem. (Docket No. 69-2 ¶ 4.) Spotify is a New York-based company incorporated in Delaware and wholly owned by a Swedish corporate parent. (Docket No. 50 ¶¶ 7–8.) Spotify operates a popular music streaming

service that allows users to listen to music they select on electronic devices, including desktop computers, laptop computers, and mobile phones. On August 21, 2019, Eight Mile Style and Martin Affiliated filed a Complaint in this court alleging that Spotify, through its streaming service, engaged in copyright infringement of a number of Mathers' works. Specifically, the plaintiffs alleged that Spotify, working with its licensing agent the Harry Fox Agency, made recordings of Mathers' compositions available to its users as if it possessed a valid license to do so, despite having obtained no such license. (Docket No. 1 ¶ 1.) The court, as is its ordinary practice, entered an Order scheduling an initial case management conference and staying discovery until after that conference could be held. (Docket No. 5.)

On September 25, 2019, Spotify filed a Motion to Adjourn the Case Management Conference and for a Stay of Discovery (Docket No. 14), in which it asked the court to stay discovery in the case to allow the court to resolve Spotify's anticipated upcoming motion to dismiss for lack of personal jurisdiction. The plaintiffs opposed the request for a stay. (Docket No. 19.) The plaintiffs pointed out that Spotify had already litigated four similar cases in this court, during which it did not dispute the court's personal jurisdiction: *Bluewater v. Spotify USA Inc.* (Case No. 3:17-cv-01051); *Gaudio v. Spotify USA Inc.* (Case No. 3:17-cv-01052); *A4V Digital, Inc. et al. v. Spotify USA Inc.* (Case No. 3:17-cv-01256); and *Robertson et al. v. Spotify USA Inc.* (Case No. 3:17-cv-01616). On October 17, 2019, the court briefly postponed the initial case management conference and otherwise denied Spotify's motion as moot. (Docket No. 36.)

Before the rescheduled conference, Spotify filed a Motion to Dismiss, challenging this court's personal jurisdiction over it and asking the court to either dismiss the plaintiffs' claims or transfer the case to the Southern District of New York. (Docket No. 47.) In light of the pending motion, the court continued the initial case management conference. (Docket No. 54.) On

2

Case 3:19-cv-00736   Document 80   Filed 04/02/20   Page 2 of 19 PageID #: 620

November 6, 2019, the plaintiffs filed a Motion to Lift the Stay of Discovery and Motion to Allow Discovery on Defendant's Motion to Dismiss or Transfer and Motion to Extend Time to Respond. (Docket No. 58.) The plaintiffs requested that they be permitted to engage in jurisdictional discovery in support of their assertion that the court has personal jurisdiction over Spotify. The plaintiffs included a proposed initial set of document requests that, among other things, would allow them to identify Tennessee-based Spotify users, as well as Spotify's advertising activities and exploitation of user data directed at the state. (*See* Docket No. 59-1 at 10–11.) Spotify opposed the motion, arguing that no discovery was necessary to resolve the jurisdictional issues that it had raised. (Docket No. 62.) On November 19, 2019, the court issued an Order denying the request for discovery without prejudice and ordering the plaintiffs to respond to Spotify's Motion to Dismiss. (Docket No. 67.) The plaintiffs did so (Docket No. 69), and both motions are now fully briefed.

In support of its motion, Spotify has provided a Declaration by Anna Lundström, a Spotify Vice President who works out of the company's New York City headquarters. (Docket No. 50.) According to Lundström, Spotify's licensing personnel are based in New York, as are many of the senior executives and potential employee/former employee witnesses whom the company would expect to be involved in litigation against Eight Mile Style and Martin Affiliated. (*Id.* ¶¶ 10, 16–18.) Lundström does not dispute that Spotify has users in Tennessee, including in the Middle District of Tennessee, or that some of those users accessed Mathers' compositions. Lundström explains that "[t]he Spotify service is completely portable: a Spotify user who created an account in Tennessee (or any other state) can stream music to her device in another state (or sometimes another country), and the catalog of content available to users in Tennessee (or any other state) is the same as that which is available to users anywhere else in the United States." (*Id.* ¶ 14.)

3

According to Lundström, Spotify has maintained an office in Nashville since 2016. (*Id.* ¶¶ 21–22.) The Nashville office is currently home to 12 employees, who work in the following areas: "Artist & Label Marketing, Editorial, Social Media, Video Content Experiences, Studios, Business Development, Ad Sales, and Free Product." (*Id.* ¶ 23.) Lundström states that none of Spotify's Nashville employees is "responsible for mechanical licensing or the acquisition or distribution of content on the service, nor do they possess knowledge or information relating to Spotify's mechanical licensing practices from the time of its launch in the United States through the present." (*Id.* ¶ 25.)

The plaintiffs have provided a Declaration by Bob Kohn, an attorney and widely cited expert in music licensing and internet-based music services. (Docket No. 69-1 ¶¶ 1–6.) Kohn explains the basics of Spotify's service, which allows users to stream sound recordings of musical works as well as engage in limited downloads of those recordings. (*Id.* ¶ 16.) Spotify is, according to Kohn, an interactive service in the sense that the user retains the capacity to control which music he listens to—as opposed to, for example, a traditional terrestrial radio station, which does not allow the listener to select the music played. (*Id.* ¶ 17.) Spotify offers a free version of its service, which is supported by subjecting the listener to advertisements between songs, as well as a "premium" service that is paid for by users and not ad-supported. (*Id.* ¶¶ 18–20.) Given the scope of Spotify's known user baser, Kohn opines:

> The activity engaged in by Spotify which is alleged by Eight Mile to constitute copyright infringement is the unauthorized reproduction of the Eight Mile Compositions onto servers (i.e., "server copies") and the copying and distribution of copies thereof to the devices of consumers. Defendants have not and cannot deny that tens of thousands, if not hundreds of thousands, of those consumers are located within the Middle District of Tennessee alone. There may be a million or more customers in all of Tennessee. . . . Most importantly, many of the reproductions and distributions of Eight Mile's Compositions [are] initiated by consumers who choose to stream or download those works. That act, for Tennessee consumers, occurs in Tennessee. Furthermore, it should also be noted that none of the copying and

4

> distribution of Eight Mile's Compositions to users in Tennessee appear[s] to be even initiated from servers in Spotify's New York headquarters or, for that matter, anywhere within the jurisdiction of the Southern District of New York.

(*Id.* ¶ 22.) Kohn states that, based on the limited information available to him, he does not know the geographic location of the relevant servers used by Spotify. One serious possibility, however, is that at least some of Spotify's streaming may be performed from Google-operated servers in Montgomery County, Tennessee. (*Id.* ¶ 23.) Finally, Kohn opines that Spotify likely targets Tennessee listeners with advertisements associated with its ad-supported free service. (*Id.* ¶ 30.)

In their briefing, the plaintiffs point out that Spotify creates playlists to recommend music for its users, and news reports suggest that at least one such playlist was specifically targeted at users in Tennessee. *See* Megan Keller, *Spotify Launches Custom State Playlists for Midterms*, The Hill, https://thehill.com/blogs/in-the-know/in-the-know/414122-spotify-launches-custom-state-playlists-for-midterms. The cited news story, however, does not suggest that any Mathers compositions appeared on the Tennessee playlist, which is characterized as featuring "country hits."

The plaintiffs also provided Declarations by Joel Martin (a member of both Eight Mile Style and Martin Affiliated) and by their lead counsel, Richard S. Busch. According to Martin, the plaintiffs elected to proceed in this district at least in part because Spotify appeared to have acquiesced to the court's jurisdiction in the earlier, similar cases. Martin states that traveling to Nashville from Michigan would be significantly easier for him and others associated with the plaintiffs than traveling to New York City. (Docket No. 69-2 ¶¶ 5, 12.) Busch states that he represented plaintiffs in the earlier cases against Spotify, and, over the course of two years, the four cases had only required attorneys from his firm to spend ten days in New York for depositions, six days in Los Angeles for depositions, four days in Nashville for depositions, and three in

Washington, D.C. (Docket No. 69-3 ¶ 3.) The cases also required relatively few days of in-person hearings in Nashville, and there was never a need to travel for the purposes of document review. (*Id.* ¶¶ 4–5.)

## **II. LEGAL STANDARD**

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court has three options. It may (1) rule on the motion on the basis of the affidavits and materials submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). It is in the court's discretion, based on the circumstances of the case, which path to choose. *Id.* In any proceeding, however, the party asserting jurisdiction has the burden of proof. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). "Additionally, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

When a court rules on a motion to dismiss for lack of personal jurisdiction based upon the affidavits or other preliminary materials, the party asserting jurisdiction need only make a *prima facie* showing of jurisdiction to defeat the motion. *Theunissen*, 935 F.2d at 1458. In examining whether the party asserting jurisdiction has made this *prima facie* showing, the court is to construe the facts presented in the light most favorable to that party, and the court does not weigh or consider the conflicting facts presented by the other side. *Bird*, 289 F.3d at 871; *see also Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360-61 (6th Cir. 2008) (referring to the plaintiff's burden in this context as "relatively slight").

Under Fed. R. Civ. P. 12(b)(3), a defendant may move to dismiss a case for improper venue. On such a motion, it is the plaintiff's burden to show that venue is proper. *Gone to the Beach, LLC v. Choicepoint Servs.*, 434 F. Supp. 2d 534, 537–38 (W.D. Tenn. 2006). If the district court finds that the case is "in the wrong division or district" the court "shall dismiss" the case, or, "if it be in the interest of justice," the court may transfer the case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### III. ANALYSIS

#### A. Necessity of Jurisdictional Discovery

Although the plaintiffs have argued that they require discovery on the issue of jurisdiction, the core facts relevant to jurisdiction are either undisputed or disputed only with regard to minor details. The parties agree that the plaintiffs are based in Michigan and Spotify is based in New York. The parties also agree that Spotify has a Nashville office that is not its headquarters. Spotify, moreover, does not dispute that it has numerous users in the Middle District of Tennessee, some of whom use the company's advertisement-supported free service and some of whom use the non-advertisement-supported paid service. Nor does Spotify dispute, at least for the purposes of the currently pending motions, that, given the extent of Mathers' professional success and popularity, it is undoubtedly the case that Middle District users have, on numerous occasions, streamed and/or downloaded at least some of the compositions at issue in this case. (*See* Docket No. 62 ("Spotify accepted for purposes of its motion to dismiss that it is a digital streaming service whose users in Tennessee accessed recordings of at least some of the compositions at issue through, among other means, downloadable software or applications.").) Jurisdictional discovery might allow the plaintiffs to fill out the details of Spotify's business in this district, but a greater level of detail is

7

not necessary to resolve the issue of personal jurisdiction, which hinges primarily on the parties' respective interpretations of the governing legal standards.[1]

Insofar as the parties disagree with regard to their respective hardships related to litigating this case here or in New York, they have provided Declarations that are sufficient to allow the court to evaluate the issue. Delaying this court's decision with regard to jurisdiction in order to allow for discovery would unnecessarily delay the progress of the case. The plaintiffs' motion will therefore be denied.

**B. Judicial Estoppel**

The plaintiffs argue first that the court should hold that Spotify is judicially estopped from disputing jurisdiction in this case, because it did not dispute jurisdiction in the four prior, similar cases that were litigated and ultimately settled in the Middle District of Tennessee. The doctrine of judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (internal quotation omitted). Although noting that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," the Supreme Court has identified the following considerations for determining whether to apply judicial estoppel: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create

---

[1] The most useful fact that might be ascertainable during discovery would probably be whether any servers based in this district are actually involved in Spotify's streaming activities. Even without that information, however, it appears to be beyond dispute that some Tennessee-based hardware is involved in the alleged infringement, in the form of users' electronic devices and the physical infrastructure that allows data to reach those devices. The court, moreover, notes that web-based activities may involve servers in far-flung, unexpected jurisdictions, and courts have been hesitant to place too much weight on server location in jurisdictional determinations. *See BGDG Enterprises, LLC v. Barley & Swine*, No. A-13-CA-719-SS, 2014 WL 12479650, at *4 (W.D. Tex. Jan. 23, 2014) (discussing cases).

8

the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). The Supreme Court warned, however, that these factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 751.

The court will not hold that Spotify is prevented by judicial estoppel from contesting jurisdiction here. Specific jurisdiction is evaluated on a case-by-case basis, and there is nothing inherently contradictory about jurisdiction existing in one case and not another. That is especially true in light of the well-settled principle that a defendant can consent to personal jurisdiction in a particular lawsuit. *See Boulger v. Woods*, 917 F.3d 471, 477 (6th Cir. 2019) ("Put simply, a defendant's appearances, filings, and actions in the district court may constitute 'legal submission to the jurisdiction of [that] court.'") (quoting *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011)). There is no basis in the law for concluding that a defendant who acquiesces to the court's exercise of personal jurisdiction in one case is forever barred from disputing the court's power in a future case. *See, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) ("A party's consent to [personal] jurisdiction in one case . . . extends to that case alone."). The court, therefore, will consider the parties' jurisdictional dispute on the merits.

.**B. Personal Jurisdiction**

In order for this court to exercise personal jurisdiction over a non-resident defendant, such as Spotify, the defendant must have "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has identified "general" jurisdiction and "specific"

9

jurisdiction as distinct grounds for personal jurisdiction. *Id.* at 417-18. General jurisdiction allows the court to "exercise jurisdiction over any claims a plaintiff may bring against the defendant," whereas specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678–79 (6th Cir. 2012) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)).

"The 'paradigm' forums in which a corporate defendant" will be subject to general jurisdiction "are the corporation's place of incorporation and its principal place of business," with general jurisdiction available elsewhere only in "exceptional" cases. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1552 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014)). Accordingly, although Spotify's corporate presence in Nashville is fairly extensive, a plaintiff would have a difficult time, to say the least, establishing general jurisdiction over the company outside of New York or Delaware. Eight Mile Style and Martin Affiliated argue instead that the court has specific jurisdiction over Spotify for the purposes of their claims.

The assertion of specific jurisdiction "depends on an affiliation between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014) (internal quotation and citation omitted). In evaluating a claim of specific personal jurisdiction, the court must apply the three-part test set forth by the Sixth Circuit in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968):

> (1) "[T]he defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state."
>
> (2) "[T]he cause of action must arise from the defendant's activities" in or contacts with the forum state.

(3) "[T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable."

*Id.*

While all three *Mohasco* elements must be satisfied, purposeful availment is the *sine qua non* of specific personal jurisdiction. *Id.* at 381– 82. The Sixth Circuit has defined purposeful availment as "something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)). A defendant purposefully avails himself of a forum's protections when his "conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* at 479 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)). The purposeful availment requirement prevents jurisdiction from arising "as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The relevant inquiry is "whether the defendant has 'engaged in some overt actions connecting the defendant with the forum state.'" *Id.* at 480 (quoting *Dean*, 134 F.3d at 1271). Put another way, "[t]he question is whether a defendant has followed a course of conduct directed at the society or economy within the jurisdiction of a given sovereign." *J. McIntyre Mach. v. Nicastro*, 564 U.S. 873, 884 (2011).

"In this Circuit, 'operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first *Mohasco* factor 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Still N The*

11

*Water Publ'g*, 327 F.3d at 483 (quoting *Bird*, 289 F.3d at 874). Interactivity is key because it draws the distinction between, on one hand, a passive jurisdictional contact wholly within the control of the non-defendant user who accessed the defendant's website and, on the other hand, a back-and-forth experience in which the defendant itself, through the interactive website, engaged with the user in the forum. *See Neogen*, 282 F.3d at 890 (noting that "intentional interaction with the residents of a forum state . . . is evidence of a conscious choice to transact business with inhabitants of a forum state"); *see also See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006) (describing a "passive" website as one that "simply posts product and contact information"). "While a general posting on the internet is not sufficient to establish minimum contacts, courts may find personal jurisdiction appropriate where there is 'something more' to indicate that the defendant purposefully directed its activities to the forum state." *Unidisc Music, Inc. v. Antibemusic S.r.l.*, No. 3-13-1451, 2014 WL 2573974, at *2 (M.D. Tenn. June 9, 2014) (Campbell, J.). The plaintiffs point out that Spotify's service is fundamentally interactive, with the user selecting which music he wishes to listen to, at what time, and on what device, through a service to which he has affirmatively subscribed. The court agrees that Spotify's interactive streaming of music to Middle District of Tennessee users is sufficient to meet the purposeful availment prong for the assertion of specific personal jurisdiction.

A defendant's purposeful availment of a forum, however, provides no basis for exercising personal jurisdiction if there is not a sufficient link between the purposeful availment and the underlying lawsuit. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 (2011)).

The Sixth Circuit has characterized this aspect of the *Mohasco* test as imposing a "lenient standard." *Bird*, 289 F.3d at 875. In one of its least demanding formulations, the test provides that, "[i]f a defendant's contacts with the forum state are *related to* the operative facts of the controversy, then an action will be deemed to have *arisen from* those contacts." *CompuServe, Inc.*, 89 F.3d at 1267 (emphasis added and citation omitted); *see also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723–24 (6th Cir. 2000) ("Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact.") (quoting *Mohasco*, 401 F.2d at 384). At other times, however, the court has suggested, consistently with recent Supreme Court language, that "the cause of action must . . . have a *substantial connection* with the defendant's in-state activities." *Dean*, 134 F.3d at 1275 (emphasis added); *see Walden*, 571 U.S. at 284. Although it is easy to get bogged down in the wide array of ways the test can be phrased, what matters more is maintaining a focus on the core jurisdictional limiting principles that the test embodies. *See Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506–07 (6th Cir. 2014) ("Not all of our opinions treat this analysis the same . . . . In all cases, however, the elements required to establish personal jurisdiction remain the same−some cases simply address them at different levels of analysis.").

In determining whether contacts are sufficiently related to the operative facts of the controversy, the Sixth Circuit has sometimes applied a proximate causation standard. *See id.* at 508; *see also Burger King*, 471 U.S. at 474 ("[I]t may well be unfair to allow [out-of-state parties] to escape having to account in other States for consequences that arise proximately from such activities."). That approach requires more than a bare showing of 'relatedness' while still

13

recognizing that the caselaw developing the specific jurisdiction inquiry has stressed that this particular aspect of the analysis is not intended to erect too high a barrier to jurisdiction.

The plaintiffs argue that their copyright infringement claims are directly and substantially related to Spotify's contacts with the Middle District of Tennessee because Spotify has unlawfully streamed the relevant Mathers compositions to users in this district, meaning that at least a portion of the infringement at issue occurred here. Spotify characterizes the crux of the case differently, focusing on Spotify's corporate licensing policies and decisions, which it directs from its home office in New York. The court finds that the plaintiffs' characterization more accurately captures the nature of their claims. The plaintiffs' claims are about the unlawful transmission of their copyright-protected works to Spotify's users, including those in Tennessee, not about licensing in and of itself.

The final *Mohasco* requirement looks to whether the court's exercise of jurisdiction is reasonable. Once the first two *Mohasco* requirements are met, "'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteri[on].'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007) (quoting *Theunissen*, 935 F.2d at 1461). The court's consideration of reasonableness is guided by "three factors: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief." *Bulso v. O'Shea*, 730 F. App'x 347, 351 (6th Cir. 2018) (citing *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903 (6th Cir. 2017)).

The court sees no reason why this would be the unusual case in which exercising jurisdiction would be unreasonable. Spotify argues that, if this district finds that it can exercise personal jurisdiction here, there will be no limiting principle regarding where an online streaming service can be made subject to specific jurisdiction. The limitation on where Spotify can be called

14

into court, however, remains simple: it will not be subjected to jurisdiction in areas where it did not engage in copyright infringement through its interactive, commercial web service. Spotify's success, combined with Mathers' success, may mean that this case could have been brought in a number of different districts. That, though, is merely because there was so much alleged infringement. Spotify is not entitled to a more stringent test for personal jurisdiction merely because its allegedly illegal activities were so widespread.

Although the caselaw cautions against being too lax in requiring personal jurisdiction over web-based businesses, there is also a danger in going too far in the other direction. The court will not invent a special "theory of jurisdiction [that] would allow corporations whose websites exploit a national market to defeat jurisdiction," merely because the court finds the risk of 'nationwide' jurisdiction unpalatable in some abstract sense. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011) (citing *Burger King*, 471 U.S. at 473–74). Spotify's position appears to be that it could engage in literally millions of instances of copyright infringement directed at specific, identifiable Tennessee consumers without ever becoming subject to jurisdiction in any of the state's districts with regard to even those very instances of infringement—simply because it also engages in so much infringement elsewhere. That position cannot be squared with traditional notions of personal jurisdiction. The Middle District of Tennessee has an interest in ensuring that copyright rights are observed within its borders, and Spotify has not demonstrated that the parties' interests prevent the court from hearing the case. Although there may be some hardships related to litigating in this district rather than Spotify's home district, which the court will discuss in greater detail later in this opinion, those hardships are not so great as to make jurisdiction unreasonable. The court therefore will not dismiss the plaintiffs' claims based on a lack of personal jurisdiction.

15

### C. Improper Venue

Spotify also argues that venue is improper in this district. Pursuant to 28 U.S.C. § 1400(a), "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." "The general rule [under] § 1400(a) is that a defendant or his agent 'may be found' in any district in which he is amenable to personal jurisdiction, or wherever he may validly be served with process." *Ford Motor Co. v. Launch Tech Co.*, No. 17-12906, 2018 WL 1089276, at *10 (E.D. Mich. Feb. 26, 2018) (quoting *Mihalek Corp. v. State of Mich.*, 595 F. Supp. 903, 907 (E.D. Mich. 1984)). The court's analysis of personal jurisdiction is therefore determinative under § 1400(a). Because Spotify is subject to specific jurisdiction in the Middle District, it "may be found" here.

### D. Discretionary Transfer

Finally, Spotify argues that, if this court concludes that it has jurisdiction and that venue in this district is proper, the court should nevertheless transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). That statute provides, in pertinent part, that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002) (citation omitted).

When considering a section 1404(a) motion to transfer, "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which

16

come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citation omitted). The Sixth Circuit has suggested that relevant factors to be considered include: (1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Unless the balance of these factors strongly weighs in favor of the defendant seeking transfer, "the plaintiff's choice of forum should rarely be disturbed." *Id.* (citations omitted).

Spotify argues that litigating the case in this district, rather than the Southern District of New York, would substantially inconvenience it, given that its likely corporate witnesses are based in New York, not in its comparatively small Nashville office, and it anticipates that many nonparty witnesses will be New York-based as well. The plaintiffs respond, however, that Spotify's supposed hardship is belied by the fact that it has already litigated several similar cases in this district. The plaintiffs also point out that, insofar as litigating this case is likely to be expensive for Spotify, it owes at least some of that expense to its own decisions regarding the sheer number of attorneys to involve; there are currently eleven attorneys representing Spotify, divided among three law firms and five cities.

Spotify urges this court to follow the lead of the Central District of California, which transferred a similar case to the Southern District of New York in *Ferrick v. Spotify USA Inc.*, No. CV 15-09929 BRO (RAOx), 2016 WL 11623778, at *3 (C.D. Cal. Oct. 26, 2016). That court, however, based its decision in part on its conclusion that the plaintiffs' choice of forum was entitled to less deference because they were merely the representatives of a proposed class, not the sole plaintiffs with an interest in the matter. *Id.* at *4 (citing *Hawkins v. Gerber Prods. Co.*, 924 F.

17

Supp. 2d 1208, 1214 (S.D. Cal. 2013); *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009)). The plaintiffs in this case are not seeking to represent a class, and their choice of forum is therefore entitled to the ordinary amount of deference owed to an out-of-district plaintiff. *See Louis Dreyfus Co. Metals Merch. LLC v. PLS Logistics Servs., Inc.*, No. 16-CV-00777, 2017 WL 7520615, at *6 (S.D. Ohio Sept. 30, 2017) ("Although Plaintiff's choice of forum is afforded less deference than if Plaintiff resided in [this district], it is still an important factor weighing against transfer.")

The court has no doubt that litigating this case in Spotify's home district would be easier for Spotify. However, "[t]ransfer of venue is inappropriate where it would serve only to transfer the inconvenience from one party to the other." *OnSomble, Inc. v. O'Rourke*, No. 3-16-493, 2016 WL 11653614, at *1 (M.D. Tenn. June 2, 2016) (Campbell, J.) (citing *Diebold, Inc. v. Firstcard Fin. Servs., Inc.*, 104 F.Supp.2d 758, 764 (N.D. Ohio 2000)). The plaintiffs elected not to proceed in New York, for reasons including their reasonable belief that doing so would be more expensive than litigating in Nashville, and that decision is entitled to deference. Moreover, the plaintiffs have demonstrated that no district would be totally free of inconvenience, including inconvenience related to obtaining testimony from out-of-district witnesses. Copyrighted works such as musical compositions are capable of electronically traversing the Earth in seconds; it is, therefore, unavoidable that copyright litigation often involves a wide geographic scope of parties, witnesses, and discovery. Every instance of litigation, however, has to be based somewhere, and the plaintiffs' selection of the Middle District of Tennessee is sufficiently appropriate to avoid a transfer.

## IV. CONCLUSION

For the foregoing reasons, Spotify's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, In the Alternative, to Transfer Venue to the Southern District of New York (Docket No. 47) and the plaintiffs' Motion to Lift the Stay of Discovery (Docket No. 58) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

19

Case 3:19-cv-00736   Document 80   Filed 04/02/20   Page 19 of 19 PageID #: 637