# EXHIBIT B

# EXHIBIT A

ADMINISTRATION AGREEMENT

**THIS AGREEMENT** is made the _____ day of ██████████

**BETWEEN:** Kobalt Music Services America Inc
1501 Broadway, 27th Floor NY 10019, USA

(the **Administrator**)

**AND:** ██████████████████████████████

(the Owner)

**WHEREAS:**

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

**IT IS AGREED** as follows:

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████



3 **GRANT OF RIGHTS**

3.1 In consideration of the services to be provided herein by Administrator to Owner and for other good and valuable consideration provided herein, the Owner:

    (a)    solely and exclusively licences to the Administrator subject to the terms set out herein the copyright interest as set out in Schedule One hereto (and where relevant by way of present grant of a licence in respect of future copyright) and a licence of all other rights of whatever kind and nature (whether now known or hereafter devised) throughout the Territory (including without limitation any and all rental and lending rights and cable re-transmission rights and making available rights and rights of communication to the public) in the Compositions to hold the same to the Administrator absolutely throughout the Territory for the Term (and where and as applicable the Rights Period) and during the Term (and where and as applicable the Rights Period) and a licence of any and all possible renewals revivals reversions and

extensions of copyright wherever and howsoever the law of any country in the Territory so provides.

(b) Without limiting the generality of the grant and licence of copyright to the Administrator hereunder the rights vested in Administrator shall include by way of example but not limitation the sole and exclusive right throughout the Territory for the Term (and where and as applicable the Rights Period) subject to the terms hereof:

(i) to register the copyright in the Compositions in the name of the Administrator as the administrator and the Owner as the copyright owner and any parties deriving ownership rights in any Compositions from other songwriters as well as to register each Composition with the Society or other public performance society as selected by the Owner and notified to the Administrator;

(ii) subject to the consents of the Owner required hereunder in each instance to administer use and exploit one hundred per cent (100%) of the Owner's interest in the Compositions in any and all media now known or hereafter invented;

(iii) subject to obtaining the Owner's consent in each instance to add to or substitute the lyrics of the Compositions (if any) and generally to make and publish adaptations, translations and variations of the Compositions;

(iv) subject to obtaining the Owner's consent in each instance to use the titles of the Compositions for any purpose and/or subject to the Owner's consent in each instance to re-title the Compositions (and/or any part of them);

(v) to print, publish and sell the Compositions to the public, as individual Compositions as ordinary sheet music, and subject to Owner's consent in each instance in mixed multi artist folios and/or selections or otherwise. In respect of mixed folios containing Compositions together with other musical works Administrator shall have the non-exclusive right to continue to distribute, sell and authorise the further distribution and sale of such mixed folios then printed by Administrator or under Administrators authority for a period of one (1) year following the expiry of the Term;

(vi) to record and/or reproduce the Compositions or to grant non-exclusive licences authorising others to record and/or reproduce the Compositions by means of mechanical or digital reproduction or otherwise on all forms of sound carrier now known or hereafter invented (such right to be exercised by Administrator without reference to Owner where there already exists a licence and /or is subject to a so-called industry "blanket" or standard licence but to be otherwise exercised subject to obtaining the Owner's consent) and on all forms of audio visual device now known or hereafter invented and to use manufacture advertise licence or sell such reproductions for any and all purposes (such right to be exercised by Administrator without reference to Owner where there already exists a licence and /or is subject to a so-called industry "blanket" or standard licence but to be otherwise exercised subject to obtaining the Owner's consent);

(vii) subject to obtaining the Owner's consent in each instance (save where such right is exercised subject to a so-called industry "blanket" or standard licence) to synchronise the Compositions or to grant licences authorising others to synchronise the Compositions with any and all audio-visual media now known or hereafter invented (including advertisements) For the avoidance of doubt, subject to obtaining Owner's consent, Administrator shall have the exclusive right to grant worldwide licences for the synchronisation of the Compositions in and with any and all audio visual media originating and/or produced in the Territory. For the further avoidance of doubt, subject to the terms of this

Agreement, Owner shall have the exclusive right to grant worldwide licences for synchronisation of the Compositions with any and all audio visual media originating and/or produced in the Excluded Territories;

(viii) subject to any and all rights of the Society and the applicable performing rights societies throughout the Territory to license the public performance broadcast transmission and re-transmission of the Compositions in live venues and in any and all audio and audio-visual media whether now known or hereafter invented and to licence the Compositions for inclusion in a cable programme service;

(ix) subject to obtaining Owner's consent (save where such right is exercised subject to a so-called industry "blanket" society licence) to grant any and all licences as may be required by third party licensees for websites which are based in the Territory (irrespective of whether the users of the services of such Territory based website are located outside of the Territory);

(x) subject to the terms of this Agreement to collect and receive during the Term (and the Rights Period as may be applicable) and thereafter during the Collection Period one hundred percent (100%) of moneys arising from the exploitation of the Compositions (whether the exploitation of the Compositions takes place before or) during the Term;

(xi) subject to the approval of the Owner in each instance (save where such right is exercised subject to a so-called industry "blanket" society licence) the exclusive right throughout the Territory to license karaoke uses of the Compositions including, but not limited to, the recording or other reproduction of the Compositions or any part thereof for use in karaoke machines, the manufacture and distribution of karaoke devices embodying the Compositions, and the performance of the Compositions;

(xii) subject to the approval of the Owner in each instance (save where such right is exercised subject to a so-called industry "blanket" society licence) the exclusive right throughout the Territory to license so-called "digital uses" of the Compositions (to include all Internet uses based in the Territory irrespective of where the users are based) including but not limited to the right to embody the Compositions in or on any digital file format in CD-ROM, CD-I, or CD-R devices or similar systems, in computer or video game software, in interactive optical disk systems, in interactive television, in multi-user networks or in on-line (including Internet Protocol or similar networks or platforms such as Wireless Application Protocol (WAP) and Short Messaging Service (SMS) or other similar mobile entertainment applications such as mobile phone ring tones), and in holographic or virtual reality implementations, whether now known or hereafter devised;

(xiii) subject to the approval of the Owner in each instance the right to authorize the creation of derivative works originating in the Territory for the world or part thereof, whether in conjunction with so-called "samples," or otherwise, and to automatically licence hereunder those portions of the new works, which are vested in the Owner by virtue of such sample clearance.

For the avoidance of doubt and subject to the terms of this Agreement: -

(aa) irrespective of whether a synchronisation licence is granted to a third party licensee in the Territory or the Excluded Territory to synchronise a Composition with an audio visual media, Administrator shall have the exclusive right to collect and receive all mechanical and Performing Right royalties and fees with respect thereto for the distribution and exhibition of such Composition in the Territory. For

the avoidance of doubt if Owner has issued or, following the date hereof, issues a license for the use of a Composition in the manner contemplated by this subparagraph (aa) and such license includes a so-called "home video buy-out," then Administrator shall not have the right to collect royalties or fees payable by reason of the manufacture, distribution or sale in the Territory of Audio-Visual Devices containing the production which is the subject of such "home video buy-out" unless, notwithstanding such "home video buy-out" provisions, royalties are nevertheless paid for the manufacture and/or distribution in the Territory of Audio-Visual Devices containing such production;

and

(bb) Administrator shall have the exclusive right to collect and receive all royalties and fees which arise from licences granted for websites which are based in the Territory and to collect and receive all royalties and fees arising from users of such services;

(xi) to exercise (and authorise or licence others to exercise) all of the rights specified in this clause 3 and any and all other rights of a "music publishing" nature now or hereafter existing in any and all Compositions subject to the terms of this Agreement, the Owner's reserved rights and the Owner's consent.

Without limitation to the foregoing the following rights may not be granted by the Administrator without the prior written consent of the Owner in each instance:-

(aa) Any rights to be granted to a third party by way of an exclusive licence; and

(bb) Any licence to be granted to a third party at less than the applicable statutory or applicable prevailing highest rate as set under industry agreement or by way of blanket licence in each local territory comprising the Territory.

(c) Intentionally Deleted

(d) Intentionally Deleted

(e) At the end of the Term (and the Rights Period as applicable in each instance) the licence granted hereunder by the Owner to the Administrator shall be deemed automatically terminated and all rights other than those set out in clause 3(b) (v) and (x) above shall cease to be exercisable by the Administrator. The Administrator hereby agrees that it will upon demand execute and sign all such documents and do all such acts and things which the Owner may hereafter reasonably require the Administrator to execute, sign and do for the purpose of confirming or further assuring the Owner's title to the rights that shall vest or are intended to vest in the Owner after the Term (and the Rights Period as applicable in each instance) in accordance with the foregoing provision.

Throughout this Agreement the rights, permissions and consents granted under Clause 3.1 shall be collectively called the **Rights**. For the avoidance of doubt the "Rights" granted to the Administrator under Clause 3.1 above shall automatically exclude the Owner's reserved rights set out under Clause 3.3 below.

3.2 Notwithstanding anything to the contrary contained in this Agreement, it is acknowledged and agreed that, to the extent possible under the rules of the applicable local collection society in force from time to time, the Owner may wish to exclude the Compositions from the scope of any so called "blanket licences" which cover any of the following forms of exploitation; karaoke, monophonic/polyphonic ringtones/ringbacks, interactive uses, play/view on demand

and audio visual downloads via mobile or online (together the "Subject Exploitations") and the Administrator agrees to use reasonable commercial endeavours to assist Owner in achieving this. Owner acknowledges that Administrator shall have fulfilled it obligations pursuant to this clause 3.2 by (i) sending a notice to each collection society it is a direct member of and to each if its sub publishers (instructing them to forward the notice to such collection societies that they are direct members of) requesting that they provide details of the existence and main commercial terms (including any rights to exclude the Compositions) of any blanket licences which the applicable collection society operates which covers any of the Subject Exploitations (the "Subject Blanket Licences") (ii) keeping Owner updated once per calendar quarter in respect of any responses from collection societies/sub publishers in respect of such notice and (iii) at Owner's written request sending notices once per calendar quarter to those societies/sub publishers which have indicated that that it is possible to exclude the Compositions from any Subject Blanket Licence exercising any such any rights to exclude the Compositions from such Subject Blanket Licences provided always that Administrator shall only be obliged to do if the exclusion can apply solely to the Compositions. If, and to the extent that, the Compositions are excluded from a Subject Blanket Licence the Owner and Administrator shall discuss in good faith (on a case by case basis) how licence requests/licences in respect of the form(s) of Subject Exploitations which was/were covered by such Subject Blanket Licence shall be handled but, for the avoidance of doubt, it is acknowledged and agreed that unless it agrees in writing to the contrary the Administrator shall have no obligation to undertake handling such licence requests/licences.

3.3 Notwithstanding anything to the contrary contained in this Agreement, Owner hereby reserves for itself, free of any claim by Administrator, the following rights only in and to the Compositions not specifically granted to Administrator under this Agreement:-

(a) The exclusive right to collect and retain all royalties and other fees generated solely by the exploitation of the reserved rights expressly set out herein but not further or otherwise;

(b) All rights in and to the worldwide copyrights (including renewals and extension of copyright), copyright rights, similar rights and neighbouring rights in and to the Compositions and the titles thereof, and all rights in the copyright in any adaptations, arrangements, translations and new lyric versions thereof. For the avoidance of doubt the rights to any and all such versions of the Compositions i.e. adaptations, arrangements, translations, arrangements etc) shall automatically be exclusively licensed to the Administrator under the terms of this Agreement and shall be automatically included in the Rights set out under clause 3.1 above;

(c) The exclusive right throughout the world to license so-called "grand rights" in the Compositions or any part thereof, as such rights are now known or may hereafter evolve, including, but not limited to, the exclusive right to license dramatic uses or versions of the Compositions or any part thereof (including uses in which the story line, concept, title or lyrics of a Composition form the basis for any aspect of any motion picture, advertisement, commercial, television production, recording, ballet or other dramatic presentation, whether in whole or in part); and to license such grand rights in any and all media whatsoever, whether now known or hereafter developed, including, but not limited to, live stage, motion pictures, television, video devices, or any other form of visual, audio or audiovisual device;

(d) The exclusive right throughout the world to license uses of the titles of the Compositions (in any language) separately from the music and lyrics;

(e) The exclusive right throughout the world to make cartoon, literary and other subsidiary versions of the Compositions and to print, publish and otherwise use such versions (as well as the dramatic versions aforementioned);

(f) The exclusive right throughout the world to use or license the use or publication of the lyrics of the Compositions, apart from the music ( excluding any and all forms of sheet music), in books, magazines or otherwise, it being agreed that if a third party

in the Territory so exploits any of the rights set forth in this subparagraph (f) in accordance with an industry-wide "blanket license" or other license issued by the Society in good faith or at the request of the Administrator and approved by the Owner then Administrator shall have the right to collect all royalties and fees payable under such license and the issuance of such license shall not constitute a breach of this Agreement by Administrator;

(g) The exclusive right throughout the world to publish or license for publication so called "personality folios" anthologies, or collections of the Compositions as performed by the artist professionally known as "Eminem", it being agreed that if a third party in the Territory so exploits any of the rights set forth in this subparagraph (g) in accordance with an industry-wide "blanket license" or other license issued by the Society in good faith, or at the request of the Administrator and approved by the Owner, then Administrator shall have the right to collect all royalties and fees payable under such license and the issuance of such license shall not constitute a breach of this Agreement by Administrator;



17    FURTHER ASSURANCE AND POWER OF ATTORNEY

(a) The Owner shall promptly execute and deliver to the Administrator any and all documents and such letter of direction to the Society and/or any applicable collecting societies which Administrator may reasonably request from time to time to evidence establish and protect the rights granted under this Agreement and to carry out and effectuate the intent and purposes of this Agreement and in particular to ensure that Administrator shall be entitled to collect and receive during the Term (and Rights Period as may be applicable) and thereafter during the Collection Period one hundred per cent (100%) of moneys arising from the exploitation of the Compositions (whether the exploitation of the Compositions takes place before or) during the Term (and Rights Period as may be applicable). All documents to be prepared hereunder shall be at the cost and expense of the Administrator.

(b) If the Owner does not comply with the request of the Administrator under sub clause (a) above having been given ten (10) days written notice to comply with such request the Owner constitutes authorises empowers and appoints the Administrator or any of its officers the Owner's true and lawful attorney (with full power of substitution and delegation) in the Owner's name and in the Owner's place or in the Administrator's name to take and do such action and to make sign execute acknowledge and deliver any and all instruments or documents which the Administrator from time to time may deem necessary to vest in the Administrator all of the rights or interests granted by the Owner under this Agreement. The Owner declares that the power of attorney contained in this Clause 17 is coupled with an interest and is irrevocable.

