# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**EIGHT MILE STYLE, LLC; MARTIN AFFILIATED, LLC,**

        **Plaintiffs,**

**v.**

**SPOTIFY USA INC.;**
**THE HARRY FOX AGENCY LLC,**

        **Defendants.**

---

**SPOTIFY USA INC.,**

        **Third-Party Plaintiff,**

**v.**

**KOBALT MUSIC PUBLISHING AMERICA, INC.**

        **Third-Party Defendant.**

**CIVIL CASE NO.: 19-CV-00736**

**JUDGE ALETA A. TRAUGER**

**JURY DEMAND**

## DEFENDANT THE HARRY FOX AGENCY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR FAILURE TO STATE A CLAIM AND FAILURE TO PLEAD FRAUD WITH PARTICULARITY

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b), Defendant The Harry Fox Agency LLC ("HFA") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs Eight Mile Style, LLC's and Martin Affiliated, LLC's (collectively, "Plaintiffs" or "EMS") claims against it for failure to state a claim upon which relief can be granted and failure to state fraud with particularity and states as follows:

## OVERVIEW

The allegations of the Amended Complaint fail to establish a plausible claim against HFA for either contributory or vicarious copyright infringement. Substantively, Plaintiffs' non-conclusory allegations against HFA assert no wrongdoing. Plaintiffs contend only that HFA, at Spotify's direction, sent Plaintiffs certain Notices of Intention to Obtain a Compulsory License for Making and Distributing Phonorecords ("NOIs") containing true and accurate information about the expected distribution date of the musical compositions listed in Exhibit A to the Amended Complaint (the "Compositions") — information required under regulations promulgated by the Copyright Office — as part of Spotify's attempt to license those works. Plaintiffs utterly fail to allege how HFA's provision of accurate and required information on NOIs it served on Kobalt Music Publishing America, Inc. ("Kobalt") (EMS's one-time administrator and third-party defendant) or EMS, somehow induced or materially contributed to the alleged infringement of any given Composition.

In essence, Plaintiffs' allegations improperly seek to impose a duty upon HFA to police Plaintiffs' copyrights. There is no precedent supporting Plaintiffs' implicit contention that HFA had an affirmative duty to compare the expected distribution dates included on the NOIs with Spotify's actual streaming data so that it could then inform Plaintiffs there might be a potential issue with Spotify's mechanical licenses. As Plaintiffs allege, HFA provided accurate

information both to Plaintiffs, through the NOIs, and to Spotify, through its License Status Files, and it cannot be held liable for either Plaintiffs' failure to understand that information or for Spotify's alleged direct infringement. Moreover, Plaintiffs fail to allege how, even if HFA had discovered the alleged infringement, it would then have prevented Spotify from streaming a Composition.

Plaintiffs' theory of liability against HFA is also nonsensical in other respects. If, as Plaintiffs allege, EMS was the only entity capable of granting licenses for the Compositions, it cannot plausibly claim to have been deceived into thinking those Compositions were properly licensed based upon an expected distribution date contained on NOIs served previously on Kobalt. EMS received Spotify's royalty payments on the Compositions from Kobalt <u>for eight years</u> and was in the position to know that EMS had never issued licenses for the Compositions to Spotify. Nonetheless, EMS now implausibly claims it was somehow duped when it received NOIs from HFA. Moreover, although Plaintiffs allege, generally, that HFA served what it improperly characterizes as "backdated" NOIs, Plaintiffs fail to explain with any particularity how they were deceived simply by receiving accurate information from HFA.

Finally, Plaintiffs fail to state a claim against HFA for vicarious liability for copyright infringement because Plaintiffs allege – no less than fourteen times – that HFA is Spotify's agent, and that Spotify was in control of and directed HFA's activities, not the other way around. The Amended Complaint also contains no plausible allegations that HFA derived any direct and obvious financial benefit from Spotify's alleged infringement. Thus, as a matter of law, Plaintiffs fail to state a claim against HFA.

## STANDARD OF REVIEW

Defendant moves to dismiss the claims in the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for the failure to state a claim for relief. For purposes of a motion to dismiss, the Court assumes the factual allegations in the complaint are true. *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC,* 2018 WL 6181356 at *1 (M.D. Tenn. Nov. 27, 2018). A complaint cannot survive a motion to dismiss unless it contains facts sufficient to state a claim to relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Importantly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and allegations of fraud must be pled with particularity, Fed. R. Civ. P. 9(b). "A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient." *Id.*, citing *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010). The question, then, is whether the remaining allegations plausibly suggest an entitlement to relief; if not, the complaint must be dismissed. *Lewis Lumber,* 2018 WL 6181356 at *2.

## AN ORDERED RECITATION OF ALLEGATIONS IN THE AMENDED COMPLAINT

Eight Mile Style, LLC and Martin Affiliated, LLC, two publishers who claim to own copyrights in the Compositions, allege that Spotify, through its alleged agent, HFA, failed to serve NOIs on EMS prior to its distribution of the EMS Compositions on its platform. (Am. Compl. at ¶¶ 1-2, 13, 125-134). As a result, Plaintiffs allege Spotify failed to obtain valid compulsory licenses for its use of the Compositions, and failed to pay royalties, or paid an incorrect amount of royalties, to Kobalt for the use of the Compositions. (Id. ¶ 88).

## A. Background on Compulsory Mechanical Licensing

EMS claims to own and exclusively administer the Compositions for interactive streaming in the United States and Canada. (Id. ¶ 53). Spotify is one of the world's largest digital interactive music streaming service providers, streaming millions of copyrighted works on its platform for consumption by the public and allowing its users to access and enjoy a library of musical recordings. (Id. ¶¶ 16, 57). Spotify reproduces and distributes phonorecords embodying musical compositions to its end users through interactive streaming and limited downloads available on the users' computers and mobile devices. (Id. ¶ 16).

HFA is the largest provider of rights management, mechanical licensing, and royalty distribution services for the United States publishing industry. (Id. ¶¶ 55, 79, 101). For nearly 100 years, HFA has been in the business of assisting distributors of musical compositions in obtaining mechanical licenses. (Id. ¶ 101). A mechanical license grants to a licensee, like Spotify, the right to reproduce and distribute copyrighted musical compositions embodied on phonorecords by way of different media, including interactive streams and other digital formats. (Id. ¶ 71).

In order to obtain a compulsory mechanical license under Section 115 of the Copyright Act, a licensee, like Spotify, among other things, sends an NOI to at least one copyright owner of the musical. (Id. ¶¶ 2, 73).[1] Under the Copyright Act, prior to October 11, 2018, the failure to

---

[1] On October 11, 2018, Section 115 of the Copyright Act was amended when the Orrin G. Hatch–Bob Goodlatte Music Modernization Act (the "MMA") was signed into law. *See* Pub. L. 115-264, 132 Stat. 3676, (Oct. 11, 2018). The MMA permitted licensees seeking to license digital phonorecord deliveries to serve NOIs within 30 days of making the initial digital phonorecord delivery. *See* 17 U.S.C. § 115(b)(2)(A).

[2] Plaintiffs' Amended Complaint is devoid of any allegations that HFA distributes a "product" used to infringe copyrights, or that HFA's matching database and the processes utilized to obtain

serve an NOI on the copyright owner prior to the actual distribution of the sound recording embodying the musical composition by the potential licensee foreclosed the possibility of obtaining a compulsory license. (Id. ¶¶ 13, 74). On and after October 11, 2018, licensees who distribute online can serve an NOI up to thirty days after the first actual distribution. 17 U.S.C. § 115(b)(2)(A). In either case, under the statute, the relevant date for determining the validity of the NOI and, thus, the compulsory license, is the <u>actual</u> (rather than the expected) date the work is distributed. (Id. ¶¶ 13, 74).

### B. The Relationship Between HFA and Spotify

Plaintiffs allege that Spotify engaged HFA via a licensing administration agreement, the purpose of which was to attempt to procure and administer, on Spotify's behalf, mechanical licenses in the United States and to collect and distribute royalties, calculated in accordance with the Copyright Royalty Board regulations, to the owners of musical compositions. (Id. ¶¶ 55, 58, 79, 98, 101). Plaintiffs further allege that HFA is Spotify's agent under their agreement. (Id. ¶¶ 8, 9, 12, 23, 24, 28, 55, 56, 94, 97-98).

Pursuant to the licensing administration agreement, Spotify sends to HFA License Request Reports, which reports provide HFA with detailed information about the sound recordings that Spotify wishes to add to its platform and for which it is seeking a mechanical license. (Id. ¶¶ 49, 95). HFA uses the information contained in the License Request Reports to attempt to match the sound recordings to the underlying compositions and then assist Spotify in obtaining a mechanical license. (Id.). Upon completion of that process, HFA provides to

---

mechanical licenses for its clients is somehow used by Spotify to infringe Plaintiffs' copyrights. The alleged act of infringement is that <u>Spotify distributes</u> the Compositions on its platform without a valid license. Nor does the Amended Complaint allege that HFA's database and processes are not capable of substantial non-infringing uses. Thus, Plaintiffs do not plead the first theory of contributory infringement described in *Grokster*.

Spotify a License Status Report, which report contains information about HFA's matching efforts and the licensing results. (Id.). HFA sends these License Status Reports to Spotify regardless of whether HFA successfully matches the sound recordings to the underlying musical composition. (Id.).

Spotify also sends HFA periodic Usage Reports that detail which sound recordings are streaming on Spotify's platform, as well as the date and number of the streams. (Id. ¶ 96). Plaintiffs allege that HFA compares the Usage Reports to its licensing records for purposes of calculating and distributing royalty payments to the owners of the compositions. (Id. ¶ 98). Plaintiffs also allege that a comparison of the Usage Reports to the License Request Reports Spotify provides would reveal both the date a composition began streaming on Spotify's platform and the date Spotify requested that HFA attempt to obtain a mechanical license to stream that composition. (Id. ¶ 96).

### C. HFA's Correspondence Regarding the EMS Compositions and the Service of NOIs on Kobalt.

On May 5, 2010, HFA allegedly received an email that EMS was a copyright owner for the two Compositions "Lose Yourself" and "Superman," which are among the 243 Compositions EMS owns. (Id. ¶ 88). In the email correspondence with EMS, Plaintiffs allege that HFA sought confirmation of the revenue splits for "Lose Yourself," and that EMS confirmed that the revenue splits for "Lose Yourself" included a share to EMS. (Id. ¶ 9). In the same email, HFA purportedly also sought confirmation of the revenue splits for "Superman," and EMS confirmed those revenue splits. (Id.). Thus, Plaintiffs contend that, as of May 5, 2010, HFA had information as to who owned a share of the copyright interest in both "Lose Yourself" and "Superman." (Id.). After May 5, 2010, EMS did not communicate with HFA again about the Compositions for eight years – until July 2018. (*See generally,* Am. Compl.).

Plaintiffs claim that HFA knew that EMS was the copyright owner, at least for these two Compositions, but nonetheless, at Spotify's direction, served "untimely" NOIs for the Compositions on Kobalt (EMS's one-time administrator), even though EMS had not authorized Kobalt to license the Compositions on its behalf, and of which Kobalt had informed HFA on at least two occasions between 2013 and 2015. (Id. ¶¶ 89-90). For example, Plaintiffs allege that in 2013, Kobalt stated in an email to HFA that "[t]he 8 Mile Style catalog is no longer administered by Kobalt for licensing." (Id. ¶ 90). In the meantime, HFA continued to send, and Kobalt (and EMS) continued to accept, NOIs, royalty statements, and royalty payments for the Compositions, without objection, for the next six years. (*See generally,* Am. Compl.).

In July 2018, more than eight years after the May 2010 email communication between EMS and HFA in which EMS claimed ownership of two out of the 243 Compositions, Plaintiffs allege that EMS informed HFA that it controlled the copyrights to the Eight Mile Style catalog, that it was not an affiliate of HFA, and that it had not authorized the granting of mechanical licenses to Spotify. (Id. ¶ 90). On June 27, 2019, shortly before this lawsuit was filed, EMS clarified to HFA in another email that "Licensing [is handled] directly with EMS, [while] Kobalt collects income." (Id.).

Subsequent to the communications with EMS in 2019, HFA began serving NOIs on EMS directly. (Id. ¶¶ 92, 103). Although EMS knew it was the only entity ever authorized to license the Compositions to Spotify, nevertheless, upon reviewing the expected date of distribution contained in the NOIs, EMS purportedly believed the Compositions were properly licensed under the compulsory license provisions of the Copyright Act, even though EMS knew the expected distribution date in certain NOIs was prior to the date of service. (Id. ¶¶ 12, 13, 55, 90, 92, 102-104, 107). Plaintiffs now claim the Compositions were not licensed because the NOIs

that HFA served on Kobalt (and later on EMS) contained an expected date of distribution that was prior to the date the NOIs were served.  (Id. ¶¶ 12, 102, 104).

### D.  Spotify Provided to HFA the Required Expected Date of Distribution for the Compositions and Allegedly "Orchestrated" HFA's Activities.

Plaintiffs allege that Spotify provided HFA with the "expected date of distribution" for the Compositions contained on the NOIs (which information is required by regulations promulgated by the Copyright Office) that HFA sent to Kobalt and EMS from 2011 to present. (Id. ¶ 104).  Upon receipt, EMS allegedly understood that the "expected date of distribution" contained in the NOIs indicated that the musical composition for which the compulsory license was sought had not been distributed at the time the NOI was served.  (Id. ¶ 12).  In addition, EMS allegedly believed that the NOIs (1) were only copies of NOIs previously provided to EMS, and (2) were provided to EMS and Kobalt as evidence that the royalty statements HFA provided were accurate.  (Id. ¶ 102).  Notably, NOIs do not contain – and are not required to contain – the actual date Spotify distributed the Compositions, only the "expected" date of distribution, which date Spotify provided to HFA.  (Id. ¶¶ 12, 102, 104).

Allegedly, Spotify was the "active orchestrator" of HFA's activities by, among other things, (a) providing the expected date of distribution to HFA for inclusion in the NOIs, and (b) directing HFA to serve the NOIs even if they included an expected date of distribution that preceded the date of service.  (Id. ¶ 104).  Spotify allegedly directed HFA to do so despite knowing, based on the License Status Reports provided by HFA, whether it had a valid mechanical license for a given Composition.  (Id.).  Although Plaintiffs allege that HFA was Spotify's agent and acted at Spotify's direction, Plaintiffs allege further that HFA, notwithstanding its contractual obligations to Spotify, could have merely refused to send the NOIs and royalty statements to Kobalt, but did not.  (Id.).

### E. HFA's Actions

Based upon the information contained in the NOIs, EMS allegedly believed that Spotify had a compulsory mechanical license, despite the fact that EMS had never authorized the licensing of the Compositions to Spotify, had never received an NOI directly prior to July 2019, and is the sole owner with licensing authority. (Id. ¶¶ 56, 92, 102, 107).

In addition to the NOIs, HFA also sent royalty statements to Kobalt from 2011 to the present, which Kobalt and EMS also allegedly relied upon as evidence of a valid license. (Id. ¶ 99). Purportedly, EMS understood that the royalty statements indicated that royalties were being paid pursuant to a mechanical license and that the royalty statements accurately reflected the royalties due to EMS. (Id. ¶ 100). Plaintiffs allege these statements were untrue, however, because Spotify had failed to obtain valid mechanical licenses. (Id.). HFA has a long reputation in the music industry issuing mechanical licenses on behalf of its affiliated publishers, and knowing that, EMS purportedly expected HFA to have assisted Spotify in obtaining valid compulsory mechanical licenses if it was distributing royalties, notwithstanding the fact that EMS also knew it was the only entity authorized to issue licenses to Spotify for the Compositions and receive NOIs. (Id. ¶¶ 18, 55, 101, 107).

According to the Amended Complaint, HFA was aware that Spotify was streaming unlicensed Compositions throughout its contractual relationship with Spotify, and also had knowledge of Spotify's alleged infringing activities because HFA placed certain Compositions in what is referred to by HFA as "Copyright Control." (Id. ¶¶ 8, 12, 55, 94, 96). "Copyright Control" is an internal HFA designation for compositions for which HFA does not know the identity of the owner of the composition, and thus, cannot assist its distributor clients in obtaining a license. (Id. ¶ 8). Nevertheless, the Amended Complaint also alleges that HFA

insisted to EMS that it had secured licenses for the EMS Compositions by serving NOIs on Kobalt, on Spotify's behalf, and that the Compositions were otherwise licensed pursuant to the 2016 direct agreement between Kobalt and Spotify.  (Id. ¶¶ 12, 55).

Notwithstanding that the mechanical licenses for the Compositions were allegedly ineffective because of either the expected date of distribution or because they were sent to Kobalt instead of EMS, HFA nevertheless continued to send – and Kobalt/EMS accepted – royalty statements and royalties for Spotify's distribution of the EMS Compositions for the better part of ten years.  (Id. ¶ 92).  In 2018, when EMS finally sought clarification from HFA regarding NOIs for the EMS Compositions, HFA sent those NOIs directly to EMS.  (Id.).  Those NOIs contained the same expected dates of distribution provided originally by Spotify.  (Id.).

Plaintiffs allege that HFA could have reviewed the Usage Reports to try and determine whether Spotify was streaming sound recordings that embodied the Compositions prior to the transmission of any NOI.  (Id. ¶¶ 96-97).  In addition, Plaintiffs allege HFA could have prevented Spotify's supposed infringement by either (a) seeking a licensing arrangement with EMS directly for the Compositions, even though HFA is not a licensee and no allegation exists that HFA had such authority from Spotify, (b) refusing to send, in contravention of Spotify's request and the parties' licensing administration agreement, royalty statements and allegedly "backdated" NOIs, even though the expected date of distribution (which HFA did not verify) was provided to HFA by Spotify, or (c) policing EMS's copyrights and informing EMS of Spotify's infringement, even though HFA is not EMS's licensing agent.  (Id. ¶ 108).  However, although HFA did, in fact, affirmatively convey to Kobalt and EMS information that enabled them to determine whether Spotify had a valid license, HFA nevertheless did not prevent Spotify from streaming the Compositions, and continued to serve NOIs and royalty statements on Kobalt

in exchange for charging Spotify a fee for its services.  (Id.).

## ARGUMENT

**I.  The Amended Complaint Fails to State a Claim for Contributory Copyright Infringement.**

The allegations in the Amended Complaint do not state a claim against HFA for contributory copyright infringement.  In the landmark case of *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, the Supreme Court reformulated the standard for imposing liability for contributory copyright infringement, stating succinctly that "one infringes contributorily by intentionally inducing or encouraging direct infringement."  545 U.S. 913, 930 (2005).  Under *Grokster,* a defendant may be liable for contributory infringement if (1) it provides a product or service incapable of substantial non-infringing uses or (2) intentionally induces infringement by clear expression or other affirmative steps to foster infringement.  545 U.S. at 936-37, 942.[2]  Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *Asentinel LLC v. Info Group, Inc.,* 2011 WL 3667517, at *5 (W.D. Tenn. Aug. 3, 2011), *citing Grokster*, 545 U.S. at 936-37.[3]  The Ninth Circuit has recently articulated that contributory

---

[2] Plaintiffs' Amended Complaint is devoid of any allegations that HFA distributes a "product" used to infringe copyrights, or that HFA's matching database and the processes utilized to obtain mechanical licenses for its clients is somehow used by Spotify to infringe Plaintiffs' copyrights. The alleged act of infringement is that Spotify distributes the Compositions on its platform without a valid license.  Nor does the Amended Complaint allege that HFA's database and processes are not capable of substantial non-infringing uses.  Thus, Plaintiffs do not plead the first theory of contributory infringement described in *Grokster*.

[3] In 2007, the Sixth Circuit, in *Bridgeport Music, Inc. v WM Music Corp.*, discussed contributory infringement without mentioning *Grokster,* instead relying on pre-*Grokster* Sixth Circuit precedent.  *See WM Music Corp.*, 508 F.3d 394, 401 (6th Cir. 2007), relying on *Bridgeport Music. Inc. v. Rhyme Syndicate Music,* 376 F.3d 615 (6th Cir. 2004).  Applying that earlier formulation, the Sixth Circuit held that contributory infringement occurs when one "with

infringement requires wrongful intent with "purposeful, culpable expression and conduct." *Cobbler Nevada, LLC v. Gonzales,* 2018 WL 4055766 at *8 (9th Cir. Aug. 27, 2018).

**A. HFA provided accurate and required information both to Plaintiffs and Spotify that had no impact on Spotify's independent decision to stream the Compositions.**

The Amended Complaint is devoid of any plausible allegations that HFA took affirmative steps to induce or encourage Spotify to distribute the EMS Compositions without a license. Essentially, Plaintiffs allege that HFA enabled, induced, or materially contributed to Spotify's copyright infringement in two ways: (a) by serving what Plaintiffs improperly characterize as "backdated" NOIs on Kobalt (and later EMS) that contained an expected date of distribution of the Compositions, provided to HFA by Spotify, that preceded the date the NOI was served, which somehow misled EMS, and (b) by sending royalty statements and paying royalties to Kobalt pursuant to those NOIs, notwithstanding that Kobalt had allegedly informed HFA on at least two occasions between 2013 and 2015 that it "no longer" administered the Eight Mile catalog.[4] These allegations do not, as a matter of law, constitute actions by HFA that plausibly encouraged, enabled, induced, or materially contributed to Spotify's alleged direct infringement

---

knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *WM Music,* 508 F.3d at 400. Because *Grokster* is more recent than the *Rhyme Syndicate Music* case the Sixth Circuit relied upon in *WM Music Corp.*, this Court should apply the *Grokster* standard, as it did in *Average Joe's Entmt. Grp., LLC v. SoundCloud* in 2018. 2018 WL 6582829 at *3 (M.D. Tenn. Oct. 17, 2018) ("Since *Grokster* is more recent than the Supreme Court precedent the Sixth Circuit has previously applied, this Court will apply the *Grokster* standard."). Under either the *Grokster* or *WM Music Corp.* standard, however, Plaintiff has failed to allege any facts that state a claim against HFA.

[4] Interestingly, the Amended Complaint quotes a communication from Kobalt that it "no longer" administers Eight Mile Style. (*See* Am. Compl. ¶ 90). Thus, it is reasonable to infer that HFA was led to believe that, in fact, Kobalt did administer the rights to EMS prior to the date of that communication. In addition, the Amended Complaint fails to allege any notification by EMS or Kobalt regarding the other catalogs at issue, like Resto World and Dirty Steve's Music, prior to July 2018.

and the Amended Complaint utterly fails to allege how they did.[5]

In fact, Plaintiffs' allegations suggest only that HFA adhered to requirements under the law and its agreement with Spotify. Although not mentioned in the Amended Complaint, the regulations promulgated under the Copyright Act *require* a potential licensee to include an expected date of distribution for the composition on the NOI. *See* 37 CFR § 201.18(d)(1)(v)(E). Moreover, Plaintiffs do not contend that the expected dates of distribution they received via the NOIs were themselves inaccurate. As a result, there is no plausible allegation in the Amended Complaint, nor could there be, that HFA intentionally induced or enabled Spotify's alleged infringement merely through providing required and accurate information to Kobalt and/or EMS. At most, Plaintiffs allege that the NOIs HFA served on them affirmatively disclosed information that enabled EMS to determine whether Spotify had a valid mechanical license. After that, it was up to Plaintiffs to take action. (*See infra* Section I(B)). HFA cannot be liable for EMS's failure to understand accurate information required by Copyright Office regulations contained in NOIs.

Plaintiffs further allege HFA not only passed along accurate information to Plaintiffs via the NOIs, but it also conveyed to Spotify the License Status Reports, which contained information about HFA's efforts to match a sound recording to a Composition and, specifically, underline: whether HFA was able to obtain, on Spotify's behalf, a mechanical license. (Id. ¶¶ 49, 95). It is implausible to contend that HFA acted with intention to induce Spotify's alleged infringement, when HFA affirmatively conveyed to Spotify reports that contained information about whether Spotify was able to obtain a mechanical license for a given Composition.

---

[5] In addition, as Plaintiffs acknowledge, it is the underline:actual distribution date of a Composition that is relevant in determining whether a compulsory mechanical license is valid, not the "expected" date of distribution. (Am. Compl. ¶¶ 73, 77).

In addition, Plaintiffs allege that HFA admitted that it updated copyright ownership information in certain Compositions to reflect that HFA did not have current ownership information for those Compositions, otherwise known internally as a "Copyright Control" designation. (Am. Compl. ¶¶ 8, 12, 55, 94, 96). The Plaintiffs fail to allege plausibly that HFA's updating its records to reflect that certain Compositions had unidentified ownership claims somehow encouraged or induced Spotify's alleged direct infringement. The Amended Complaint contains no plausible allegations that the expected date of distribution contained in the NOIs or the information in the License Status Files sent to Spotify somehow enabled or induced Spotify's alleged infringement.

### B. HFA has no duty to police the EMS copyrights.

Rather than state any valid claim, Plaintiffs improperly seek to impose a duty on HFA to police Plaintiffs' copyrights. Even if HFA knew Spotify had decided to stream the Compositions and failed to prevent Spotify's from doing so, Plaintiffs would not state a claim. HFA has no duty, or ability, to enforce Plaintiffs' copyrights. The mere failure to act, such as the alleged failure to police an internet service provider or take affirmative steps to prevent infringement, does <u>not</u> suffice for contributory infringement. *SoundCloud,* 2018 WL 6582829, at *3, *citing Grokster*, 545 U.S. at 939, n. 12 ("In the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement . . . ."). Nor is knowledge of actual infringing uses by a service, like Spotify, sufficient. *SoundCloud,* 2018 WL 6582829, at *3, *quoting Grokster*, 545 U.S. at 937. The inducement rule established in *Grokster*, instead, premises liability on purposeful, culpable expression and conduct. *Id.* As discussed above, Plaintiffs allege no such purposeful, culpable expression and conduct by HFA – *e.g.,* Plaintiffs do not allege that HFA, for example,

instructed or directed Spotify to proceed to stream a Composition even after HFA provided Spotify with information that it was unable to obtain a mechanical license.

Instead, Plaintiffs allege that, by comparing the Usage Files to the License Request Files Spotify sent to HFA, HFA *could have* determined if or when Spotify streamed the Compositions, and that HFA then *could have* compared those dates to the NOIs to determine the licensing status of the Compositions under the law. (Am. Compl. ¶¶ 49, 98, 127). Thus, Plaintiffs contend that, with due diligence, HFA *should have discovered* the claimed infringement for each of the 243 Compositions and then either notified EMS or refused to continue to send NOIs. However, no legal authority or allegation in the Amended Complaint supports Plaintiffs' claim that HFA had a duty to EMS to police its copyrights. To the contrary, HFA, as a mere service provider to Spotify, has no duty to police Spotify's conduct on behalf of third parties with whom it has no contractual or other relationship. Even if Plaintiff could plausibly allege such a duty, which it cannot, whatever duty HFA allegedly owed Plaintiffs was certainly no greater than Plaintiffs' own duty to police their own copyrights. *See Sony Discos, Inc. v. E.J.C. Family Partnership,* 2010 WL 1270342 at *5 (S.D. Tex. Mar. 31, 2010) ("The essential trade in the Copyright Act is monopoly and policing: the grant of exclusivity comes with the duty to protect it."); *cf Bridgeport Music, Inc. v. Robert Hill Music,* 2006 WL 3720349, at *5 (M.D. Tenn. Dec. 14, 2006) ("A copyright owner has an affirmative duty to police all distributions of his work in order to preserve a legal monopoly.").

Even if HFA had a duty to investigate Spotify's alleged infringement and then had a duty to act on that discovery, Plaintiffs fail to explain how HFA, once it made this discovery, could

have prevented Spotify from streaming a Composition on Spotify's own platform.[6]  Notably, Plaintiffs emphasize repeatedly in the Amended Complaint that HFA is Spotify's agent*, and that* Spotify directed HFA's activities.  (Am. Compl. ¶¶ 8, 9, 12, 23, 24, 28, 55, 56, 94, 97-98).  The Amended Complaint alleges that: (a) Spotify provided HFA with the expected date of distribution to include in the NOIs, and (b) Spotify directed HFA to serve those NOIs even if the expected date of distribution preceded the NOI service date.  (Id. ¶ 104).  There is no allegation that HFA had any ability to validate or change the expected date of distribution such that its failure to do so enabled Spotify's alleged infringement.  (Id. ¶¶ 104, 108).

Importantly, even though HFA had no duty to so do, Plaintiffs allege that HFA affirmatively provided both Kobalt and EMS with information sufficient to alert EMS to the possibility that Spotify might not have a valid license – namely, the fact that the NOIs contained an expected date of distribution which preceded the date of service.  (*See*, *e.g.*, Am. Compl. ¶ 102).  HFA cannot be held liable because it provided accurate information regarding the status of Plaintiffs' copyrighted works, and Plaintiffs failed to understand, or failed to act on, this information.

Moreover, Plaintiffs' bald and conclusory allegations that they were somehow duped by receiving accurate information from HFA cannot resuscitate their failed factual allegations. According to Plaintiffs, if Spotify distributed sound recordings containing the Compositions prior to serving the NOIs for those Compositions, then no valid compulsory license was obtained.  (Am. Compl. ¶¶ 12, 13).  Plaintiffs do not plausibly allege, however, with any particularity, as required by Rule 9(b), how they could possibly be deceived by NOIs that, on

---

[6] Plaintiffs fail to explain how their suggested courses of action—seeking a direct license with EMS, refusing to send NOIs and royalty statements, or notifying EMS of Spotify's conduct— would somehow prevent Spotify from streaming a given Composition.  (*See* Am. Compl. ¶ 108).

their face, notified Plaintiffs that the expected date of distribution was prior in time to the date of service, and thus that Spotify expected to distribute (and may have actually distributed) the Compositions <u>before</u> the NOIs were served. (Id. ¶¶ 12, 13, 102, 104). Thus, the only plausible inference that can be drawn from Plaintiffs' allegations is that HFA accurately alerted Spotify, Kobalt, and EMS to the possibility that Spotify might not have a valid compulsory mechanical license. HFA cannot be liable for EMS's failure to appreciate the significance of that information, and HFA's actions cannot plausibly contribute to or induce Spotify's alleged infringement.

Finally, the Amended Complaint is also insufficient because if, as Plaintiffs allege, EMS was the <u>only</u> entity ever authorized to license the Compositions, Plaintiffs utterly fail to explain how they could possibly be deceived as to whether Spotify had a valid mechanical license *when they themselves would know* whether they had received NOIs or issued a license to Spotify. It makes no logical sense that EMS received payments on the Compositions from Kobalt *for eight years*, without objection, and was in the position to know whether EMS had licensed the Compositions to Spotify, but was somehow still duped when it received NOIs from HFA. HFA's alleged actions did not plausibly encourage, induce, or materially contribute to Spotify's alleged infringement and do not state a claim for contributory infringement under *Grokster*.

**C. Plaintiffs' nonspecific allegations of "fraudulent" conduct are preempted.**

While the Amended Complaint is replete with nonspecific, vague, and general allegations of "fraudulent" activities, Plaintiffs nevertheless do not allege a claim for relief for fraud. (*See generally* Am. Compl., Prayer for Relief). For example, Plaintiffs allege HFA "distributed fraudulent documents," "fraudulently" rendered royalty statements, "fraudulently backdated NOIs," committed "fraudulent acts in furtherance of infringement," and "fraudulently concealed

infringement" by Spotify. (Am. Compl. ¶¶ 1, 2, 5, 12, 51, 94). However, none of these allegations are sufficiently particular to support a fraud claim, and they are all made in the sole context of Plaintiffs' claim for contributory copyright infringement. To the extent Plaintiffs attempt to allege a claim for fraud, the fraudulent acts alleged are merely acts of copyright infringement, are not qualitatively different from its copyright infringement claim and are, thus, preempted by the Copyright Act. *See Shuptrine v. McDougal Littell,* 535 F.Supp.2d 892 (E.D. Tenn. Feb. 12, 2008) (discussing preemption by Copyright Act of state law fraud claims).

### D. Plaintiffs' allegations of "fraudulent" conduct fail to comply with Rule 9(b).

Plaintiffs' allegations of "fraudulent" conduct are devoid of the most basic details required by Rule 9(b). Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008), *quoting Gupta v. Terra Nitrogen Corp*., 10 F. Supp.2d 879, 883 (N.D. Ohio 1998)). By its terms, this requirement applies to all "allegations" of fraud, not just causes of action for fraud. Fed. R. Civ. P. 9(b) (emphasis added); *see also, e.g.*, *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 2015 WL 3541905, at *3 (E.D. Mich. Apr. 30, 2015) ("[T]he plain language of Rule 9(b) . . . does not refer to claims or causes of action; instead, it regulates allegations."). Plaintiffs' allegations utterly lack the requisite particularity.

## II. The Amended Complaint Fails to State a Claim for Vicarious Liability for Copyright Infringement.

The Court should dismiss Plaintiffs' claims against HFA for vicarious liability. A defendant becomes vicariously liable for a direct infringement of a copyright by profiting from

the infringement while declining to exercise a right to stop or limit it. *Broadcast Music, Inc. v. Meadowlake, Ltd.,* 754 F.3d 353, 354 (6th Cir. 2014) (emphasis added). Vicarious liability shifts the costs of copyright enforcement from the holder of the copyright to those in a better position to police the infringing conduct. *Meadowlake*, 754 F3d at 355. Accordingly, the law imposes vicarious liability on a defendant that has the right and ability to supervise the infringing conduct and derives an obvious and direct financial interest from the infringement. *Gordon v. Nextel Comms. and Mullen Adv., Inc.*, 345 F3d 922, 925 (6th Cir. 2003). These elements are independent requirements, and each must be present to render a defendant vicariously liable.

The quintessential case where courts typically impose vicarious liability on a party for another party's direct copyright infringement generally involves an owner or corporate officer who has the ability to supervise and control the public performance of musical work at a business or public place of entertainment. *See, e.g., Purple Rabbit Music v. JCJ Prod., LLC*, 2019 WL 6682199 (M.D. Tenn. Dec. 5, 2019) (imposing vicarious liability on the two members of a company that owned and operated a business that publicly performed, without permission, copyrighted musical compositions because they were responsible for the control, management, operation, and maintenance of the affairs of the business).

Plaintiffs simply do not allege facts sufficient to establish that HFA had the right or ability to control or otherwise supervise either Spotify's streaming activities, generally, or Spotify's decision to stream any Composition. To the contrary, Plaintiffs allege, repeatedly, the exact opposite – that HFA was Spotify's agent and that Spotify directed HFA's activities. (Id. ¶¶ 8, 9, 12, 23, 24, 28, 55, 56, 94, 97-98). Plaintiffs allege further that Spotify provided the expected date of distribution in the License Request Files to HFA to include in the NOIs, and HFA did so, and that Spotify directed HFA to serve NOIs for the Compositions, even if the expected date of

distribution preceded the date of service, and HFA did so. (Id.). Plaintiffs even go so far as to specifically characterize Spotify as the "active orchestrator" of HFA's activities. (Id. ¶ 104). Furthermore, as discussed above, Plaintiffs fail to allege how HFA had any right or ability to prevent Spotify from streaming a Composition even if HFA determined Spotify did not have a valid mechanical license. Finally, other than through conclusory allegations, Plaintiffs do not allege how HFA enjoyed a direct financial benefit from Spotify's alleged infringement. The Amended Complaint does not and cannot allege that HFA had any knowledge of, much less the ability to supervise, direct, or profit from Spotify's alleged infringement. Thus, Plaintiffs fail to state a claim for vicarious liability against HFA.

### III. Plaintiffs' Allegations of a Conspiracy Fail

Although the Amended Complaint repeatedly mentions a "conspiracy" or "scheme" by HFA and Spotify to circulate "fraudulent" documents, among other things, Plaintiffs do not allege a separate claim for conspiracy to commit copyright infringement. To the extent Plaintiffs are attempting to allege such a claim, however, it is preempted by the Copyright Act. *See Wise v. Williams,* 2011 WL 13257087 (M.D. Tenn. Oct. 20, 2011).

### CONCLUSION

For the reasons set forth above, Defendant The Harry Fox Agency LLC respectfully requests the Court enter an Order:

1.      Dismissing Plaintiffs' claims against HFA; and

2.      Awarding HFA its costs, pursuant to 17 U.S.C. § 505, including attorneys' fees.

Respectfully submitted,


**SHACKELFORD BOWEN
MCKINLEY & NORTON, LLP**

 /s Jay S. Bowen
Jay S. Bowen (TN Bar No. 2649)
Lauren Kilgore (TN Bar No. 30219)
1 Music Circle South, Suite 300
Nashville, TN 37203
P: (615) 329-4440
F: (615) 329-4485
jbowen@shackelford.law
lkilgore@shackelford.law

*Counsel for The Harry Fox Agency LLC*

## CERTIFICATE OF SERVICE

This is to certify that on October 15, 2020, a copy of the foregoing *Defendant The Harry Fox Agency LLC's Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Claims For Failure to State a Claim for Relief and Failure to Plead Fraud with Particularity* was served via the Court's Electronic Filing System (CM/ECF) to counsel identified below:

Richard S. Busch (TN Bar No. 14594)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
rbusch@kingballow.com

*Attorneys for Plaintiffs*

---

Aubrey B. Harwell, III (TN BPR No. 017394)
Marie T. Scott (TN BPR No. 032771)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
tharwell@nealharwell.com
mscott@nealharwell.com

Allison Levine Stillman
Matthew D. Ingber
Rory K Schneider
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
mingber@mayerbrown.com
astillman@mayerbrown.com
rschneider@mayerbrown.com

Andrew J. Pincus
Archis A. Parasharami
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
apincus@mayerbrown.com
aparasharami@mayerbrown.com

Kathleen M. Sullivan
Carey R. Ramos
Cory Struble
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
kathleensullivan@quinnemanuel.com
careyramos@quinnemanuel.com
corystruble@quinnemanuel.com

Thomas C. Rubin
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, WA 98101
tomrubin@quinnemanuel.com

*Attorneys for Defendant/Third-Party Plaintiff Spotify USA Inc.*

1 of 2

Timothy L. Warnock (TN Bar No. 12844)
Keane A Barger (TN Bar No. 33196)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
P: (615) 320-3700
twarnock@rwjplc.com
kbarger@rwjplc.com

Brian D. Caplan
Robert W. Clarida
REITLER KAILAS & ROSENBLATT LLC
885 Third Avenue, 20th Floor
New York, NY 10022
P: (212) 209-3050
bcaplan@reitlerlaw.com
rclarida@reitlerlaw.com

*Attorneys for Third-Party Defendant*
*Kobalt Music Publishing America, Inc.*

/s Jay S. Bowen

*Attorney for The Harry Fox Agency LLC*