# Exhibit C



**New York**
885 Third Avenue, 20th Floor
New York, NY 10022-4834
Tel: 212.209.3050
Fax: 212.371.5500

**Princeton**
4 Independence Way, Ste. 120
Princeton, NJ 08540
Tel: 609.514.1500
Fax: 609.514.1501

November 20, 2020

**VIA EMAIL**
Allison Aviki, Esq.
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
aaviki@mayerbrown.com

Alli Stillman, Esq.
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
alli.stillman@lw.com

    Re: <u>**Eight Mile Style, LLC v. Spotify USA Inc. v. Kobalt Music Publishing America, Inc.; M.D. Tenn. Case No. 3:19-cv-00736**</u>

Dear Allison and Alli:

  As you know we represent third-party defendant Kobalt Music Publishing America, Inc. ("Kobalt") in connection with the above-referenced action. We write per your request during our conversation on Monday, November 16, 2020, to further clarify Kobalt's position with respect to the requests contained in Spotify USA Inc.'s ("Spotify") First Request for Production of Documents to Kobalt (the "Request") and supplement Kobalt's Responses and Objections to the Request dated August 10, 2020.

  As a general matter, Kobalt had interposed a general objection to the Request on the grounds that the Request did not have any reasonable time restriction. Given the three-year statute of limitations for copyright infringement claims and New York's six-year statute of limitations for contract-related claims, Kobalt's position is that Spotify is not entitled to the production of non-contract documents from Kobalt beyond the six-year period preceding the filing of the action. However, recognizing that Spotify launched its operations in 2011, and in a good faith effort to avoid disputes, Kobalt will, subject to the exceptions noted below, produce documents from January 1, 2011 forward.

  Kobalt had also interposed a general objection to the Request on the grounds that the Request sought documents and information without geographical limitation. While Kobalt does

have administration rights with respect to the Compositions outside of the United States, Plaintiffs' claims, and thus Spotify's and Kobalt's claims and defenses, only concern the use of the Compositions in the United States. Therefore, Kobalt will not, other than producing documents reflecting its agreements with Bridgeport and/or Plaintiffs and non-privileged documents relating to the negotiation thereof or communications relating thereto, or as noted below, search or produce documents concerning the commercial exploitation of the Compositions outside of the United States.

Please note further that, consistent with our conversation on Monday, that although Kobalt will be designating certain documents as "Confidential" or "Attorneys' Eyes Only" pursuant to the Protective Order entered in the action, in the interest of streamlining the issues relating to the Request, we generally will not discuss those designations herein as we can deal with designations later per the protocol set forth in the Protective Order.

Our clarifications as to what Kobalt will agree to produce in response to certain requests is set forth below.

**Request No. 1**: Kobalt will produce documents reflecting its ownership, control or administration of any of the Compositions from the time that Kobalt acquired any such ownership, control, or administration rights in 2004. As we discussed, certain of the agreements concern Kobalt's rights to administer the Compositions outside of the United States, and therefore the payment terms of these ex-U.S. agreements do not concern Spotify and will accordingly be redacted and/or designated confidential/attorneys' eyes only.

**Request No. 2**: This request is exceedingly overbroad and unduly burdensome, and seeks documents that are neither relevant to any party's claims or defenses in the action nor proportional to the needs of the case.

First, and as we discussed, Kobalt's processing and/or receipt of royalties for Plaintiffs' Compositions is inextricably bound to Kobalt's processing and/or receipt of royalties for all of the musical compositions in its catalogue on behalf of many different songwriters and publishers, not just Plaintiffs, from many different income sources. In nearly all cases, Kobalt receives accountings from each service provider or licensee for all of Kobalt's works that it administers, owns, controls and/or collects on and such statements are not (as we understand it) grouped by writer. Given Kobalt's status as one of the largest music publishers in the world, to require Kobalt to parse through each of the statements – be they monthly, quarterly, or semi-annually – for the past ten years to redact income relating to works in which Plaintiffs do not have an interest and to search for income relating to 243 discrete compositions is an unduly burdensome exercise not reasonably calculated to lead to the discovery of relevant documents to this action.

Second, the royalties processed by Kobalt on behalf of Plaintiffs from non-Spotify sources has no relevance to the action at bar. As a collection agent for Bridgeport in connection with the Compositions, Kobalt unquestionably processed and received royalties relating to the Compositions from non-Spotify sources. This fact and documents reflecting the amounts

received (which would need to be heavily redacted per the foregoing) will not assist Spotify or any other party in this action determine whether Spotify (and not any third-party) had a license to stream the subject Compositions and is not needed to render a damages calculation for Spotify's alleged infringement.

With particular reference to the royalties processed and/or received by Kobalt from Harry Fox Agency ("HFA") in connection with the Compositions, Kobalt maintains its position that non-Spotify sources are irrelevant and, consistent with the above explanation, will not be produced. As we explained on the phone yesterday, it is our understanding that the HFA statements are broken out into different sub-accountings for income from different sources and therefore Spotify-related income can be easily separated from income from other sources. We will still need to redact information concerning royalties for all compositions except the Compositions within the Spotify sub-statements, which is still a significant undertaking, especially in light of Kobalt's agreement to produce all monthly and/or quarterly Spotify-related HFA statements from January 1, 2011 to the present.

In sum, in response to Request No. 2, Kobalt will produce documents and communications reflecting Kobalt's processing of and/or receipt of royalties from or relating to Spotify only, i.e., HFA statement reflecting Spotify income only, in connection with the Compositions from January 1, 2011 to date.

**Request No. 3**: Kobalt will produce unredacted copies of the accounting statements provided to Plaintiffs and/or Bridgeport for payments relating to any of the Compositions from January 1, 2011 to date. However, because such accountings will make reference to and contain information regarding foreign royalties and domestic non-Spotify income, from HFA and other sources, Kobalt's production of same is subject to, and does not waive, Kobalt's objection – as explained in response to other requests herein – that Spotify is not entitled to (i) the underlying agreements and/or royalty statements or accountings from non-Spotify sources, and (ii) documents and communications relating to the commercial exploitation of the Compositions outside of the United States.

**Requests Nos. 4 and 43**: This request is also overbroad and unduly burdensome, and seeks documents that are neither relevant to any party's claims or defenses in the action nor proportional to the needs of the case. Kobalt's agreements with third parties, including other streaming services, have no conceivable nexus to Spotify's claims that Kobalt granted a mechanical license to Spotify to stream the Compositions. Moreover, Spotify does not allege that it relied on anything other than Spotify's and Kobalt's mechanical license agreement (the "Mechanical License Agreement") and/or representations or omissions to Spotify and/or its agent, in exploiting the Compositions on its platform. Thus, whatever representations or omissions Kobalt may have made to third parties, if any, is irrelevant to the instant action.

Kobalt will agree to produce documents and communications relating to Kobalt's synch licenses or individual mechanical licenses for any of the Compositions or for Plaintiffs' repertoire for use in the United States from January 1, 2011 to the present that it has within its

possession, custody or control. However, Kobalt will not agree to produce its license agreements with third parties that license Kobalt's entire catalogue without reference to any particular works, authors, publishers, or repertoires (what we have described as "blanket licenses"). Such blanket licenses will not assist a trier of fact in determining any issue of this case and it is an unduly burdensome exercise to require Kobalt to search for, review, and produce those agreements and related communications regarding the negotiation or effectuation thereof.

**Request No. 5**: To the extent that this request seeks documents and communications reflecting payments from HFA for the Compositions from sources other than Spotify, Kobalt objects for all the reasons set forth in our objections to Request No. 2. Kobalt will produce documents and communications relating to payments or accountings made by HFA and received from Kobalt from HFA for use of any of the Compositions by Spotify.

**Request No. 6**: Kobalt will produce documents and communications relating to HFA's licensing of any of the Compositions specifically or with respect to Spotify in particular, from January 1, 2011 to the present. However, and similar to Kobalt's objections to Requests Nos. 2 and 5, to the extent Request No. 6 seeks documents and communications – such as royalty accountings – relating to HFA's licensing of any of the Compositions to any entity other than Spotify, Kobalt objects and will not produce documents relating thereto other than the underlying accountings from Kobalt to Bridgeport and/or Plaintiffs.

**Request No. 19**: This request seeks documents between Kobalt and third parties concerning rights in any of the Compositions, which would ostensibly include the blanket licenses and royalty statements (and related communications) to which we have already objected. Thus, for all of the reasons identified in response to Request No. 2, 4 and 5 above, Request No. 19 is overbroad and unduly burdensome, and seeks documents and information that are neither relevant to any party's claims or defenses in the action nor proportional to the needs of the case. However, consistent with our discussion on Monday, Kobalt will produce (i) communications with third parties which concern or discuss Plaintiffs or the Compositions in particular, and (ii) documents and communications between Sony/ATV and/or HFA, on the one hand, and Kobalt, on the other hand, relating to the Compositions, if any, from January 1, 2011 to the present.

**Requests Nos. 21, 25, and 29**: Kobalt will produce documents responsive to Requests Nos. 21, 25 and 29 from January 1, 2011 to date concerning Kobalt's relationship with Plaintiffs, any Co-Writer, or any Publisher, with the understanding that if there are non-privileged documents and communications concerning the change in 2011 of Kobalt's role from administrator to collecting agent with respect to the Compositions that exist prior to January 1, 2011, Kobalt will produce same. However, because Kobalt continues to be an administrator of the Compositions outside of the United States and Canada and because Kobalt was an administrator of the Compositions for a brief period prior to the time it became a collecting agent with respect to the works, to the extent Requests Nos. 21, 25, and 29 encompass documents "reflecting work performed by [Kobalt] for or on behalf of" Plaintiffs, any Co-Writer, and/or any Publisher with respect to (i) the commercial exploitation of the Compositions outside of the United States or (ii) prior to January 1, 2011, the requests, as worded, are overbroad and unduly

burdensome, and seek documents disproportionate to the needs of the case. Kobalt will not produce the latter two categories of documents in response to Requests Nos. 21, 25, and 29.

**Requests No. 34**: We are informed that Kobalt did not undertake to match ISRCs for any of the Compositions after January 1, 2011 except in connection with the pending and unmatched exercise it undertook with Spotify, and Kobalt will produce relevant documents and communications concerning those efforts.

**Requests Nos. 38-40, 42, and 43**: For all the reasons cited above, including in Kobalt's objections to Requests Nos. 2 and 4 in particular, Kobalt's position is that Kobalt's communications with Streaming Services other than Spotify and/or Third Parties relating to its relationships with Plaintiffs, the Co-Writers, the Publishers, and the Compositions has no relevance to Spotify's claims against Kobalt, which, as alleged, are limited to the purported representations made in the Mechanical License Agreement and/or made to Spotify and/or its agent, HFA. Notwithstanding the foregoing, we are conferring with our client to determine whether any such documents exist, before we confer further with you as to whether Kobalt will agree to produce documents responsive to these requests. In any event, if Kobalt were to agree to produce documents responsive to these requests, Kobalt's search would be limited to documents and communications on and after January 1, 2011.

**Request No. 41**: This request seeks documents and communications concerning statements of accounts retrieved from and/or generated by HFA that refer or relate to the Compositions. However, and as explained in response to Request No. 2 above, insofar as the HFA statements of account concern or reflect non-Spotify income, such statements are irrelevant and will not be produced. Moreover, the effort and work needed to redact such statements to prevent the disclosure of other writers' and publishers' income unrelated to Plaintiffs and/or the Compositions, would be onerous. Kobalt will produce documents and communications concerning statements of account retrieved from and/or generated by HFA that refer or relate to any of the Compositions in connection with Spotify only from January 1, 2011 to date.

**Request No. 57**: As worded, Request No. 57 is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims and defences of any party and are disproportionate to the needs of this case. We read this request as demanding copies of Kobalt's executed administration agreements with each of its clients. This is unacceptable to Kobalt. Moreover, even if Spotify had access to Kobalt's agreements with other of its clients, that would not assist Spotify in determining the nature of the relationship was between Kobalt and Plaintiffs/Bridgeport, which can be determined by reference to the actual agreements between them, which Kobalt has already agreed to produce. Notably, certain of those agreements, though not the operative one at the time of the Mechanical License Agreement, will be administration agreements that have relevant language reflecting administration terms used by Kobalt. Notwithstanding the foregoing, we have conferred with our client and Kobalt has agreed to produce one or more template U.S. administration agreements in response to this request.

      Please let us know if you have any questions or would like further clarification on any of Kobalt's positions.

      Very truly yours,

      /s/ Brian D. Caplan

      Brian D. Caplan