IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EIGHT MILE STYLE, LLC; MARTIN AFFILIATED, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>SPOTIFY USA INC.; HARRY FOX AGENCY, LLC,<br><br>    Defendant.<br><br>SPOTIFY USA, INC.,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>KOBALT MUSIC PUBLISHING AMERICA, INC.<br><br>    Third-Party Defendant. | Case No. 3:19-cv-00736<br>Judge Trauger/Frensley |

## ORDER

### I. INTRODUCTION

Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC (collectively, "Plaintiffs") filed this lawsuit against Defendants Spotify USA, Inc. ("Spotify") and The Harry Fox Agency, LLC ("HFA") alleging that Spotify committed copyright infringement by reproducing and distributing 243 compositions in the United States without obtaining valid mechanical licenses to do so, and that HFA assisted the alleged infringement. Docket No. 97 (First Amended

Complaint), p. 44-48.  Spotify and HFA have denied the relevant accusations.  Docket No. 129.  Spotify in turn brought suit against third-party Defendant Kobalt Music Publishing America, Inc. ("Kobalt"), asserting that Kobalt agreed to "indemnify Spotify for claims by any third party (such as Eight Mile) alleging that Spotify infringed the third party's rights."  Docket No. 91, p. 2; *see* Docket No. 93.

This matter is now before the Court upon Spotify's Motion for a Protective Order Barring the Deposition of Daniel Ek.  Docket No. 221.  Spotify has also filed a Supporting Memorandum and other supporting documents.  Docket Nos. 222, 222-1 through 222-16.  Plaintiffs have filed a Response in Opposition and supporting documents.  Docket Nos. 223, 223-1 through 223-34.  Spotify has filed a Reply and additional supporting documents.  Docket Nos. 228, 228-1 through 228-8.  For the reasons set forth below, Spotify's Motion (Docket No. 221) is DENIED.

## II. LAW AND ANALYSIS

### A. Discovery Requests and Protective Orders

Discovery in federal court is governed by the Federal Rules of Civil Procedure, which provide that a party may obtain discovery as long as the information sought is within the proper scope.  Fed. R. Civ. P. 34(a); *see also* Fed. R. Civ. P. 26(b)(1).  Rule 30 provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court."  Fed. R. Civ. P. 30(a)(1).  In general, the scope of discovery extends to nonprivileged information that is relevant to any party's claim or defense, regardless of whether the information sought is admissible, that is "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Rules were amended, effective December 1, 2015, in part to address the alleged costs and abuses attendant to discovery.  Under Rule 26, "[t]here is now a specific duty for the court and the parties to consider discovery in the light of its 'proportional[ity] to the needs of the case . . . .'"

*Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 WL 323748, 2016 U.S. Dist. LEXIS 11133, at *2, (M.D. Tenn. Jan. 27, 2016), *quoting* Fed. R. Civ. P. 26(b)(1). The following factors are relevant to a consideration of whether the scope of discovery is proportional:

> (1) the importance of the issues at stake in the action,
> (2) the amount in controversy,
> (3) the parties' relative access to relevant information,
> (4) the parties' resources,
> (5) the importance of the discovery in resolving the issues, and
> (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added). "Nevertheless, the scope of discovery is, of course, within the broad discretion of the trial court." *United States v. Carell*, No. 3:09-0445, 2011 U.S. Dist. LEXIS 57435 at *5 (M.D. Tenn. May 26, 2011), *quoting Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted).

A motion for a protective order is available to "a party or any person from whom discovery is sought." Fed. R. Civ. P. 26(c). The court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Good cause for the issuance of a protective order is established with "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on merely conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir 2001) *quoting Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987).

The Court has the authority under Rule 26(b)(2)(C) to limit the frequency or the extent of discovery otherwise allowed by the rules. The Sixth Circuit has observed that "the desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Surles v. Greyhound Lines, Inc.*, 474 F. 3d 288, 305 (6th Cir. 2007), *quoting Scales v. J. C. Bradford*, 925 F. 2d 901, 906 (6th Cir.

1996). As to the judge's role in discovery disputes, "[t]he revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery." *Surles,* 474 F. 3d at 305. That sentiment has continued through subsequent revisions to Rule 26 including the most recent ones.

The Court also possesses inherent authority to manage litigation. As noted by the First Circuit, "[a]s lawyers became more adept in utilizing the liberalized rules . . . [t]he bench began to use its inherent powers to take a more active, hands on approach to the management of pending litigation." *In re San Juan DuPont Plaza Hotel Fire Litigation*, 859 F. 2d 1007, 1011 (1st Cir. 1988). "The judiciary is 'free, within reason to exercise this inherent judicial power in flexible pragmatic ways.'" *Id*. at 1011, n.2, *quoting HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Ins.*, 847 F. 2d 908, 916 (1st Cir. 1988).

**B. <u>Spotify's Motion</u>**

Spotify seeks a protective order barring the deposition of Daniel Ek, Spotify's President and the Chairman and Chief Executive Officer of Spotify AB, Spotify's Swedish corporate parent company. Docket No. 222, p. 1. Spotify contends that such a protective order is warranted because Mr. Ek lacks personal knowledge of the issues in this case, deposing Mr. Ek would result in annoyance, harassment, and undue burden and expense and testimony on the topics that Plaintiffs have identified is available from other witnesses. *Id.* at 10-17.

As set forth above, a party may obtain discovery of nonprivileged information that is relevant to any party's claim or defense, as long as it is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Court may issue a protective order prohibiting the discovery of even relevant and proportional information to protect against annoyance, embarrassment, oppression, or undue burden or expense if the person from whom the discovery is sought

4

provides specific facts showing clearly defined and serious injury resulting from the discovery sought. Fed. R. Civ. P. 26(c)(1); *Nix*, 11 F. App'x at 500. Therefore, the Court's inquiry begins with determining whether the information sought is relevant and proportional, and then moves to whether Spotify has shown good cause for a protective order.

### 1. Relevance

Plaintiffs contend that "Mr. Ek's testimony[] directly bears on the heart of Plaintiffs' copyright infringement claim for the period of time which Mr. Ek has publicly stated to have been directly involved with Spotify's launch in the United States." Docket No. 223, p. 7. Plaintiffs refer to "countless publicly available sources where Mr. Ek represented or at least strongly intoned [*sic*] both playing a pivotal role in bringing Spotify to the United States and negotiating the requisite licenses" and argue that they are entitled to ask Mr. Ek about some of his public statements regarding that time in Spotify's history. *Id.* at 15-16. Plaintiffs also assert that Mr. Ek is likely to have relevant information regarding Spotify's relationship with HFA, despite his Declaration disclaiming discussions with HFA or a role in Spotify's decision to engage HFA. *Id.* at 16. Plaintiffs describe Mr. Ek's Declaration as "surgical" in this regard, asserting that:

> Mr. Ek does not say that he lacks personal knowledge about HFA's efforts to secure mechanical licenses. He also does not disclaim: knowledge of HFA's ability (or lack thereof) to timely serve NOIs; knowledge that his employees at Spotify specifically instructed HFA from the very beginning to send NOIs well after the date of first distribution; knowledge of HFA's rate of matching sound recordings to the underlying compositions and whether HFA's competitors were more successful; and whether publishers were dissatisfied with the HFA process.[1] Indeed, Mr. Ek received an email from a publisher representing over 200 million plays looking to directly license with Spotify "instead of having to go through

---

[1] "NOIs" are Notices of Intention to Obtain Compulsory License. They must be sent out within thirty days of first distribution to be effective under the law. *See* 17 U.S.C. § 115(b).

> the Harry Fox Agency." Doc. No. 222-14. It is entirely feasible, therefore, that Mr. Ek has direct, personal knowledge that U.S.-based music publishers were dissatisfied with HFA's role in mechanical licensing.

*Id.* at 16, *quoting* Docket No. 222-14. Plaintiffs further contend that Mr. Ek's testimony "will bear weight on whether Spotify's later conduct in its efforts to match sound recordings to their underlying musical compositions was commercially reasonable under the Music Modernization Act ["MMA"] . . . ." *Id.* at 7. Plaintiffs maintain that "[t]hese facts also directly pertain to whether Spotify's continued relationship with HFA was commercially reasonable under the MMA" and that it is "inconceivable that Mr. Ek did not know about [issues matching sound recordings to the musical compositions on Spotify]." *Id.* at 16-17. Plaintiffs argue that "Spotify had to know at launch that HFA was incapable of this matching process, and if it did not know at launch, certainly knew when faced with a potential lawsuit and settlement with the National Music Publishers Association, class action lawsuits, and a rash of individual lawsuits, yet Spotify has continued with HFA as its licensing agent." *Id.* at 16. Specifically, Plaintiffs seek Mr. Ek's testimony regarding topics including:

> [F]acts relevant relating to [*sic*] the creation of Spotify, first mover advantage, licensing practices at that time and shortly after inception, the relationship between Spotify and HFA, efforts to license, including NOI's [*sic*] immediately following inception and thereafter, MMA compliance, accounting policies, and software and policies implemented to assist in composition matching.

Docket No. 222-6, p. 3; *see* Docket No. 222, p. 11.

Spotify denies that Mr. Ek can provide any relevant information, arguing that "Eight Mile's pursuit of Mr. Ek ignores the fact that he is not directly involved in Spotify's day-to-day licensing practices, let alone its U.S. mechanical-licensing practices in particular." Docket No. 222, p. 6, *citing* Docket No. 222-9, p. 3. Spotify also cites the Declaration of James Duffett-

6

Smith, which states that while Mr. Duffett-Smith was "involved in overseeing Spotify's U.S. mechanical licensing, including in advance of Spotify's July 14, 2011 U.S. launch," "Mr. Ek was *not* directly involved in Spotify's U.S. mechanical licensing at launch, or for the remainder of [Mr. Duffett-Smith's] tenure at the company, including with respect to Spotify's engagement of HFA as its mechanical rights administrator." Docket No. 222, p. 7, *quoting* Docket No. 222-10 (Declaration of James Duffett-Smith), p. 3-4 (emphasis added in brief).

Spotify maintains that Mr. Ek's high-level executive role involves providing "general direction to the company as a whole" and that he "does not play an active role in Spotify's efforts to license musical compositions or distribute and account for related royalties." Docket No. 222, p. 11, *citing* Docket No. 222-9, p. 3-4. Further, Spotify relies on Mr. Duffett-Smith's Declaration as further evidence of this point: "[t]o the best of [Mr. Duffett-Smith's] knowledge and recollection, Mr. Ek was not directly involved in Spotify's mechanical licensing at or after the launch," and that although Mr. Ek and Mr. Duffett-Smith worked closely together, "Mr. Duffett-Smith *never* discussed mechanical licensing with Mr. Ek." Docket No. 222-10, p. 3; Docket No. 222, p. 12 (emphasis in original).

Additionally, Spotify asserts that "[n]othing in the voluminous record established to date remotely suggests that Mr. Ek possesses discoverable information regarding either the settlement or direct license agreements executed by Kobalt." [2] Docket No. 222, p. 12, *citing* Docket No. 222-13, p. 3. Spotify describes the email that Plaintiffs reference as "one 'cold' communication"

---

[2] Plaintiffs characterize this argument as "a straw man," asserting that "[n]ever have Plaintiffs suggested that Mr. Ek has information about the Kobalt License nor that they intended to question him on it, because the Kobalt license [*sic*] is obviously inapplicable to the [Eight Mile Style] Compositions." Docket No. 223, p. 13.

that Mr. Ek "forwarded . . . to another employee without adding any commentary." *Id.* at 13, *citing* Docket No. 222-14.

Under the broad definition of relevance for the purposes of discovery, the Court finds that Plaintiffs have established the relevance of the information that they seek from Mr. Ek to the claims and defenses of this case, including Plaintiffs' allegations that "Spotify's apparent business model from the outset was to commit willful copyright infringement first, ask questions later, and try to settle on the cheap when inevitably sued," and that Spotify, acting through HFA, knowingly established a system of sending untimely and ineffective NOIs. Docket No. 97 (Amended Complaint), p. 5, 8. To the extent that Mr. Ek had no involvement in securing mechanical licenses, as he declares, Plaintiffs want to ask him why he and Spotify "made no direct attempt to secure mechanical license agreements that would allow the underlying musical compositions to stream rather than outsourcing that obligation to HFA (Spotify needed both)." Docket No. 223, p. 4. While Spotify argues that Plaintiffs offer only "speculation about what Mr. Ek may have known," which is "no substitute for record evidence," the broad standard for relevance in discovery does not require that Plaintiffs have evidence of the evidence that they seek. *T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cty*, 2018 WL 3348728, 2018 U.S. Dist. LEXIS 113517, at *17 (M.D. Tenn. July 9, 2018). Plaintiffs must necessarily speculate as to what Mr. Ek may have known before they have a chance to ask him.

As to Spotify's argument that, regardless of Mr. Ek's personal knowledge or lack thereof, Spotify's selection of HFA and United States launch in 2011 are irrelevant to this lawsuit because the launch "took place outside the three-year statute of limitations for [Plaintiffs'] claims," the Court finds that while issues related to an applicable statute of limitations might be relevant to determining the proportionality of discovery, there is no bright-line rule confining

8

discovery to the limitations period. *See* Fed. R. Civ. P. 26(b)(1). Instead, "[r]elevance for purposes of discovery is broadly construed, and the information sought need not be admissible to be discoverable." *See T.C. ex rel. S.C.*, 2018 U.S. Dist. LEXIS 113517, at *17.

Further, the Court finds that the current bifurcation of discovery into two phases (liability and MMA; then damages) does not preclude Plaintiffs from deposing Mr. Ek during this phase, as they "seek to depose Mr. Ek on his conduct in and around bringing Spotify to the United States – i.e.[,] conduct and events that directly speak to liability and the MMA – regardless of whether Mr. Ek acted willfully or not." Docket No. 223, p. 25. Nevertheless, in recognition of Mr. Ek's Declaration, in which he disclaims virtually all personal knowledge of the subject matter of this case, the Court will put some restrictions on the parameters of his deposition, as further described below.

### 2. **Proportionality**

Spotify contends that Eight Mile should not be allowed to depose Mr. Ek "for the additional reason that the information it seeks could be obtained from other witnesses whom Spotify has already made available or whom Spotify has agreed to make available upon reasonable request." Docket No. 222, p. 15. This is essentially an argument that the discovery sought is not proportional to the needs of the case because it is available from another more convenient source. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Spotify identifies the following individuals as those potentially able to supply the information that Plaintiffs seek: Adam Parness (former Global Head of Publishing), Lisa Selden (current Global Head of Publishing Operations, Lucy Bridgwood (Associate General Counsel for Global Publishing Licensing), Donny Kanner (a Program Manager in Publishing Operations), and especially James Duffett-Smith (former Head of Licensing Business Affairs) (described by Spotify as "[o]ne of the employees who did

oversee mechanical licensing in connection with Spotify's launch in the United States, including the selection of HFA"). Docket No. 222, p. 12, 16. Spotify argues that "[i]f Eight Mile truly sought information relevant to its case, and was not on a mission to harass and annoy Spotify's Chairman and CEO, it would have first deposed these witnesses before pursuing Mr. Ek's deposition and would have sought to elicit testimony about Mr. Ek during the depositions that have taken place." *Id.* at 16-17.

Citing Judge McCalla's decision in the *Bluewater* case, Plaintiffs maintain that "[f]or the topics Plaintiffs intend to ask, only Mr. Ek is qualified to testify . . . ." Docket No. 223, p. 17. Plaintiffs assert that:

> No one else can explain Mr. Ek's decision to rigorously negotiate agreements with record labels while passing the buck on musical compositions and purportedly being hands-off with regard to HFA. No one else can testify as to whether Mr. Ek knew from the outset that HFA was not up to the task of securing mechanical licenses at the scale Spotify required, and thus was not a commercially reasonable vendor.

*Id.*

As to the individuals suggested by Spotify, Plaintiffs argue that they are not appropriate substitutes for Mr. Ek. Plaintiffs note that Mr. Parness, Ms. Selsen, and Ms. Bridgwood all joined Spotify well after its launch in the United States. *Id.* at 18-20. Additionally, Plaintiffs maintain that each of the proposed individuals would be an inadequate substitute for various reasons. Plaintiffs assert that "given that he was not designated as a 30(b)(6) witness, and was not employed in 2011, Mr. Parness would not have been able to testify about the information Plaintiffs seek from Ek." *Id.* at 19. Regarding Ms. Bridgwood, Plaintiffs contend that she was not designated for the topics they want to discuss with Mr. Ek, and that because she is currently in-house counsel for Spotify, "conducting Ms. Bridgwood's [deposition] involved a vast number

10

Case 3:19-cv-00736 Document 238 Filed 03/31/22 Page 10 of 16 PageID #: 2651

[of] attorney-client privilege issues." *Id.* at 18. Also, Plaintiffs assert that "because Spotify's counsel would only let the witness answer questions regarding external communications, Plaintiffs were not able to ask Ms. Bridgwood if there were internal discussions at Spotify about any other vendor aside from HFA or MRI." *Id.* at 19 (footnote omitted).

Plaintiffs assert that there was not enough time left in Mr. Kanner's deposition after Kobalt's counsel finished for Plaintiffs to meaningfully examine him, and that Spotify's counsel "routinely objected [to] scope, putting objections-after-objections on the record eating up the precious little time in the 7-hour time limit remaining for the non-noticing party." *Id.* at 20. As to Lisa Selden, Plaintiffs maintain that they did "meaningfully examine Ms. Selden regarding Spotify's relationship with HFA," but that "[d]espite Spotify's apparent assertion that Ms. Selden is prepared to discuss licensing at Spotify's U.S. Launch, Ms. Selden expressly stated: 'I'm not a lawyer. I can't comment on licensing." *Id.*, *citing* Docket No. 223-33.

Regarding Mr. Duffett-Smith, Plaintiffs argue that he is not a substitute for Mr. Ek because "Mr. Duffett-Smith was in-house counsel during the relevant time frame and cannot know everything relevant that Mr. Ek knows." Docket No. 223, p. 17. Further, due to his role as Spotify's in-house counsel, Plaintiffs contend that "Mr. Duffett-Smith's ability to testify about the relevant time fame will necessarily involve working through complex issues of attorney-client privilege and not alleviate Plaintiff's [*sic*] need to depose Mr. Ek." *Id.* [3]

---

[3] The Parties agree that Kobalt previously scheduled Mr. Duffet-Smith's deposition but subsequently decided not to conduct it. *See* Docket No. 223, p. 9-10. According to Spotify, "Eight Mile declined to proceed as well—despite Spotify's counsel specifically informing Eight Mile's counsel of Mr. Duffett-Smith's involvement with U.S. mechanical-licensing issues in the run up to and after Spotify's launch in the United States." Docket No. 222, p. 12. Spotify maintains that under the circumstances, Plaintiffs' failure to depose Mr. Duffett-Smith demonstrates that Plaintiffs' true motive is to harass and annoy Mr. Ek, not to obtain the information that they claim to seek. Docket No. 222, p. 12-14. Plaintiffs respond that this decision was based solely on the fact that they were "not prepared, on one days' [*sic*] notice, to

The Court finds that Spotify has not established that the testimony of any of these individuals is a complete and appropriate substitute for that of Mr. Ek such that the information sought from him could clearly be obtained from a more convenient source. None of them appear to have access to the exact same information as Mr. Ek, in part because (aside from Mr. Duffett-Smith), none of them were with the company at the time of Spotify's U.S. launch. The role of Ms. Bridgwood and Mr. Duffett-Smith as attorneys for Spotify also complicates their ability to answer questions without violating attorney-client privilege. And although Spotify argues that the same privilege issues would be present in Mr. Ek's deposition because "if he had any knowledge on the topic [of mechanical licensing in the United States]—he does not—he would have obtained it through conversations with in-house counsel," it is not clear from the evidence before the Court that Mr. Ek's knowledge on this or any other relevant topic is identical to that of his lawyers. Docket No. 228, p. 11.

Further, under very similar circumstances, Judge McCalla has already addressed the issue of whether the testimony of another Spotify employee can be substituted for that of Mr. Ek, finding that:

> Based on the organizational charts, the briefing on the issue, and discussion during the status conferences, it appears that the only person at the Defendant corporation who can fully respond to Plaintiffs' inquiries, particularly as to the Defendant's overall licensing strategy during the applicable time frame, is Daniel Ek.
>
> . . .

---

go forward after Kobalt cancelled Mr. Duffett-Smith's deposition. Docket No. 223, p. 17. While the Court does find Plaintiffs' decision to be somewhat curious (surely they were prepared, one day before the scheduled deposition, to ask at least some questions), it does not find that this is evidence of bad faith in seeking to depose Mr. Ek. For the reasons explained herein, Plaintiffs are not required to exhaust all other funds of knowledge before seeking to depose Mr. Ek.

> The 2011 and 2013 organizational charts suggest that only two
> persons fall within the Spotify organization at an executive level
> sufficient to provide the testimony that Plaintiffs appropriately
> seek—Daniel Ek and Kenneth Parks. Only Ek avoids the problem
> of the complexities of the attorney-client privilege and has the
> decision-making authority to speak authoritatively on the subjects
> designated by Plaintiffs in the cases now pending before the Court.

*Bluewater Music Servs. Corp., et al. v. Spotify USA Inc.*, Case No. 3:17-cv-01051, Docket No. 299, p. 2-3 (M.D. Tenn. Apr. 23, 2019).

### 3. <u>Annoyance, Embarrassment, Oppression, Undue Burden or Expense</u>

Spotify maintains that "[t]he context of this discovery dispute makes it abundantly clear that Eight Mile does not seek Mr. Ek's deposition for any reason other than to harass and annoy him and to burden Spotify in this litigation." Docket No. 222, p. 13-14. As evidence for this proposition, Spotify cites the fact that Plaintiffs did not request that Mr. Ek be a document custodian and asserts that "none of the 15 witnesses deposed to date—over the course of 23 days of testimony—has remotely suggested that Mr. Ek has knowledge relevant to this case . . . ." *Id.* at 2, 13-14. Spotify cites the "significant time" that Mr. Ek spends "preparing for, traveling to, and participating in meetings with Spotify's leadership, business partners, employees, and other stakeholders," and points to specific "meetings and events scheduled in February (when the company releases its year-end financials) and March . . . ." *Id.* at 14.

Much of Spotify's argument regarding annoyance, embarrassment, oppression, undue burden or expense rests on the theory that depositions of high-level executives presumptively create undue burden and other harms. *See* Docket No. 222, p. 8-11, 14 ("In addition, Mr. Ek leads a corporate entity with a global reach, serving hundreds of millions of customers across 184 geographic markets. Requiring him to set aside hours to prepare and sit for a deposition *necessarily* causes him annoyance, results in inconvenience to both him and Spotify, and

subjects him and the company to undue burden.") (emphasis added). Quoting a case from the Eleventh Circuit, Spotify contends that "[w]hen parties do not attempt to first obtain information from lower-level employees with more direct knowledge of the facts, deposing a high-ranking executive is improper." Docket No. 222, p. 19 (internal quotation marks omitted). Yet, as Plaintiffs point out (and as Spotify acknowledges, while citing out-of-Circuit cases that embrace a different theory), the Sixth Circuit has not adopted the "apex" doctrine, in which executives at the highest corporate levels are presumed to be protected from deposition unless they are shown to have unique personal knowledge to which no other employee can testify. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). Instead, in this Circuit, depositions of high-level executives are addressed the same as any other potential witness: by examining relevance, proportionality, and (where a protective order is sought), whether there are specific facts showing that the deposition would lead to a clearly defined and serious injury.[4] *Id.*

The Court is inclined to agree with Plaintiffs that "Mr. Ek's entire argument for burden is, essentially, that he is busy." Docket No. 223, p. 21. Due to the passage of time, the year-end financials and their attendant February meetings have passed, along with the planned events of March. Undoubtedly Mr. Ek has a full schedule at the present time as well; the Court credits Spotify's assertion that he is very busy indeed. Yet, the issue of proper licensing relationships with the artists whose work comprises the entirety of Spotify's business and its sole product is surely also a matter of importance to Spotify, worthy of some of Mr. Ek's time and attention.

---

[4] The present issue of Mr. Ek's deposition is distinguishable from this Court's prior holding in *Fox v. Amazon*. 2017 WL 9476870, at *2 (M.D. Tenn. Sept. 21, 2017). The crux of the case in *Fox* was the sale of one item (of which Amazon was not the actual seller, but merely the online vendor) and there were no allegations that the sale of defective products was a core part of Amazon's business plan and strategy from its founding. Here, Plaintiffs allege that failure to properly secure mechanical licenses is and has always been the underlying strategy and practice of Spotify's entire business. *See* Docket No. 97.

Further, interruption to Mr. Ek's schedule can be minimized by conducting his deposition remotely and limiting its duration. Plaintiffs have "committed" to conducting the deposition "in less than a full day" and "believe that they can ask Mr. Ek about the topics about which only he has knowledge in approximately three to four hours on the record." Docket No. 223, p. 22.

For these reasons, the Court finds that Spotify has not established that the deposition of Mr. Ek would cause embarrassment, oppression, or undue burden or expense. Upon review of Mr. Ek's Declaration, the Court finds that Spotify has established that Plaintiffs' taking of Mr. Ek's deposition would likely cause him to be annoyed. As Mr. Ek has disclaimed personal knowledge of many relevant topics, the Court finds that some burden would be imposed by allowing Plaintiffs to depose him for the full time permitted. As previously mentioned, Plaintiffs have offered to take the deposition in "less than a full day," or "three to four hours." In recognition of the potential for burden, the Court will further limit the deposition as further discussed below.

### 4. **Specific Facts Showing Clearly Defined and Serious Injury**

As set forth above, a court may issue a protective order to shield a party or person from an enumerated list of harms, including annoyance. Fed. R. Civ. P. 26(c)(1). But, the court must find that there is good cause for the protective order, which must be demonstrated by "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought," rather than conclusory statements. *Serrano*, 699 F.3d at 901; *Nix*, 11 F. App'x at 500. The Court finds that Spotify has not made such a showing. There is not even an allusion to any serious injury likely to be the consequence of Mr. Ek's deposition, much less specific facts to support such a finding. *See* Docket Nos. 222, 228.

## III. CONCLUSION

For the foregoing reasons, Spotify's Motion (Docket No. 221) is DENIED. In recognition of the fact that Mr. Ek has denied having personal knowledge of many areas of potential inquiry, and to minimize the likely annoyance to Mr. Ek and the disruption of his schedule, Plaintiffs may take the deposition of Mr. Ek by remote means only for a maximum of three hours.

                                       **IT IS SO ORDERED.**

                                       **Jeffery S. Frensley**
                                       **United States Magistrate Judge**