| | |
|---|---|
| EIGHT MILE STYLE, LLC; MARTIN AFFILIATED, LLC,<br><br>    *Plaintiffs,*<br><br>v.<br><br>SPOTIFY USA INC.; HARRY FOX AGENCY, LLC,<br><br>    *Defendant.* | Civil Case No. 19-CV-00736<br><br>Hon. Aleta A. Trauger<br><br>JURY DEMAND |
| SPOTIFY USA INC.,<br><br>    *Third-Party Plaintiff*,<br><br>v.<br><br>KOBALT MUSIC PUBLISHING AMERICA, INC.,<br><br>    *Third-Party Defendant*. | |

**SPOTIFY USA INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR REVIEW OF NONDISPOSITIVE ORDER OF
<u>MAGISTRATE JUDGE DENYING PROTECTIVE ORDER</u>**

# INTRODUCTION

Spotify respectfully requests review of Magistrate Judge Frensley's order denying Spotify's motion for a protective order with respect to the deposition of its Chairman and Chief Executive Officer, Daniel Ek. While Spotify disagrees that plaintiffs are entitled to take Mr. Ek's deposition at all, Spotify's objection seeks to modify the order to defer any deposition of Mr. Ek until the damages phase of this case on the basis of two legal errors.

*First*, the order below violates this Court's case management order requiring bifurcation of this case between liability and damages. Specifically, as explained further below, Magistrate Judge Frensley's order authorizes Eight Mile to depose Mr. Ek about Spotify's alleged willfulness. *See* Order 8 (Dkt. 238). But willfulness is an element of damages—and all agree that this Court previously deferred discovery as to damages. Magistrate Judge Frensley assumed that this Court's order requiring bifurcation does not preclude Mr. Ek's deposition now because he relied on Eight Mile's representation that Mr. Ek's "'conduct in and around bringing Spotify to the United States . . . directly speak[s] to liability and the MMA.'" Order 9 (quoting Opp. 25 (Dkt. 223)). But Eight Mile's conclusory allusion to "liability and the MMA" is untethered from the actual substance of Eight Mile's own arguments, notably "allegations that 'Spotify's apparent business model from the outset was to commit *willful* copyright infringement first, ask questions later, and try to settle on the cheap when inevitably sued,' and that Spotify, acting through HFA, *knowingly* established a system of sending untimely and ineffective NOIs." *Id.* at 8 (quoting Am. Compl. 5, 8 (Dkt. 97)) (emphases added). These allegations turn squarely on intent—which goes only to willfulness—meaning that, under this Court's case management order, Mr. Ek's deposition should not be held (if at all) until the damages phase.

*Second*, after conclusion of the briefing on Spotify's motion, Eight Mile has made an about-

Case 3:19-cv-00736   Document 242   Filed 04/14/22   Page 2 of 12 PageID #: 2687

face and now has noticed the deposition of a former high-level Spotify employee, James Duffett-Smith. This change in tune further underscores that Magistrate Judge Frensley erred as a matter of law in his interpretation of Rule 26. Specifically, Magistrate Judge Frensley concluded that a party need not seek information from more readily accessible sources—such as other senior employees—before seeking to depose a higher-level executive who lacks direct knowledge. Order 14. Yet Rule 26 itself expressly limits discovery when it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). As Spotify previously contended—and as Eight Mile apparently now has come to accept—Mr. Duffett-Smith is a far better source than Mr. Ek for information about Spotify's mechanical licensing at the time of U.S. launch. Mr. Duffett-Smith's sworn declaration shows that **he was** "involved in overseeing Spotify's U.S. mechanical licensing" and that **Mr. Ek was not**. *See* Duffett-Smith Decl. ¶¶ 5-6 (Dkt. 222-10); Ek Decl. ¶¶ 8-9 (Dkt. 222-9). And now Mr. Duffett-Smith's deposition is on calendar for two weeks from today. Because plaintiffs will have had the opportunity to depose the witness most knowledgeable about the asserted liability topics relating to Spotify's launch, Mr. Ek's deposition now is inappropriate and should be deferred until the damages phase of the case (should we even reach that phase).

## LEGAL STANDARD

Rule 72 provides that, when reviewing a decision on a nondispositive matter referred to a magistrate judge, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The clearly erroneous standard applies to factual findings, while legal conclusions are reviewed under the contrary to law standard." *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F. Supp. 3d 830, 832 (M.D. Tenn. 2018). The district court should modify or set aside the magistrate judge's legal

conclusions if they "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Id*. at 832-33 (citation omitted). This principle also applies when the magistrate judge's legal conclusions contradict the Federal Rules of Civil Procedure, "which have the same force of law that any statute does." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020).

## ARGUMENT

**I.  By Authorizing Eight Mile To Depose Mr. Ek Concerning Spotify's Alleged Willfulness, The Order Below Violates This Court's Order That Discovery On That Topic Is Reserved For The Second Phase Of This Bifurcated Case.**

According to Magistrate Judge Frensley, the Court's bifurcation of this case does not preclude Mr. Ek's deposition because he relied on plaintiffs' representation (Opp. 25) that Mr. Ek's "conduct in and around bringing Spotify to the United States . . . directly speak[s] to liability and the MMA." Order 9 (internal quotation marks omitted). But plaintiffs' representation is a misdirection; a throwaway statement not supported by *any* record evidence or legal basis. In fact, the topics that Eight Mile identified to support that representation relate only to Spotify's *intent*, which has nothing to do with either liability or MMA compliance.

Specifically, in Eight Mile's framing, when Spotify launched in the United States, it "made a decision to infringe now and deal with the fall out later." Opp. 6. Eight Mile's counsel made the same argument in *Bluewater Music Services Corp. v. Spotify USA, Inc.*, No. 17-1051 (M.D. Tenn.). To justify Mr. Ek's deposition there, he argued that "[t]he primary reason I want [Mr. Ek's deposition] is directly on that issue of *willfulness*," a statement he repeated six more times. *See* Apr. 17, 2019 Tr. at 53, 60, 83 (Busch: ". . . [Mr. Ek's testimony] goes directly to willfulness") (Dkt. 228-1); Apr. 16, 2019 Tr. at 25-28, 30 (same) (Dkt. 223-3).

3

This case, unlike *Bluewater*, is bifurcated, and only liability and MMA compliance are currently at issue. As to the issue of liability, there are two overarching questions: (1) whether Spotify was permitted to stream the musical compositions at issue; and if not, (2) whether the timeframe during which it allegedly lacked a license is within the statute of limitations. While Spotify denies characterizations about the intent behind its "apparent business model"—including whether (as Eight Mile contends) it set out to "commit willful copyright infringement" or "knowingly established a system of sending untimely and ineffective NOIs," (Order 8 (quoting Am. Compl. 5, 8) (internal quotation marks omitted))—for present purposes, the important point is that copyright infringement is a strict liability cause of action, and Spotify's state of mind at launch is thus irrelevant to liability. *See King Recs., Inc. v. Bennett*, 438 F. Supp. 2d 812, 852 (M.D. Tenn. 2006).

Nor do questions of intent matter for relevant aspects of MMA compliance—namely, whether Spotify employed "1 or more bulk electronic matching processes that are available to the digital music provider through a third-party vendor on commercially reasonable terms." 17 U.S.C. § 115(d)(10)(B)(i)(II). Eight Mile asserts that Spotify's continued use of HFA after the MMA was enacted did not qualify as use of a "process[] . . . available to [Spotify] through a third-party vendor on commercially reasonable terms" (*id.*) because, in Eight Mile's words, Spotify was "well aware from the beginning [i.e., at U.S. launch in 2011] that HFA was incapable of performing [] matching [] under commercially reasonable efforts" (Opp. 7). But Magistrate Judge Frensley's reliance on this point was misplaced because Eight Mile mischaracterizes the statute: The MMA does not call for a vendor to undertake "commercially reasonable efforts"; it refers to "commercially reasonable

4

terms" on which the vendor should be engaged.[1] In doing so, the MMA also lays out a timeline for this undertaking—"[n]ot later than 30 calendar days after first making a particular sound recording of a musical work available through its service via one or more covered activities, or 30 calendar days *after the enactment date*, whichever occurs *later*." 17 U.S.C. § 115(d)(10)(B)(i) (emphases added). Since its pleadings, Eight Mile has also misquoted this timing provision to replace "later" with "earlier." *See, e.g.*, Spotify Answer to FAC ¶ 23 (Dkt. 129). Eight Mile's persistent misstatements of the actual statutory language manifests in the bizarre suggestion that Mr. Ek's state of mind in 2011 is somehow relevant to the MMA's limitation on liability—the requirements of which Congress enacted, and which only began applying, years later in late 2018. Moreover, the undisputed record evidence shows that Mr. Ek had nothing to do with selecting HFA prior to Spotify's launch or with continuing to use HFA after enactment of the MMA. *See* Ek Decl. ¶ 9 (Dkt. 222-9). Magistrate Judge Frensley did not find to the contrary; had he done so, it would have been clearly erroneous because there would have been zero evidence to support such a finding.[2]

---

[1] Of course, even on Eight Mile's misstated test, the argument falls flat: The Mechanical Licensing Collective—designated by the Register of Copyrights to administer the new blanket license regime for the entire industry—*also* selected HFA to handle its matching following a rigorous vetting process. *See* "How are HFA and ConsenSys involved in the work of The MLC?," The MLC, https://bit.ly/3MagC3L.

[2] Magistrate Judge Frensley did accept that Mr. Ek lacks personal knowledge on the subjects of plaintiffs' inquiry (Order 9), a finding that comports with his decision in *Bluewater*: "While Spotify's birth story and its founder's transition from teenage suburban web page designer to the founder and visionary of Spotify is interesting, nothing about that story suggests that Mr. Ek has first-hand knowledge of the relevant facts at issue in this case; and that story took place years before the conduct alleged in this action." 2019 WL 6904599, at *4 (M.D. Tenn. Mar. 25, 2019).

**II. The Order Misconstrued Rule 26(b)(2)(C)(i) And Therefore Erred As A Matter Of Law In Holding That Litigants Need Not Exhaust More Convenient Sources Of Information First When The Proposed Deponent Is A High-Ranking Corporate Officer.**

As an independent basis for setting aside the order below, Magistrate Judge Frensley erred by ruling that Eight Mile did not need to depose more readily accessible persons like Mr. Duffett-Smith before seeking to depose a high-ranking corporate officer like Mr. Ek. Magistrate Judge Frensley asserted that Spotify relied on the apex doctrine rejected by the Sixth Circuit in *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012), for arguments to the contrary. Order 14. But that was mistaken: Rule 26 and *Serrano* itself—which reflects the Sixth Circuit's interpretation of Rule 26—*require* that courts account for the inconvenience imposed when a high-ranking corporate officer is deposed instead of a more convenient or less burdensome source.

Rule 26 provides that "the court *must* limit the frequency or extent of discovery" if "the discovery sought . . . *can* be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i) (emphases added). This mandatory instruction applies fully to situations where a party seeks to depose a high-ranking corporate officer, and on its face requires that courts consider the existence of a lower-level employee with similar information.[3] *See, e.g.*, *Fusion Elite All Stars v. Varsity Brands, LLC*, 2022 WL 945605, at *2-4 (W.D. Tenn. Mar. 29, 2022) (denying motion to compel deposition of company CEO because, "consistent with the requirements of Rule 26(b)(1) and (2)," "there are multiple ways for

---

[3] Indeed, as Magistrate Judge Frensley wrote, post-*Serrano*, in *Bluewater*, the reality is that Mr. Ek falls within "a category of witnesses" who are "easy targets for harassment" to the point that this Court has articulated a "heightened sensitivity" over their depositions moving forward. 2019 WL 6904599, at *3. Spotify firmly believes this case will never reach the damages phase and thus respectfully submits that the relief Spotify seeks in staying Mr. Ek's deposition until damages is not only without prejudice to plaintiffs' willfulness case but appropriate given the countervailing concerns.

6

plaintiffs to obtain the knowledge they seek that are less burdensome, more convenient, and less expensive than taking [the CEO's] deposition, namely, plaintiffs can depose the multiple other high-ranking executives with more specialized knowledge of both the cheerleading industry and the acquisition of Varsity" (internal quotation marks and brackets omitted)); *Duncan v. Husted*, 2015 WL 631103, at *4 (S.D. Ohio Feb. 12, 2015) (granting motion for a protective order on reconsideration because "the Court also is required to consider the factors set forth in Fed. R. Civ. P. 26(b)(2)(C)(1)," including whether the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive," and the defendant demonstrated that it is "more convenient and less expensive to have [a lower-level official] sit for a deposition, at least in the first instance, and he will presumably speak authoritatively for the Secretary of State given both his position and the fact that the Secretary has offered him as a substitute witness" (internal quotation marks omitted)).

And because *Serrano*, in turn, provides that "even very slight inconvenience" justifies prohibiting an executive's deposition "if there is no occasion for the inquiry and it cannot benefit the party making it," 699 F.3d at 901 (internal quotation marks and citation omitted), where there is complete or near-complete overlap in the information, a protective order is warranted.

Spotify honored that rule, and Eight Mile did not. Spotify offered to assist Eight Mile to identify witnesses knowledgeable on subjects about which Eight Mile believed it needs further information (*see* Mem. 15 (Dkt. 222))—including by identifying Mr. Duffett-Smith. Yet until very recently, Eight Mile declined to pursue the deposition of Mr. Duffett-Smith—a decision Magistrate Judge Frensley himself described (at Order 11 n.3) as "somewhat curious."

Recently, however, Eight Mile reversed course, declaring that it does in fact want to depose Mr. Duffett-Smith. Not aware of Eight Mile's about-face on the issue, Magistrate Judge Frensley

nonetheless excused Eight Mile's prior refusal, concluding that it was permissible for Eight Mile to depose Spotify's CEO before exhausting alternative options. The central reason was that, in reliance on Judge McCalla's conclusion in *Bluewater*, Magistrate Judge Frensley determined that Mr. Duffett-Smith's role as an in-house lawyer for Spotify may present privilege issues that would not arise in a deposition of Mr. Ek. Order 12-13. But that ruling ignores the fact that in *Bluewater*, in a deposition conducted by Eight Mile's counsel after Judge McCalla's ruling, Mr. Duffett-Smith testified extensively about U.S. mechanical licensing at the time of Spotify's U.S. launch. *See* Reply 9-10 (Dkt. 228). Moreover, given his oversight of mechanical licensing at launch, Mr. Duffett-Smith would have been part of any conversations that Mr. Ek would have had on the topic, if any (*see* Duffett-Smith Decl. ¶¶ 7-8), such that any information would be equally protected by the attorney-client privilege whether Mr. Duffett-Smith or Mr. Ek is testifying. In any event, Mr. Duffett-Smith's deposition is scheduled to take place on April 28. At the very least, this Court should consider Spotify's objection with the benefit of Mr. Duffett-Smith's actual testimony in this case, which is likely to furnish Eight Mile with all of the available non-privileged information about U.S. mechanical licensing to which it is entitled—certainly at this first stage of the case.

## CONCLUSION

The Court should accordingly modify Magistrate Judge Frensley's order, and grant Spotify's motion for a protective order barring the deposition of Daniel Ek from proceeding at this time.

8

Case 3:19-cv-00736    Document 242    Filed 04/14/22    Page 9 of 12 PageID #: 2694

Dated: April 14, 2022

Respectfully Submitted,

By: */s/ Aubrey B. Harwell III*

Kathleen M. Sullivan (*pro hac vice*)
Carey R. Ramos (*pro hac vice*)
Rachel E. Epstein (*pro hac vice*)
Cory Struble (*pro hac vice*)
Mario O. Gazzola (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 895-2500
kathleensullivan@quinnemanuel.com
rachelepstein@quinnemanuel.com
careyramos@quinnemanuel.com
corystruble@quinnemanuel.com

Thomas C. Rubin (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101
Telephone: (206) 905-7000
tomrubin@quinnemanuel.com

Aubrey B. Harwell III (BPR #017394)
Marie T. Scott (BPR # 032771)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573
tharwell@nealharwell.com
mscott@nealharwell.com

Matthew D. Ingber (*pro hac vice*)
Rory K. Schneider (*pro hac vice*)
Allison Aviki (*pro hac vice*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
mingber@mayerbrown.com
rschneider@mayerbrown.com
aaviki@mayerbrown.com

Andrew J. Pincus (*pro hac vice*)
Archis A. Parasharami
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3328
apincus@mayerbrown.com
aparasharami@mayerbrown.com

Allison L. Stillman (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
alli.stillman@lw.com

*Attorneys for Spotify USA Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on April 14, 2022, with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. Parties may access this filing through the Court's electronic filing system.

Keane A. Barger
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, Tennessee 37203
Telephone: (615) 320-3700
kbarger@rjfirm.com

Timothy L. Warnock
Loeb & Loeb LLP
35 Music Square East
Suite 310
Nashville, TN 37203
Telephone: 615-749-8301
twarnock@loeb.com

Brian D. Caplan
Robert W. Clarida
Julie Wlodinguer
REITLER KAILAS & ROSENBLATT, LLC
885 Third Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 209-3050
bcaplan@reitlerlaw.com
rclarida@reitlerlaw.com
jwlodinguer@reitlerlaw.com

Kara F. Sweet
U.S. Attorney's Office
Middle District of Tennessee
110 Ninth Avenue, South
Suite A961
Nashville, TN 37203
Telephone: (615) 401-6598
Kara.Sweet@usdoj.gov

Richard S. Busch
Max D. Fabricant
Andrew Hunt Davis
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone: (615) 259-3456
rbusch@kingballow.com
mfabricant@kingballow.com
ddavis@kingballow.com

James F. Blumstein
Of Counsel
Vanderbilt University
131 21st Avenue South
Nashville, TN 37203
Telephone: (615) 343-3939
james.blumstein@vanderbilt.edu

Jay S. Bowen
Lauren E. Kilgore
Jacob T. Clabo
SHACKELFORD BOWEN MCKINLEY & NORTON, LLP
1 Music Circle South, Suite 300
Nashville, Tennessee 37203
Telephone: (615) 329-4440
jbowen@shackelford.law
lkilgore@shackelford.law
jclabo@shackelford.law

Chris M. LaRocco
Matias Gallego-Manzano
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 541-2000
chris.larocco@bclplaw.com
matias.gallego-manzano@bclplaw.com

*/s/ Aubrey B. Harwell III*