IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EIGHT MILE STYLE, LLC; MARTIN AFFILIATED, LLC,<br><br>    Plaintiffs,<br><br>vs.<br><br>SPOTIFY USA INC.; HARRY FOX AGENCY, LLC,<br><br>    Defendants.<br><br>vs.<br><br>KOBALT MUSIC PUBLISHING AMERICA, INC.,<br><br>    Third-Party Defendant. | Case No. 3:19-cv-00736<br><br>District Judge Aleta A. Trauger<br><br>**JURY DEMAND** |

## ELEVENTH AMENDED INITIAL CASE MANAGEMENT ORDER

Pursuant to LR 16.01(f), the Parties submit the following Eleventh Amended Proposed Initial Case Management Order. This Eleventh Amended Proposed Initial Case Management Order shall supersede the Tenth Initial Case Management Order entered on May 5, 2022 (Doc. 251). The Parties propose extending the dates contained in the Ninth Initial Case Management Order to those listed below to allow additional time for the Parties to complete expert discovery and dispositive motions practice following the completion of liability discovery.

    **A.**     **JURISDICTION:** This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). On April 2, 2020, the Court issued an Order (Doc. 81) and accompanying Memorandum (Doc. 80) denying Spotify USA Inc.'s Motion to Dismiss for Lack of Personal

1

Jurisdiction and Improper Venue or, In the Alternative, to Transfer Venue to the Southern District of New York (the "Motion to Dismiss"). Spotify USA Inc. ("Spotify") continues to dispute the existence of personal jurisdiction and reserves all rights with respect to the Court's Order denying its Motion to Dismiss. By submitting this Amended Proposed Initial Case Management Order in accordance with Local Rule 16.01(f), Spotify does not waive and hereby preserves its personal jurisdiction defense.

B. BRIEF THEORIES OF THE PARTIES:

1. **PLAINTIFFS**: Plaintiff's allegations are set out in detail in the First Amended Complaint. To summarize, this is an action for willful copyright infringement brought by Plaintiff Eight Mile Style, LLC and Martin Affiliated, LLC ("Eight Mile" or "Plaintiff"), who own and control musical compositions written in whole or in part by Marshall Mathers p/k/a Eminem, against Defendant Spotify USA Inc. ("Spotify") for its unauthorized use of the musical compositions listed in Exhibit A to the First Amended Complaint (the "Eight Mile Compositions"). To stream the Eight Mile Compositions, Spotify, as an interactive streaming company, must have a direct mechanical license in place prior to distribution, or a compulsory license through what is called a Notice of Intent ("NOI") to obtain a compulsory license before or within thirty days after making, and before distribution of any phonorecord of an Eight Mile Composition. Streaming the Eight Mile Compositions without the appropriate license in place constitutes copyright infringement.

This is also an action for contributory copyright infringement and vicarious copyright infringement against the Harry Fox Agency ("HFA"). As set out in detail in the First Amended Complaint, HFA is liable for contributory copyright infringement because at all times, it had knowledge of, or had reason to know, of Spotify's direct infringement of the Eight Mile

Compositions, and materially contributed to Spotify's direct infringement in several ways. HFA sent out knowingly fraudulent "royalty statements," which HFA knew were woefully incomplete and inaccurate, in order to lead Eight Mile into believing that the Eight Mile Compositions were licensed when HFA knew that they were not. They in fact had placed Eight Mile Compositions in a category it calls "copyright control," which is a designation meant for musical compositions whose publisher or copyright administrator is unknown so that the works cannot be licensed. In fact, however, HFA and Spotify knew very well who controlled the Eight Mile Compositions as HFA had corresponded with Plaintiffs directly. This sending of these false and fraudulent royalty statements were part of a scheme to commit and cover up copyright infringement perpetrated by HFA and its principal Spotify. As further part of this scheme, HFA sent out knowingly backdated NOIs that it knew to be ineffective to further lead Eight Mile and others into believing that Spotify had effective compulsory licenses in place for the Eight Mile Compositions. By taking these actions, and others alleged in the First Amended Complaint, HFA materially contributed to Spotify's direct infringement of the Eight Mile Compositions and ensured that this direct infringement by Spotify would continue. HFA is therefore liable for contributory copyright infringement.

HFA is also liable for vicarious copyright infringement. Throughout Spotify's infringement of the Eight Mile Compositions, HFA maintained the right and ability to supervise the infringing activity and had the ability to prevent or limit the infringing activity from occurring. It also had a financial interest in the infringement. At any time during the ongoing infringement of the Eight Mile Compositions, HFA could have sought a direct licensing agreement for the Eight Mile Compositions, or refused to participate in Spotify's scheme by refusing to send purported but fraudulent "royalty statements" and backdated fraudulent NOIs. Instead, it participated in these

fraudulent acts in exchange for monetary compensation from Spotify. HFA enjoyed a direct financial benefit from Spotify's infringement of the Eight Mile Compositions by receiving monetary compensation for its supervision of the infringing activities and its cooperation with Spotify. HFA is therefore liable for vicarious copyright infringement.

For each of the Eight Mile Compositions, Spotify failed to obtain any required license to make server copies, or licenses to reproduce or distribute the compositions. Spotify instead acted deceptively by pretending to have a license to distribute the Eight Mile Compositions. Spotify instructed its agent, HFA, to send purported "royalty statements" out, when Spotify and HFA knew the compositions were not licensed. This was done to lead Plaintiff into believing the songs were licensed and Eight Mile was being paid properly. The Eight Mile Compositions were streamed on Spotify billions of times. Spotify, however, has not accounted to Eight Mile for these streams and only submitted random payments, which only purport to account for a fraction of the actual streams on some of the Eight Mile Compositions. Spotify reproduced and distributed the Eight Mile Compositions knowing they were not licensed, thereby committing willful copyright infringement. HFA materially contributed to this infringement and willfully maintained the right and ability to supervise the infringing activity. As discussed below, Spotify, through HFA, also recently began sending random, untimely and ineffective NOI's to Eight Mile.

NOI's must be sent before a musical composition streams in order to obtain an effective compulsory license to stream the composition. For some of the Eight Mile Compositions, Defendants have sent untimely and ineffective NOI's, which is a clear indication that it knows the musical compositions were not licensed. Indeed, some of the untimely NOIs recently received indicate an expected first date of distribution many years before the NOI's were sent. Sending an NOI after the work is distributed renders the NOI ineffective. Thus, despite Defendants' belated

4

Case 3:19-cv-00736   Document 261   Filed 06/08/22   Page 4 of 19 PageID #: 2884

attempts to act as if some of the Eight Mile Compositions were licensed, the untimely NOIs were ineffective. This also appears to be a wholly transparent attempt to deceive Eight Mile into believing the Eight Mile Compositions were licensed when they were not.

While Spotify did not license the Eight Mile Compositions and properly pay Plaintiff for the streams on its service, Spotify gained the financial benefit of tens of millions of Eminem fans becoming Spotify users and subscribers. The value of these subscribers and the market share they brought to Spotify has been realized by Spotify in its fundraising activities exceeding $2.5 billion and in its stock market cap of more than $50 billion. This was all done at the detriment to Plaintiff and others similarly situated. Eight Mile is seeking in this action the maximum amount in statutory damages for willful infringement of each Eight Mile Composition totaling approximately $37 million, or in the alternative, damages, including profits attributable to the infringement, which will be the subject of expert reports, but could easily be in the hundreds of millions of dollars.

Eight Mile expects that Spotify will attempt to rely on The Music Modernization Act of 2018 (the "MMA") as a means to limit Eight Mile's damages to only the alleged "royalties" it would have received for the streaming of the Eight Mile Compositions had Spotify not engaged in willful copyright infringement. As set forth in the First Amended Complaint, however, it is Eight Mile's position that Spotify has not met the requirements of the MMA to enjoy that limitation of liability. The many ways in which Spotify failed to meet the requirements of the MMA are set forth in detail in the First Amended Complaint, and those allegations are incorporated herein by reference. Eight Mile expects that HFA will also attempt to rely on the MMA safe harbor provisions. HFA, however is not entitled to any MMA protection for the same reasons that Spotify is not entitled to such protection, and for other reasons that will be addressed at the appropriate time.

In addition, as also set forth in the First Amended Complaint, the MMA's retroactive elimination (to a qualifying digital music provider such as Spotify) of the right of a plaintiff to receive profits attributable to infringement, statutory damages, and attorneys' fees, is an unconstitutional denial of due process (both procedural and substantive), and an unconstitutional taking of vested property rights. Again, this point is alleged in detail in the First Amended Complaint, and Eight Mile refers the Court to those allegations. This constitutional question only becomes relevant, however, if Spotify is able to show that it qualifies under the MMA for the conditional limitation of liability provided for by the MMA (which Eight Mile respectfully states it cannot).

Spotify incorrectly claims that Eight Mile did not own and control exclusive rights for licensing of the Eight Mile Compositions, and that Eight Mile relied on agents, such as Kobalt, to administer its mechanical licensing in the United States. Spotify is once again wrong. Eight Mile does indeed own and exclusively control the administration and licensing rights for the Eight Mile Compositions, including any mechanical reproduction rights and licenses for digital or interactive streaming in the United States. The fact that Eight Mile has agreements with other parties to assist in the administration does not in any way demonstrate that Eight Mile does not control exclusive rights for administration and licensing of the Eight Mile Compositions. As set forth in the First Amended Complaint, Eight Mile has entered into an agreement with Kobalt for the collection of income. (Doc. 97 at p. 17). Martin Affiliated has a further agreement with Bridgeport Music (for whom Martin Affiliated exclusively administrates) to uses its accounting services to process payments and to pay various songwriters, including for the Eight Mile Compositions. Joel Martin represents exclusively Bridgeport Music and Eight Mile, and is the contact person for both.

Spotify also says that in 2016, Kobalt entered a contract with Spotify, supposedly granting Spotify a mechanical license to any composition Kobalt owns, controls, or administers—including the Eight Mile Compositions at issue. However, Spotify fails to mention that in 2016 Kobalt did not own, control, or administer the licensing rights for the Eight Mile Compositions, and that the contract Spotify relies on provides specifically that it only covers those compositions that Kobalt owns or controls or administrates. *See* Kobalt theory of the case herein. Further, Spotify also fails to mention that in 2013, Spotify's agent, HFA, had specifically asked Kobalt, and Kobalt had notified them in writing in response, that Kobalt does not administer the Eight Mile Compositions, and they should contact Bridgeport Music with any licensing inquiries. Neither Spotify nor HFA did so. Spotify therefore knew as far back as 2013 that any blanket license Kobalt may have entered would not cover the Eight Mile Compositions, and that Spotify could not rely on a new agreement with Kobalt to purportedly obtain the necessary licenses. Instead, neither HFA nor Spotify ever reached out to Mr. Martin, (on behalf of Martin Affiliated or Bridgeport as Kobalt suggested) to make any inquiry whatsoever (knowing that it was too late for a compulsory license), but instead simply continued willfully infringing. Spotify and HFA cannot claim they did not know who to contact for another reason: in 2010, HFA corresponded directly with Plaintiffs about "Lose Yourself" and another Eight Mile Composition, meaning that HFA and Spotify knew exactly who to contact with respect to licensing and other questions concerning the Eight Mile Compositions. As Spotify's agent, the knowledge of HFA is imputed to Spotify.

Next, Spotify claims that if Eight Mile had the exclusive authority to license the Eight Mile Compositions, it would know whether licenses were in place and could not be deceived. Spotify absurdly states that Eight Mile could not receive royalties and not know whether the Eight Mile Compositions were licensed. Yet, as set forth above, this case is filled with Spotify's deception

surrounding NOIs and royalty statements including, but not limited to, the sending of untimely compulsory licenses that were literally back dated to make them appear to have been issued timely. Spotify's actions represent an admission that it was not licensed and has committed willful copyright infringement. Spotify's attempt to somehow shift fault onto Eight Mile completely fails.

Next, Spotify incorrectly claims that Eight Mile's acceptance of "royalty payments from Spotify for streams and downloads" somehow is relevant. It is not. Eight Mile did not receive payments from Spotify, but instead receives one payment from Kobalt per quarter that is comingled with all payments for various parties, and from all distributors making payments relevant to many different writers and other parties in a given accounting period. It would be virtually impossible for Eight Mile to have segregated out the Spotify portion of a single lump sum deposit from potentially hundreds or more of payors. Furthermore, as noted above, Eight Mile did not have reason to assume that Spotify did not obtain an effective compulsory license, and Spotify and HFA acted to deceive Eight Mile into believing that it did. Finally, Spotify did not pay at all on many of the Eight Mile Compositions. Spotify's fraud and bad faith is in fact staggering in scale, and Eight Mile's acceptance of payment from multiple sources relevant to numerous parties under these circumstances does not provide any defense to Spotify. Eight Mile simply had no intention to allow Spotify to copy and distribute the Eight Mile Compositions on the Spotify platform without a proper license and proper payment.

Finally, Spotify asserts with great fanfare that since launching its service, they have paid over $16 billion to rightsholders. Absent, however, from Spotify's statement is the fact that Spotify also gave billions of dollars in Spotify stock to key rightsholders. Yet, Spotify disingenuously and sarcastically characterizes Eight Mile's damages claim for the value of equity as being "over-the-top" and supposedly having no basis in law or fact.

8

Case 3:19-cv-00736   Document 261   Filed 06/08/22   Page 8 of 19 PageID #: 2888

Finally, Plaintiff objects to HFA's statement about jurisdiction and venue. If HFA brings a motion to dismiss on personal jurisdiction or venue grounds, Plaintiff will respond at the appropriate time. This Court, however, has extensively addressed jurisdiction and venue. Given the Court's findings on jurisdiction and venue and HFA's substantial involvement in the actions giving rise to this case, HFA cannot claim the exercise of this Court's jurisdiction is unreasonable or unfair. HFA materially contributed to the infringing activities directed at Tennessee residents and the infringement of the Eight Mile Compositions in Tennessee through the scheme described in detail in the First Amended Complaint. There also is no "safe harbor" that protects HFA for their wrongdoing.

2. **DEFENDANT AND THIRD-PARTY PLAINTIFF SPOTIFY**: Spotify categorically denies Eight Mile's factual allegations and claim of copyright infringement. Spotify is the leading global digital streaming service, currently operating in 79 markets, with 271 million monthly active users and over 50 million tracks. Built to reverse the trend of music piracy which grew out of the Internet file-sharing platforms that were rampant in the early 2000s and to provide fair compensation for artists, Spotify allows users to stream music and other content on demand over the Internet and through mobile applications on various devices. Spotify expends tremendous effort and resources to ensure that the various rights in any given track made available on its service are properly licensed and that rightsholders are appropriately compensated. Since launching the service, Spotify has paid over $16 billion to rightsholders.

At issue in this case are 243 musical compositions (the "Compositions") most of which were written (or co-written) by recording artist Eminem. Plaintiffs allege that these compositions are embodied in some number of sound recordings available for streaming through Spotify's service. This is not an action by or on behalf of Eminem or his direct representatives. Rather, this

action was commenced in August 2019, more than eight years after Spotify's launch in the US, by two Michigan business entities (collectively "Eight Mile") who acquired a portion of the rights to musical compositions that Eminem wrote.

Eight Mile claims (spuriously) that Spotify failed to acquire "mechanical" licenses necessary to reproduce and distribute the Compositions at issue—licenses which can be acquired without the owner's consent through a statutory compulsory license and statutory royalty rate regime enacted more than a century ago to ensure the availability of musical works to the public after they are released. A statutory license allows digital service providers such as Spotify to pay a uniform rate per stream—and is distinguished from the statutory damages that Eight Mile seeks of up to $150,000 per work at issue. Eight Mile also claims (also spuriously) that Spotify and co-defendant Harry Fox Agency ("HFA") undertook a "fraudulent scheme" to "conceal" this failure from Eight Mile as well as from third-party defendant Kobalt Music Services America Inc. ("Kobalt"), the entity to which Eight Mile admits it conveyed rights involving the Compositions.

It is uncontested by both Eight Mile and Kobalt that, for almost a decade leading up to this lawsuit, Eight Mile collected royalty payments from Spotify for streams and downloads of sound recordings embodying the very Compositions it now claims were never properly licensed by Spotify. Despite alleging in its Complaint that it possessed exclusive licensing authority for the Compositions and never exercised that authority to grant Spotify a license, Eight Mile never questioned its regular receipt of mechanical royalties from Spotify. Eight Mile's claim that it was somehow "deceive[d]" into falsely believing that the Compositions were licensed does not square with even its own allegations. If, as Eight Mile now contends, only Eight Mile had the authority to license the Compositions, Eight Mile would know whether such licenses were in place, and therefore could not have been deceived. In other words, Eight Mile could not collect royalties on

10
Case 3:19-cv-00736   Document 261   Filed 06/08/22   Page 10 of 19 PageID #: 2890

the Compositions from Spotify and at the same time not know whether the Compositions were licensed to Spotify.

Moreover, Eight Mile was not the exclusive licensor of the Compositions and relied on agents, such as Kobalt, to administer its mechanical licensing in the US. Kobalt, for example, acknowledges that it both received numerous NOIs on Eight Mile's behalf, as part of the process by which Spotify obtained compulsory mechanical licenses to Eight Mile Compositions, and claimed many of those Compositions in connection with a settlement and release with Spotify. And in 2016, Kobalt executed a contract granting Spotify a mechanical license to any composition Kobalt owns, controls, or administers—including the Compositions at issue. Kobalt further agreed to indemnify Spotify for any third party claims relating to allegations like those asserted by Eight Mile here. Kobalt cannot escape its representations and obligations to Spotify by trying to shift the focus onto Bridgeport Music, an entity that Kobalt claims was Eight Mile's licensing administrator but is not even mentioned in Eight Mile's Amended Complaint and is only described by Eight Mile herein as providing an "accounting service[]."

In short, this case is the culmination of a cynical strategy by Eight Mile to simultaneously reap the benefits of Spotify's streaming service while reserving the ability to claim that Spotify was willfully infringing Eight Mile's purported copyrights the entire time. Eight Mile goes so far as to seek, as damages, the value of an equity interest in Spotify. That over-the-top damages theory has absolutely no basis in law or fact. The Compositions were made available on Spotify's service because of conduct and representations by and on behalf of Eight Mile, and Eight Mile cannot now invent a theory of damages that would—yet again—allow it to exploit the hard work of others.

Congress recently passed legislation to protect companies like Spotify from precisely the type of infringement claims made here. The Music Modernization Act ("MMA") significantly

restricts the recovery available to copyright claimants who, like Eight Mile, sue digital streaming services on or after January 1, 2018. Specifically, the MMA makes statutorily prescribed royalties Eight Mile's "sole and exclusive" remedy provided Spotify meets certain requirements following the MMA's enactment in October 2018. Spotify met those requirements. Eight Mile is accordingly not entitled to any damages, much less the pie-in-the sky numbers it seeks.

3. **DEFENDANT HFA:** HFA is not a proper party to this action and intends to move to dismiss the Amended Complaint on jurisdictional, improper venue, and substantive legal grounds. In addition to the fact that this Court has neither general nor specific jurisdiction over HFA pursuant to well-established standards, the allegations of the Amended Complaint are entirely insufficient to establish any theory of liability against HFA. In any event, HFA expressly denies any wrongdoing, and its position in this matter further entitles it to invoke the "safe harbor" provisions of the Music Modernization Act, 17 U.S.C. §§ 115(d)(10), et seq., among other defenses. As HFA's investigation is ongoing and its response to the Amended Complaint is not due until September 14, 2020, it reserves the right to supplement its theory of the case and its defenses.

4. **THIRD-PARTY DEFENDANT KOBALT:** The positions of third-party Defendant are set forth more fully in the Answer to the third-party Complaint filed by Defendant Spotify. In brief, beginning in February 2011 and continuing through the present, Kobalt, acting as a U.S. collection agent but not the U.S. administrator for the Compositions, has collected and remitted to Eight Mile's copyright administrator, Bridgeport Music, Inc. ("Bridgeport"), payments from Spotify in connection with Spotify's streaming of the Compositions.

Spotify's agent, HFA, knew at all relevant times since at least August 2013, and acknowledged to Kobalt in writing not later than 2015, that Kobalt was not the licensor of the

Compositions. In fact, HFA worked with Kobalt to correct HFA's records to reflect that Kobalt was, at all relevant times, merely a collecting agent for Bridgeport, not a licensor of the Compositions. Kobalt did receive NOI's from HFA with respect to one or more of the Compositions, and consistent with the custom and practice of large music publishers, neither accepted nor rejected the same. As noted above, Kobalt passively accepted payments from Spotify in respect of the Compositions, and accounted to Bridgeport for such payments as Kobalt was authorized and required to do under its agreement with Bridgeport.

Kobalt denies that it licensed Spotify to reproduce and distribute the Compositions at any time after February 2011, or that it had the authority to do so, and denies that Kobalt in any way led Spotify to believe otherwise. Specifically with respect to the 2016 mechanical license agreement referenced above by Spotify, Kobalt denies that Kobalt granted any U.S. licenses to Spotify for the Compositions under that agreement, and denies that it represented that Spotify's use of the Compositions would not infringe any third party's rights with respect to the Compositions.

With respect to the "settlement and release" referenced above by Spotify, Kobalt did not own, control or administer the Compositions for the U.S. or Canada at the time of that agreement, but again merely served as a collecting agent for Bridgeport. Kobalt did not have the authority to grant a release to Spotify with respect to the Compositions, and did not do so. The release in that agreement provides that such release extends solely to works "owned administered or controlled" by Kobalt. Kobalt did not own, administer or control the Compositions at that time (a fact acknowledged by HFA in 2013 and thereafter), therefore the release in the referenced agreement does not, by its own terms, release any claim Eight Mile may have against Spotify. In August 2019,

Eight Mile asked Kobalt to refrain from accepting further payments from Spotify with respect to the Compositions.

    **C.    ISSUES RESOLVED:**

- Subject Matter Jurisdiction
- Personal Jurisdiction (resolved over Spotify's objection)
- Venue (resolved over Spotify's objection)

    **D.    ISSUES STILL IN DISPUTE:**

- Liability and Damages

    **E.    HFA'S ANSWER**

HFA's answer or other response shall be due by October 14, 2020. HFA's participation in mediation is without prejudice to its defenses, including those set forth in FRCP 12(b), and is not a waiver of its jurisdictional or venue defenses. HFA will not seek a stay of the action against it pending decision on any such motions it may file asserting those defenses.

    **F.    INITIAL DISCLOSURES:** The parties shall exchange initial disclosures pursuant to FED. R. CIV. P. 26(a)(1) <u>on or before 14 days from the entry of the case management order</u>.

    **G.    DISCOVERY:**

    a.    Discovery is not stayed during dispositive motions, unless ordered by the Court.

    b.    Pre-trial proceedings, including discovery, shall be bifurcated between (1) liability and the MMA and (2) damages. All discovery related to damages shall be stayed until the Court resolves dispositive motions related to liability and the MMA, and shall not commence unless claims remain following such resolution.

c. The parties shall depose all fact witnesses relating to liability by Friday, July 15, 2022. The parties shall serve all written discovery (interrogatories and requests for admission) by Friday, July 15, 2022. The parties shall complete all such written discovery by Monday, August 15, 2022. Plaintiffs, Spotify, and Kobalt shall reach agreement on ESI custodians and search terms relating to liability by February 3, 2021, and those parties shall reach agreement on ESI custodians and search terms relating to liability with HFA by February 17, 2021. The parties shall substantially complete the production of documents relating to liability by April 30, 2021.[1] Fact witness depositions shall not commence until after the parties substantially complete document productions concerning liability.

d. Local Rule 33.01(b) is expanded to allow 40 interrogatories, including subparts. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

**H. MOTIONS TO AMEND:** The parties shall file all Motions to Amend on or before 90 days after the Court's Order denying Spotify's Motion to Dismiss (or on before July 1, 2020). Should it decide to join Kobalt as a party, Spotify shall do so no later than June 1, 2020. Should they decide to join HFA as a party, Plaintiffs shall do so no later than July 1, 2020.

**I. DISCLOSURE OF EXPERTS:**

a. **As Between Plaintiffs and Defendants**

Plaintiffs and Defendants shall identify and disclose initial expert witnesses and expert reports regarding liability-related issues on or before Monday September 12, 2022. Plaintiffs and

---

[1] The Court previously granted a 30-day extension of the deadline for substantial completion of document production to January 29, 2021 (Dkt. No. 146) and a 60-day extension of the deadline for substantial completion of document production to March 30, 2021 (Dkt. No. 149).

Defendants shall disclose rebuttal expert reports regarding liability-related issues on or before Friday, October 21, 2022. Plaintiffs and Defendants shall disclose reply expert reports regarding liability-related issues on or before Wednesday, November 23, 2022.

### b. **As Between Counter-Plaintiff and Third-Party Defendant**

Counter-Plaintiff and Third-Party Defendant shall identify and disclose initial expert witnesses and expert reports regarding liability-related issues on or before Monday, September 12, 2022. Counter-Plaintiff and Third-Party Defendant shall disclose rebuttal expert reports regarding liability-related issues on or before Friday, October 21, 2022. Counter-Plaintiff and Third-Party Defendant shall disclose reply expert reports regarding liability-related issues on or before Wednesday, November 23, 2022.

**J.     DEPOSITIONS OF EXPERT WITNESSES:** The parties shall depose all liability-related expert witnesses by Monday, January 30, 2023.

**K.     JOINT MEDIATION REPORT:** The parties shall file a joint mediation report on or before Monday, September 12, 2022.

**L.     DISPOSITIVE MOTIONS:** The parties shall file all dispositive motions regarding liability and the MMA, including issues related to the constitutionality of the MMA, on or before Monday, April 10, 2023. Responses to dispositive motions regarding liability shall be filed on or before Thursday, June 15, 2023. Optional replies may be filed on or before Monday, July 16, 2023. The parties anticipate jointly seeking the Court's approval for an agreed-upon enlargement of the 20-page allotment for dispositive motion briefs given the number of issues that may be involved in their respective motions for summary judgment. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary

judgment motion in terms of overall economy of time and expense for the parties, counsel, and the Court.

**M.     ELECTRONIC DISCOVERY:** The Parties will be in discussion regarding electronic discovery and hope to reach an agreement on how to conduct electronic discovery and file a joint motion for entry of the Stipulated Order Regarding Discovery of ESI. In the absence of an agreement, the default standards of Administrative Order No. 174-1 will apply. Any agreement between the parties to address the topics provided by Administrative Order No. 174-1 must be reduced to writing, signed by counsel, and either filed as a stipulation of agreed-upon electronic discovery procedures, or, if the parties request court approval, submitted as a proposed agreed order with an accompanying motion for approval.

**N.     ESTIMATED TRIAL TIME:** The parties expect the trial to last approximately ten (10) days.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
U.S. District Judge

APPROVED FOR ENTRY:

By: */s/ Richard S. Busch*
Richard S. Busch (TN Bar # 14594)
Drew H. Davis (TN Bar # 034203)
Max. D. Fabricant (TN Bar # 038956)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
Telephone: (615) 726-5422
Facsimile: (615) 726-5417
rbusch@kingballow.com
ddavis@kingballow.com
mfabricant@kingballow.com

James F. Blumstein
Of Counsel
Vanderbilt University
131 21st Avenue South
Nashville, TN 37203
Telephone: (615) 343-3939
james.blumstein@vanderbilt.edu

*Attorneys for Plaintiffs*

By: */s/ Brian D. Caplan*
Brian D. Caplan
Robert W. Clarida
Julie B. Wlodinguer
Reitler Kailas & Rosenblatt LLC
885 Third Avenue, 20th Floor
New York, New York 20022
Telephone: (212) 209-3050
bcaplan@reitlerlaw.com
rclarida@reitlerlaw.com
jwlodinguer@reiterlaw.com

Karl M. Bruan (BPR #22371)
Fifth Third Center
Hall Booth Smith, P.C.
424 Church Street, Suite 2950
Nashville, Tennessee 37219
Telephone: (615) 313-9911
kbraun@hallboothsmith.com

By: */s/ Rory K. Schneider*
By: */s/ Aubrey B. Harwell III*
Aubrey B. Harwell III (BPR #017394)
Marie T. Scott (BPR # 032771)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573
tharwell@nealharwell.com
mscott@nealharwell.com

Matthew D. Ingber (*pro hac vice*)
Rory K. Schneider (*pro hac vice*)
Allison Aviki (*pro hac vice*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
mingber@mayerbrown.com
rschneider@mayerbrown.com
aaviki@mayerbrown.com

Andrew J. Pincus (*pro hac vice*)
Archis A. Parasharami
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3328
apincus@mayerbrown.com
aparasharami@mayerbrown.com

Allison L. Stillman (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
alli.stillman@lw.com

*Attorneys for Third-Party Defendant*
*Kobalt Music Publishing America, Inc.*

By: */s/ Lauren E. Kilgore*
Jay S. Bowen (BPR #02649)
Lauren E. Kilgore (BPR #030219)
Jacob Clabo (BPR #037360)
Shackelford, Bowen, McKinley & Norton, LLP
1 Music Circle South, Suite 300
Nashville, TN 37203
Telephone: (615) 329-4440
jbowen@shackelford.law
lkilgore@shackelford.law
jclabo@shackelford.law

Chris M. LaRocco
Matias Gallego-Manzano
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 541-2000
chris.larocco@bclplaw.com
matias.gallego-manzano@bclplaw.com

*Attorneys for Harry Fox Agency, LLC*

Carey R. Ramos (*pro hac vice*)
Kathleen M. Sullivan (*pro hac vice*)
Cory Struble (*pro hac vice*)
Mario Gazzola (*pro hac vice*)
Rachel Epstein (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 895-2500
kathleensullivan@quinnemanuel.com
careyramos@quinnemanuel.com
corystruble@quinnemanuel.com
mariogazzola@quinnemanuel.com
rachelepstein@quinnemanuel.com

Thomas C. Rubin (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, WA 98101
Telephone : (206) 905-7000
tomrubin@quinnemanuel.com

*Attorneys for Spotify USA Inc.*