UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EIGHT MILE STYLE, LLC and MARTIN AFFILIATED, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 3:19-cv-0736 |
| | ) Judge Aleta A. Trauger |
| SPOTIFY USA INC. and HARRY FOX AGENCY, LLC, | ) ) ) |
| Defendants. | ) ) ) |
| SPOTIFY USA INC., | ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) ) |
| KOBALT MUSIC PUBLISHING AMERICA, INC., | ) ) ) |
| Third-Party Defendant | ) |

## MEMORANDUM & ORDER

Spotify USA Inc. ("Spotify") has filed a Motion for Review of Nondispositive Order (Doc. No. 240), to which Eight Mile Style, LLC and Martin Affiliated, LLC have filed a Response (Doc. No. 245), Spotify has filed a Reply (Doc. No. 254), and the plaintiffs have filed a Sur-Reply (Doc. No. 256). For the reasons set out herein, the motion will be denied.

## I. BACKGROUND

The details of the allegations at issue in this case can be found in the court's prior opinions. *See Eight Mile Style, LLC v. Spotify USA Inc.*, No. 3:19-CV-0736, 2021 WL 1578106 (M.D. Tenn. Apr. 22, 2021); *Eight Mile Style, LLC v. Spotify USA Inc.*, No. 3:19-CV-0736, 2020 WL 1640425,

at *1 (M.D. Tenn. Apr. 2, 2020). In short, the plaintiffs allege that Spotify included recordings of the plaintiffs' musical compositions in the library of its streaming service without the right to do so. Whether that is true and the extent to which Spotify is at fault depend, at least in part, on details of Spotify's internal practices regarding the acquisition and tracking of copyright licenses, including its dealings with codefendant Harry Fox Agency, LLC ("HFA"), which Spotify relied on to, among other things, match the recordings in its library with composition copyrights.

The plaintiffs wish to depose Spotify President Daniel Ek,[1] which Spotify says would be unnecessary and unduly burdensome in light of his limited knowledge of the details underlying this dispute, the availability of information from other sources, and the demands of Ek's other responsibilities. On January 31, 2022, Spotify filed a Motion for a Protective Order Barring the Deposition of Daniel Ek (Doc. No. 221), to which plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC filed a Response (Doc. No. 223), Spotify filed a Reply (Doc. No. 228), and the plaintiffs filed a Sur-Reply (Doc. No. 233). The court referred the matter to the Magistrate Judge, and, on March 31, 2022, the Magistrate Judge entered an Order denying the motion. (Doc. No. 238.)

In the Magistrate Judge's Order, he explained that, based on his review of the underlying materials and arguments, the plaintiffs had "established the relevance of the information that they seek from Mr. Ek to the claims and defenses of this case, including [the plaintiffs'] allegations that 'Spotify's apparent business model from the outset was to commit willful copyright infringement first, ask questions later, and try to settle on the cheap when inevitably sued.'" (Doc. No. 238 at 8 (quoting Doc. No. 97 at 5).) The Magistrate Judge reviewed Spotify's arguments that equivalent testimony could be obtained from other witnesses and concluded that

---

[1] Ek is also the Chairman and CEO of Spotify's parent company. (Doc. No. 221 at 1.)

> Spotify has not established that the testimony of any of these individuals is a complete and appropriate substitute for that of Mr. Ek such that the information sought from him could clearly be obtained from a more convenient source. None of them appear to have access to the exact same information as Mr. Ek, in part because [hardly any] of them were with the company at the time of Spotify's U.S. launch. The role of [two of the proposed alternative witnesses] as attorneys for Spotify also complicates their ability to answer questions without violating attorney-client privilege. And although Spotify argues that the same privilege issues would be present in Mr. Ek's deposition because "if he had any knowledge on the topic [of mechanical licensing in the United States] . . . he would have obtained it through conversations with in-house counsel," it is not clear from the evidence before the Court that Mr. Ek's knowledge on this or any other relevant topic is identical to that of his lawyers.

(*Id.* at 12 (quoting Doc. No. 228 at 11).) The Magistrate Judge favorably cited the reasoning of Judge McCalla in another Spotify-related case raising similar issues:

> The 2011 and 2013 organizational charts suggest that only two persons fall within the Spotify organization at an executive level sufficient to provide the testimony that Plaintiffs appropriately seek[, of whom only] Ek avoids the problem of the complexities of the attorney-client privilege and has the decision-making authority to speak authoritatively on the subjects designated by Plaintiffs in the cases now pending before the Court.

*Bluewater Music Servs. Corp., et al. v. Spotify USA Inc.*, Case No. 3:17-cv-01051, Docket No. 299, p. 2-3 (M.D. Tenn. Apr. 23, 2019).

The Magistrate Judge turned next to the issues of annoyance, embarrassment, undue burden, and expense. The Magistrate Judge observed that many of Spotify's arguments appear to proceed from the assumption "that depositions of high-level executives presumptively create undue burden and other harms," despite the fact that the Sixth Circuit has expressly declined to adopt such a presumption, which is typically referred to as the "apex doctrine," *see Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). (Doc. No. 238 at 13.) The Magistrate Judge acknowledged Ek's time commitments, but noted that "the issue of proper licensing relationships with the artists whose work comprises the entirety of Spotify's business and its sole product is

3

surely also a matter of importance to Spotify, worthy of some of Mr. Ek's time and attention."[2] (*Id.* at 14.) The Magistrate Judge concluded that the burden on Ek and Spotify could be appropriately limited, consistently with the needs of the case and the plaintiffs' discovery rights, by allowing Ek to be deposed remotely and limiting the deposition to three hours. (*Id.* at 15–16.)

Spotify now seeks review of the Magistrate Judge's ruling. (Doc. No. 240.) Spotify does not, however, challenge the conclusion that Ek should be subject to deposition. Rather, Spotify "seeks to modify the order to defer any deposition of Mr. Ek until the damages phase of this case." (Doc. No. 242 at 2.) In support of that argument, Spotify argues that the Magistrate Judge committed two legal errors: (1) failing to properly apply Fed. R. Civ. P. 26(b)(2)(C)(i), which limits discovery when the information sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive"; and (2) violating the applicable Case Management Order's bifurcation of discovery, because Ek's testimony would only be relevant to the issue of damages.

## II. LEGAL STANDARD

The standard of review applicable to a party's objections to a magistrate judge's ruling depends upon whether the objections pertain to a dispositive or non-dispositive matter. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). The dispute at issue in the Magistrate Judge's Order involves the scope of discovery and, as such, is non-dispositive. *See Burghardt v. Ryan*, No. 5:19-CV-325, 2020 WL 4350049, at *2 (N.D. Ohio July 29, 2020). The court's review of a magistrate judge's resolution of a non-dispositive pretrial matter is limited to determining whether the order is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see*

---

[2] The court notes that this excerpt may slightly overstate the degree to which Spotify's business is *solely* reliant on recordings of musical compositions, to the exclusion of other types of streamable audio. The Magistrate Judge's point about the extraordinary importance of licensing musical compositions to Spotify's line of business, however, stands.

*also Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) ("When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review.").

Under this standard, the court is not empowered to reverse the magistrate judge's ruling simply because this court would have decided the issue differently. "'A finding [of fact] is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Adams County Reg'l Water Dist. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A legal conclusion is "contrary to law" if it contradict or ignores applicable precepts of law, as found in the Constitution, statutes, or case precedent. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992).

## III. ANALYSIS

### A. Rule 26(b)(2)(C)(i)

The court has little difficulty rejecting Spotify's argument based on Rule 26(b)(2)(C)(i). Spotify suggests that the Magistrate Judge committed an error of law under that rule by failing to properly consider the possibility that another witness, former Spotify executive and in-house counsel James Duffett-Smith, would be a less burdensome alternative witness. The Magistrate Judge, however, engaged in a factual inquiry into whether Duffett-Smith was an adequate alternative to Ek and concluded that he was not because (1) Duffett-Smith, who is an attorney, would be more constrained by privilege and (2) the evidence had not established that Duffett-Smith's knowledge was identical to Ek's.[3] (Doc. No. 238 at 11.) The latter of those two

---

[3] The court notes that the plaintiffs did, in fact, depose Duffett-Smith while the present motion was pending, and a rough transcript shows that Duffett-Smith was unable to answer numerous questions, because he could not recall or lacked knowledge. (*See* Doc. No. 250.) If anything, then, the facts seem to show *more*

5

conclusions, in particular, was a finding of fact and is therefore entitled to deference unless it was clearly erroneous, which Spotify has not established that it was, choosing instead to argue that the Magistrate Judge made an error of law. In light of that holding, Spotify has failed to make the threshold showing that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The court, moreover, agrees with the Magistrate Judge's assessment that Spotify's arguments rely, at least implicitly, on an assumption that the Rules impose a higher bar on depositions of upper-level executives than either the text of the Rules or the caselaw of the Sixth Circuit mandates. When a court considers the burdens associated with deposing an objected-to witness, the court must, of course, consider all of the considerations unique to that potential deponent, including those related to his unique job title and responsibilities, if applicable. That is true even in the absence of any judge-created rule like the apex doctrine. The Magistrate Judge, however, acknowledged those very considerations and engaged in a factual inquiry regarding both the amount of hardship involved in deposing Ek and the potential availability of information from other sources, and the Magistrate Judge concluded that an appropriate balance could be reached by allowing a time-limited, remote deposition of Ek that could be completed from virtually anywhere on Earth in less than half a day. That conclusion was consistent with the Magistrate Judge's findings of fact, as well as Rule 26.

---

clearly now that the Magistrate Judge was correct in concluding that Duffett-Smith was not an adequate substitute for Ek.

**B. The Case Management Order**

The court's Case Management Order states that "[p]re-trial proceedings, including discovery, shall be bifurcated between (1) liability and the [Music Modernization Act ('MMA')] and (2) damages" and that, as a result, "[a]ll discovery related to damages shall be stayed until the Court resolves dispositive motions related to liability and the MMA, and shall not commence unless claims remain following such resolution." (Doc. No. 261[4] at 14.) Spotify argues that, even if Ek is able to testify about whether Spotify took an inappropriately loose approach to licensing requirements in order to quickly establish its foothold in the streaming market, that testimony would be relevant, if at all, only to whether the plaintiffs are entitled to enhanced damages based on Spotify's willfulness. *See* 17 U.S.C. § 504(c)(2). With regard to the first stage of the bifurcated proceedings, however, Spotify points out that "[c]opyright infringement . . . is at its core a strict liability cause of action"—at least with regard to whether the defendant's acts were infringing. *Jacobs v. Memphis Convention & Visitors Bureau*, 710 F. Supp. 2d 663, 678 (W.D. Tenn. 2010) (citing *Warner Bros. Records, Inc. v. Walker*, 704 F.Supp.2d 460, 464–65, 2010 WL 1333147, *4 (W.D. Pa. Mar. 31, 2010); *King Records, Inc. v. Bennett*, 438 F.Supp.2d 812, 852 (M.D.Tenn.2006) (Nixon, S.J.)). The question of whether Spotify is liable for infringement therefore does not depend on whether it was pursuing a consciously selected business strategy or simply made a series of mistakes. Accordingly, Spotify argues, there is no need to look into that issue unless and until liability is established.

The Magistrate Judge considered that argument but concluded that Ek's testimony was relevant to the subject matter covered by the first phase of discovery because it bears on the court's

---

[4] The court has cited the currently effective Order—the Eleventh Amended Initial Case Management Order—because it is the version currently in force. When the Magistrate Judge issued the Order under review, the Ninth Amended Initial Case Management Order was in effect and contained the same language. (*See* Doc. No. 236 at 14.)

analysis pursuant to the MMA. The MMA is a relatively recent statute creating "a blanket licensing procedure that allows compulsory licensees like Spotify to obtain a single blanket license to all compositions [available for compulsory licensing] without having to identify the owners on a composition-by-composition basis." *Sitney v. Spotify USA, Inc.*, No. 8:18-CV-01469-PX, 2019 WL 5555682, at *1 (D. Md. Oct. 28, 2019) (citing 17 U.S.C. § 115(d)). Although the MMA blanket licensing mechanism is intended to make licensing easier going forward, the Act also recognizes that, by the time it was enacted and went into force, the streaming music boom that it was intended to address had already been underway for several years and may well have already included numerous instances of infringing activity, including some that were at least partially attributable to the challenges of complying with pre-MMA licensing procedures. To address that history, the MMA creates a limitation on liability applicable to infringement actions brought against digital music providers "on or after January 1, 2018" but "prior to the license availability date." 17 U.S.C. § 115(d)(10)(A). Pursuant to that provision, a digital music provider will only be liable for the equivalent of retrospective royalties—as opposed to the full range of damages available under the Copyright Act—as long as the provider meets certain requirements. Among those requirements is that,

> [n]ot later than 30 calendar days after first making a particular sound recording of a musical work available through its service via one or more covered activities, or 30 calendar days after the enactment date, whichever occurs later, a digital music provider shall engage in good-faith, commercially reasonable efforts to identify and locate each copyright owner of such musical work (or share thereof).

17 U.S.C. § 115(d)(10)(B)(i). Spotify does not appear to dispute that the plaintiffs have alleged some infringement that occurred during a time window potentially subject to that stopgap regime. Accordingly, the availability of the MMA's limitation on liability depends on the reasonableness of Spotify's matching efforts. The reasonableness of those efforts, in turn, directly implicates the

8

plaintiffs' allegations regarding Spotify's overall strategy and approach, including, in particular, its reliance on HFA for matching services that, the plaintiffs allege, Spotify knew HFA could not effectively provide. The plaintiffs argue that Ek's testimony should therefore be permitted as part of the first phase of discovery.

If this case had actually been strictly bifurcated between liability and damages, then Spotify's objection might be persuasive. The MMA provision to which Ek's testimony appears most likely to be relevant is not an outright safe harbor from liability, but rather a limitation on remedies, meaning that, under a conventional two-phase inquiry, evidence bearing on the applicability of that provision would be relevant only to the second phase. But Spotify concedes in its briefing that the first phase of discover encompasses both "liability and MMA compliance." (Doc. No. 242 at 5.) The Magistrate Judge's Order was consistent with that division of subject matter and therefore was not contrary to the law. There is therefore no basis for overruling the Magistrate Judge's holding.

## IV. CONCLUSION

For the foregoing reasons, Spotify's Motion for Review of Nondispositive Order (Doc. No. 240) is hereby **DENIED**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge