UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EIGHT MILE STYLE, LLC and ) | |
| MARTIN AFFILIATED, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-0736 |
| ) | Judge Aleta A. Trauger |
| SPOTIFY USA INC. and ) | |
| HARRY FOX AGENCY, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| SPOTIFY USA INC., ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KOBALT MUSIC PUBLISHING ) | |
| AMERICA, INC., ) | |
| ) | |
| Third-Party Defendant ) | |

## MEMORANDUM & ORDER

Spotify USA Inc. ("Spotify") has filed a Motion for Leave to File Early Motion for Summary Judgment Against Kobalt Music Publishing America, Inc. ("Kobalt") (Doc. No. 265), to which Kobalt has filed a Response (Doc. No. 272). Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC have also filed a Response in opposition to the motion (Doc. No. 273), and Spotify has filed a Reply (Doc. No. 277). For the reasons set out herein, the motion will be denied.

Spotify wishes to seek summary judgment on the issue of whether Kobalt has a contractual right to indemnify it in this litigation. Spotify argues that an early resolution of that issue would remove uncertainty and potentially speed the resolution of this case, which may well be true.

Kobalt, however, argues that addressing the issue of indemnity now would be premature, particularly in light of the fact that there has, at this point, been no expert discovery.

On December 15, 2016, Spotify and Kobalt entered into a Mechanical License Agreement, through which Kobalt granted Spotify "a non-exclusive, . . . irrevocable license throughout the [United States] to . . . reproduce and distribute" certain compositions identified as the "Publisher Compositions," "as embodied in sound recordings on servers owned or controlled by Spotify." (Doc. No. 265-1 at 2.) The "Publisher Compositions" were defined to refer to "the Compositions or portions thereof that [Kobalt], whether [when the Agreement was formed] or during the Term [of the Agreement], own[ed], control[ed], or administer[ed]." (*Id.*) As part of the Agreement, Spotify "acknowledge[d] that [Kobalt was] licensing only its administered share of a Publisher Composition and [was] not granting a license as to any non-Publisher controlled share of a Publisher Composition (i.e., [Kobalt was] not granting a so-called '100% license')." (*Id.*)

As part of the Agreement, however, Spotify and Kobalt each made certain representations and warranties. As relevant to the current dispute between the parties, Kobalt represented as follows:

> Publisher further represents and warrants to Spotify that (i) it has the right and authority to grant the rights to Spotify in this Agreement; (ii) Spotify's Use of the Publisher Compositions in accordance with the terms and conditions of this Agreement will not infringe any third party's proprietary or intellectual property rights and; (iii) except for payments made to third parties administering the public performance right and the applicable sound recording rights holders associated with the Publisher Compositions, *no other payments, licenses, rights, authorities or permissions are necessary for Spotify to Use the Publisher Compositions.*

(*Id.* at 7–8 (emphasis added).) The representations and warranties were followed by an indemnification provision stating, in relevant part:

> Each Party (the 'Indemnifying Party') will indemnify and hold the other Party (the 'Indemnified Party') harmless from any and all third party claims, damages, liabilities, costs and expenses (including reasonable legal expenses and counsel

> fees) ('Claims') relating to any allegation, that, if true, would constitute a breach of the Indemnifying Party's representations, warranties, or covenants in [the preceding section of] this Agreement.

(*Id.* at 8.)

Spotify now stands accused of infringing upon compositions that, it maintains, it thought were covered by the Agreement. Kobalt states that it did not have any right to license those compositions in the first place and that the compositions were therefore not "Publisher Compositions." Spotify responds that it does not matter whether Kobalt had the right to *license* the compositions, because the definition of "Publisher Compositions" included all compositions that Kobalt "administered," even if it did not license them. Spotify states that it can show, through undisputed evidence, that Kobalt exercised some rights with regard to the underlying compositions—such as the right to collect royalties—which, Spotify argues, brings those compositions within the ambit of the agreement.

The legal core of this disagreement appears to be the construction of the words "control" and "administer," as used in the context of a mechanical license to a streaming service in 2016. As the court has noted during its consideration of other matters in this litigation, all of the underlying transactions and events at issue occurred against the unique backdrop of the music publishing industry, with its preexisting norms, customs, and terminology, which can be opaque to outsiders unversed in industry practice. The definitions of "control" and "administer," in this context, plainly implicate the need for that kind of industry-specific understanding. The court, moreover, is inclined to agree with Kobalt that expert testimony is likely to be the clearest, most comprehensive way for a finder of fact to cut through the thicket of highly specialized knowledge that frames this dispute.

Spotify points to various snippets of evidence already uncovered that, it argues, show that the definition of "administer" is widely accepted within the industry to include the type of work that Kobalt allegedly performed with regard to the relevant compositions. It is, however, common for individual witnesses, and even attorneys, to perceive a term as unambiguous in one setting, only for a glaring ambiguity to arise in another. Moreover, witnesses are often simply wrong in their overconfident pronouncements of their own understanding. That does not mean that the evidence that Spotify has identified is irrelevant, but relevance is not what is at issue here. In order to justify an early motion for summary judgment, the evidence already available would have to be so independently sufficient that no further discovery—even expert discovery that would plainly be well-suited to the specific question at issue—is necessary. The court, however, cannot conclude that Spotify has cleared that bar.

As Spotify has pointed out, there are obvious reasons why Kobalt itself might wish to know, sooner rather than later, whether it should expect to be liable for indemnification in this case. The decision to contest an early resolution of that question is, however, Kobalt's to make, and Kobalt has identified persuasive grounds for permitting it to develop the record further before the court makes a ruling. Spotify's Motion for Leave to File Early Motion for Summary Judgment Against Kobalt (Doc. No. 265) is therefore **DENIED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge

4

Case 3:19-cv-00736   Document 278   Filed 09/07/22   Page 4 of 4 PageID #: 3688