IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EIGHT MILE STYLE, LLC; MARTIN AFFILIATED, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> SPOTIFY USA INC.; HARRY FOX AGENCY, LLC, <br><br> Defendants. | Civil Action No. 19-cv-00736 <br><br> District Judge Aleta A. Trauger |
| SPOTIFY USA INC., <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> KOBALT MUSIC PUBLISHING AMERICA, INC., <br><br> Third-Party Defendant. | JURY DEMAND |

**PLAINTIFFS EIGHT MILE STYLE AND MARTIN AFFILIATED'S MEMORANDUM OF LAW OPPOSING DIGITAL MEDIA ASSOCIATION'S MOTION FOR LEAVE TO FILE AN *AMICUS CURIAE* MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SPOTIFY USA INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1

On January 19, 2024, non-party Digital Media Association ("DIMA") filed a motion for leave of court, (Doc. No. 469), seeking to file a memorandum of law as *amicus curiae* in support of Defendant Spotify USA Inc. ("Spotify")'s Opposition to Plaintiffs Eight Mile Style and Martin Affiliated (together "Eight Mile Style")'s Motion for Summary Judgment. For the following reasons, DIMA's motion for leave should be denied, and it should not be permitted to appear as *amicus curiae*.

## BACKGROUND

DIMA is a commercial trade organization and lobbying body that represents Spotify.[1] Spotify is one of only six "member companies" that DIMA represents. (Doc. No. 469, at p.3);[2] *See Woods v. Wolosko*, No. 3:09-0839, 2011 U.S. Dist. LEXIS 15740, at *6 (M.D. Tenn. Feb. 16, 2011) ("In its broadest sense, the concept of agency 'includes every relation in which one person acts for or *represents* another.'") (quoting *White v. Revco Discount Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000) (emphasis added)). DIMA and Spotify are intertwined in their financial and business interests, as well as their leadership, with one of DIMA's five governing board members in 2021 and beyond being simultaneously employed as Spotify's head of public policy and government affairs until September 2023. (*See* Ex. 4). For the reasons set forth below, DIMA's motion for leave will not serve the purpose of *amicus* brief practice, as it will not provide the Court with impartial information and is a transparent attempt to expand Spotify's adversarial advocacy beyond briefing page limits and the rules for qualifying expert witnesses. Indeed, DIMA could have been hired as an expert, or could otherwise have been disclosed as a witness, as soon as the

---

[1] *See* Ex. 1, DiMA report hails music streaming's impact in the US (musically.com).

[2] *See also* Ex. 2, DiMA Statement on The MLC Budget Agreement - Digital Media Association; Ex. 3, DiMA - Who We Are | Digital Media Association.

2

issue to which DIMA now wishes to address was first raised in this litigation over 16 months ago.[3] But DIMA's delayed entrance into this litigation, as Spotify's shill and mouthpiece, appears intentional and with a strategic purpose to impose further time and financial burdens on Eight Mile Style[4] despite comprehensive and sophisticated representation of this case to the Court from five different litigants.

## ARGUMENT

**A. DIMA's Motion Would Not Serve the Purpose of *Amicus* Brief Practice.**

"The purpose of an *amicus* is 'to provide *impartial* information on matters of law about which there was doubt….'" *Bright v. Brookdale Senior Living, Inc.*, No. 3:19-cv-00374, 2020 U.S. Dist. LEXIS 261609, at *4 (M.D. Tenn. Oct. 23, 2020) (quoting *United States v. Michigan*, 940 F.2d 143, 164 (6th Cir. 1991)) (emphasis in *Michigan*). "The orthodox view of *amicus curiae* was, and is, that of an *impartial* friend of the court -- *not an adversary party in interest in the litigation*." *Michigan*, 940 F.2d at 164-65 (emphasis kept). Indeed, **this very court has observed that** "the 'vast majority of *amicus curiae* briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs' and 'should not be allowed….'" *Newcomb v. Allergy & ENT Assocs. of Middle Tenn., P.C.*, No. 3:10-cv-1230, 2013 U.S. Dist. LEXIS 108691, at *2 (M.D. Tenn. Aug. 2, 2013) (emphasis added).

Denial of *amicus* status is not a high bar: "when [a] party seeking to appear as *amicus curiae* is [even] *perceived* to be an advocate of one of the parties, *amicus* status should be

---

[3] *See*, Kohn Original Expert Report at 210-11 (Sept. 19, 2022). Doc. No. 355-2."

[4] *See Laitram Mach. v. Carnitech A/S*, 908 F. Supp. 384, 389 (E.D. La. 1995) ("The Court's purpose is to maintain an even, fair balance among all litigants preparing for trial. Too often the Court has witnessed motion practice denigrate into a trial tactic designed to overwhelm the opposing party at the last minute. The Court will not countenance such polemic tactics as a matter of general principle, for it is unfair to anyone involved in litigation.") (internal citation to *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

denied[.]" *Virginia v. Maryland*, No. 129, 2002 U.S. LEXIS 9434, at *101 (U.S. Dec. 9, 2002, Special Master Disposition) (citing *Liberty Lincoln Mercury v. Ford Mktg. Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993) (emphasis added)); *see Liberty Lincoln Mercury*, 149 F.R.D. at 82 ("When the party seeking to appear as *amicus curiae is perceived to be an interested party or to be an advocate* of one of the parties to the litigation, leave to appear amicus curiae should be denied.") (emphasis added); *Trahan v. Long Beach Mortg. Co.*, No. 9:05-CV-29 (TH/KFG), 2006 U.S. Dist. LEXIS 117063, at *4 n.1 (E.D. Tex. Feb. 9, 2006) ("[W]hen an *amicus curiae* is perceived a partisan advocate for one of the parties to the litigation, leave to appear *amicus* should be denied.").

It is not only easy to "perceive" DIMA as an interested party or an advocate for Spotify, the legal standard, but it is actually *de facto* an interested party and an advocate for Spotify. DIMA's financial and business interests are inextricably intertwined with Spotify's as its representative. According to DIMA's 990 Federal Tax form for 2021 (filed in late 2022) it had five board members, one of whom was employed by Spotify as their head of public policy and government affairs until September 2023, only four months ago and only one month before Eight Mile Style filed its motion for summary judgement. (*See* Ex. 4).[5] It is not clear if Spotify's previous representative on the DIMA Board of Directors has been replaced, but the timing of her departure suggests it was in preparation for DIMA's motion to enter this litigation to give DIMA the appearance of impartiality.

Moreover, DIMA is a self-described representative of Spotify, and its agent. *See Woods*, 2011 U.S. Dist. LEXIS 15740, at *6 ("In its broadest sense, the concept of agency includes every relation in which one person acts for or *represents* another…. An agency relationship does not

---

[5] *See also,* Ex. 5, Spotify Snags Copyright Office Legal Chief as Public Policy Head (bloomberglaw.com).

4

require an explicit agreement, contract or understanding between the parties….") (internal quotations and citation omitted) (emphasis added); *Imperial Park, LLC v. Penn-Star Ins. Co.*, 133 F. Supp. 3d 1003, 1026 (M.D. Tenn. 2015) ("In Tennessee, an agency relationship exists if, based on the parties' relationship and their conduct, one entity acts for or represents another."). DIMA, and its vested interest in Spotify as its representative and agent, and its attempted advocacy on its behalf, is directly adversarial to Eight Mile Style. *See generally Leigh v. Engle*, 535 F. Supp. 418, 420 (N.D. Ill. 1982) (a potential *amicus* is to give an impartial legal opinion "rather than to advocate a point of view so that a cause may be won by one party [over] another"). Quite frankly, DIMA's entrance into this litigation speaks more to Spotify's desperation as it disingenuously cloaks its representative as an *amicus* to echo its arguments. There is therefore little value in this *amicus* due to DIMA's familial connection with Spotify, representation of Spotify, and as noted, the presence of a Spotify senior executive on the DIMA board until very recently.

**B. Presumptions and Policies Against Filing *Amicus* Briefs are Aptly Applied Here.**

Further, there are several presumptions and policies against filing an *amicus* brief in circumstances similar to those in this case. "There is no right of nonparties generally to submit an *amicus* brief," *Sweigert v. CNN, Inc.*, No. 20-cv-12933, 2022 U.S. Dist. LEXIS 50529, at *20 (E.D. Mich. Mar. 21, 2022) (quoting 16AA C. Wright & A. Miller, Federal Practice and Procedure § 3975, pg. 383 (2021)),[6] and courts have a general policy of denying or strongly limiting *amicus* status. As, Judge Posner admonished:

> The reasons for the policy [of denying or limiting *amicus* status] are several: judges have heavy caseloads and therefore need to minimize extraneous reading; *amicus* briefs, often solicited by parties, may be used to make an end run around court-imposed limitations on the length of parties' briefs; the time and other resources

---

[6] *See Trahan*, 2006 U.S. Dist. LEXIS 117063, at *4 n.1 ("Because there is no general right of non-parties to be heard in pending litigation, it is incumbent on those seeking amicus status to request leave to appear….").

5

required for the preparation and study of, and response to, *amicus* briefs drive up the cost of litigation; and the filing of an *amicus* brief is often an attempt to inject interest group politics into the federal appeals process.

*Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 544 (7th Cir. 2003); *see also WildEarth Guardians v. Lane*, No. CIV 12-118 LFG/KBM, 2012 U.S. Dist. LEXIS 189661, at *7 (D.N.M. June 20, 2012) (quoting same).

DIMA's extraneous brief would be an end run around the already generous page limit which this Court extended upward for the summary judgment briefing in this case, which briefing is being handled by sophisticated and well-represented parties *in addition to* a third-party litigant, *and* the United States Government as an intervenor[7] and will also, by design, drive up the cost of what has, and will continue to be, a long, drawn-out, and complex litigation. Eight Mile Style is already tasked with reviewing and responding to HFA, Spotify, the Government, and any relevant Kobalt filings.

The Court also already has the benefit of (and the task of reviewing) the voluminous filings and materials of the five litigants in the case and the information provided from their distinct and diverse perspectives, far more than the ordinary case. DIMA's proposed arguments have already been addressed at length by Spotify and, as discussed below, if Spotify wished to have DIMA add its thoughts to the mix, Spotify had notice of the issue and had every opportunity to introduce DIMA at the expert witness stage of this litigation, Indeed, DIMA is specifically offering purported expert testimony in its bald argument that Eight Mile Style's interpretation of the MMA is

---

[7] *See Ryan v. CFTC*, 125 F.3d 1062, 1064 (7th Cir. 1997) (Posner, C.J.) ("The bane of lawyers is prolixity and duplication, and for obvious reasons is especially marked in commercial cases with large monetary stakes. In an era of heavy judicial caseloads and public impatience with the delays and expense of litigation, we judges should be assiduous to bar the gates to *amicus curiae* briefs that fail to present convincing reasons why the parties' briefs do not give us all the help we need for deciding the appeal.").

6

supposedly a minority view in the music industry without of course not allowing cross-examination or testing of that improper opinion. *See generally,* DIMA's *Amicus* Brief.[8] Allowing what amounts to a transparent attempt to improperly inject further advocacy on behalf of Spotify[9] at this stage will cause added expenditures of time, resources, and expenses against Eight Mile Style in order to respond to yet another adversarial entity when this case has been beyond adequately represented by the several sophisticated parties.

### C. *Amicus* Briefs Are Even Less Appropriate at the Trial Stage of Litigation.

Further, the general policy of denying or limiting *amicus* status discussed by Judge Posner is even more apropos in the district court, as "courts also have observed that 'at the trial level, where issues of fact as well as law predominate, the aid of *amicus curiae* may be less appropriate….'" *WildEarth Guardians*, 2012 U.S. Dist. LEXIS 189661, at *7 (quoting *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985), *aff'd*, 782 F.2d 1033 (3d Cir.), *cert. denied*, 476 U.S. 1141 (1986)); *accord Pickup v. Dist. Court of Nowata Cty.*, No. CIV 20-0346 JB/JFJ, 2023 U.S. Dist. LEXIS 16470, at *177 (N.D. Okla. Jan. 31, 2023); *Finkle v. Howard Cty.*, 12 F. Supp. 3d 780, 783 (D. Md. 2014); *see also Boudreaux v. Sch. Bd. of St. Mary Par.*, No. 6:65-CV-11351, 2023 U.S. Dist. LEXIS 129325, at *9 (W.D. La. July 24, 2023) ("District courts must keep in mind the differences between the trial and appellate court forums in determining whether it is appropriate to allow an *amicus curiae* to participate. Chief among those differences is that a district court resolves fact issues. An *amicus* who argues facts should rarely be welcomed.") (internal quotations

---

[8] Of course, in interpreting a statute, the Court looks to the plain language of the text of the statute and to legislative history and not to what a purported *amicus* says who is actually the mouthpiece for a party and who is the representative of the party, and who could have been disclosed as an expert witness but was not.

[9] "Only a named party or an intervening real party in interest is entitled to litigate on the merits…." *Michigan*, 940 F.2d at 166.

7

and footnotes omitted); *Sierra Club v. FEMA*, No. H-07-0608, 2007 U.S. Dist. LEXIS 84230, at *4 (S.D. Tex. Nov. 14, 2007) ("An *amicus* may be useful at the appellate level but not in the district court.").

**D. A Party's Objection to a Motion to File an *Amicus* Brief Should be Given Great Weight.**

And further still, the policy of denying *amicus* status grows even stronger where a party objects to the filing, as Eight Mile Style has vehemently done here. *Behrens v. United States*, 135 Fed. Cl. 66, 70 (Fed. Cl. 2017) ("While parties to an action cannot bar the filing of an *amicus* brief by their unanimous opposition, such opposition should be given great weight by a court.") (quoting *Fluor Corp. v. United States*, 35 Fed. Cl. 284, 285 (Fed. Cl. 1996)); *Id*. ("The court has considered and given substantial weight to defendant's objections."); *Save the Manatee Club v. United States EPA*, No. 6:22-cv-868-CEM-LHP, 2022 U.S. Dist. LEXIS 242517, at *3 (M.D. Fla. Nov. 22, 2022) (considering Defendant's objections and denying motion for leave to file brief *amicus* curiae); *Boudreaux*, 2023 U.S. Dist. LEXIS 129325, at *8-9 ("The First Circuit has cautioned that 'a district court lacking joint consent of the parties should go slow in accepting, and even slower in inviting, an *amicus* brief….") (quoting *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)).

**E. DIMA's Motion is an Attempt to Circumvent the Requirement of Properly Qualifying Experts.**

With these policies in mind, the Court has the discretion of whether or not to grant the privilege of *amicus* status. *Bright*, 2020 U.S. Dist. LEXIS 261609, at *4. "No statute, rule, or controlling case defines a federal district court's power to grant or deny leave to file an *amicus* brief." *Sierra Club*, 2007 U.S. Dist. LEXIS 84230, at *3 (citation omitted). This Court has found that *amicus* briefs may be appropriate in three situations: (1) "when a party is not represented competently or is not represented at all, [(2)] when the *amicus* has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the

8

*amicus* to intervene and become a party in the present case), or [(3)] when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Newcomb*, 2013 U.S. Dist. LEXIS 108691, at *2 (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, C.J.)).

Paths one and two are irrelevant here beyond any reasonable dispute and have not been argued in DIMA's motion for leave. DIMA couches its motion in path three, stating that it is able to help beyond the briefing provided by the lawyers for the parties because, among other things, it was part of lobbying efforts towards the passage of the MMA, it is "uniquely positioned to assist the Court in understanding… the degree to which the interpretation espoused by Plaintiffs is an outlier to the industry consensus on how the MMA is intended to, and does, operate", and it has "deep experience and expertise in the audio streaming services industry" so it can help shape the Court's understanding of past, present, and future industry functions. (Doc. No. 469, at p.4).

Not only have the parties devoted significant in-depth expert testimony, reports, and briefing to these issues, such that this motion appears to be an end around the briefing page limit *as well as* around the requirement to properly qualify experts and subject them to cross examination, but as noted, DIMA could have been hired or disclosed as an expert as soon as the issue to which DIMA now wishes to address was first raised in this litigation over 16 months ago. *See*, Kohn Original Expert Report at 210-11 (Sept. 19, 2022).

Further, as noted, DIMA's motion is highly improper, as it is directly adversarial, and also, particularly improper at the district court level as district courts in several circuits hold that "[a]n *amicus* who argues facts should rarely be welcomed." *Boudreaux*, 2023 U.S. Dist. LEXIS 129325, at *9; *All. of Auto. Mfrs. v. Gwadowsky*, 297 F. Supp. 2d 305, 307 (D. Me. 2003) (same); *Palladino v. Corbett*, No. 13-5641, 2014 U.S. Dist. LEXIS 27154, at *19 (E.D. Pa. Mar. 3, 2014) (same);

9

*SEC v. Ripple Labs, Inc.*, 2021 U.S. Dist. LEXIS 190855, at *15 (S.D.N.Y. Oct. 4, 2021) (same); *Flaws v. Akal Sec., Inc.*, No. 19-06140-CV-SJ-GAF, 2020 U.S. Dist. LEXIS 107370, at *3 (W.D. Mo. June 18, 2020) (same); *Titan Am., Ltd. Liab. Co. v. Darrell*, No. 7:11-CV-52-FL, 2011 U.S. Dist. LEXIS 100340, at *15 (E.D.N.C. Sep. 2, 2011) ("*Amicus* briefs based on factual matters are disfavored, and an *amicus* who argues facts should rarely be welcomed.") (quotations omitted).

In *Bright*, this Court denied a motion for leave to file an *amicus* brief, finding that a non-party's "proposed *amicus* submissions inappropriately adopt a directly adversarial position" where they sought "to serve as some sort of whistleblower against [a party], and … suggest[ed] that [the party], among others, [wa]s responsible for a variety of wrongs," holding that "[s]uch 'totally adversarial' filings are anathema to the tradition and purpose of impartial *amicus* submissions" and the non-party "may not use unsolicited *amicus* filings to give voice to a personal adversarial agenda." *Bright*, 2020 U.S. Dist. LEXIS 261609, at *6 (citing *Michigan*, 940 F.2d at 164).

Similarly, here, DIMA seeks to present an adversarial agenda "in support of" Spotify wherein it directly states Eight Mile Style is incorrect in its briefings and theory of the case, and examines why, and then contextualizes and distinguishes it as an industry outlier. Further, Eight Mile Style asserts that it is clear that the only way to "perceive" DIMA is as an interested party or advocate on behalf of Spotify, and therefore, "leave to appear *amicus* curiae should be denied." *Liberty Lincoln Mercury*, 149 F.R.D. at 82; *Trahan*, 2006 U.S. Dist. LEXIS 117063, at *4 n.1; *Virginia*, 2002 U.S. LEXIS 9434, at *101.

## CONCLUSION

For the foregoing reasons, DIMA's motion for leave to file a a brief as *amicus curiae* should be denied.

Respectfully submitted on this 23rd day of January 2024 by:

By: */s/ Richard S. Busch*
Richard S. Busch (TN Bar # 014594)
Andrew H. "Drew" Davis (TN Bar # 034203)
David M. Niemierzycki (TN Bar # 039921)
KING & BALLOW
26 Century Boulevard, Ste. NT700
Nashville, TN 37214
Telephone: (615) 726-5422
Facsimile: (615) 726-5417
rbusch@kingballow.com
ddavis@kingballow.com
dniemierzycki@kingballow.com
*Attorneys for Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC*