**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| EIGHT MILE STYLE, LLC; MARTIN AFFILIATED, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SPOTIFY USA INC.; HARRY FOX AGENCY, LLC,<br><br>Defendants,<br><br>v.<br><br>KOBALT MUSIC PUBLISHING AMERICA, INC.<br><br>Third-Party Defendant. | Case No. 3:19-cv-00736 |

**UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF THE CONSTITUTIONALITY OF THE MUSIC MODERNIZATION ACT**

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 2

I. LEGAL BACKGROUND ........ 2

II. PROCEDURAL HISTORY ........ 5

ARGUMENT ........ 6

I. SECTION 115(d)(10) DOES NOT VIOLATE DUE PROCESS. ........ 7

II. THE MMA'S LIMITATION ON LIABILITY DOES NOT CONSTITUTE A TAKING WITHOUT JUST COMPENSATION. ........ 13

A. This Court Cannot Set Aside § 115(d)(10) Under the Takings Clause. ........ 13

B. Eight Mile's Takings Challenge Fails on the Merits. ........ 15

1. Eight Mile lacks a cognizable property interest affected by § 115(d)(10). ........ 15

2. Section 115(d)(10) does not take Eight Mile's property. ........ 16

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

### CASES

*A&D Auto Sales, Inc. v. United States*,
748 F.3d 1142 (Fed. Cir. 2014) ........ 17

*Andrus v. Allard*,
444 U.S. 51 (1979) ........ 17, 19

*Arbour v. Jenkins*,
903 F.2d 416 (6th Cir. 1990) ........ 16

*Bank Markazi v. Peterson*,
578 U.S. 212 (2016) ........ 12

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) ........ 12

*Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*,
745 F.3d 703 (4th Cir. 2014) ........ 8

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021) ........ 16

*Chapman v. Bd. of Comm'rs*,
107 U.S. 348 (1883) ........ 12

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985) ........ 9

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
508 U.S. 602 (1993) ........ 13

*Connolly v. Pension Ben. Guar. Corp.*,
475 U.S. 211 (1986) ........ 15, 19

*Davis v. Blige*,
505 F.3d 90 (2d Cir. 2007) ........ 16

*Doe v. Mich. Dep't of State Police*,
490 F.3d 491 (6th Cir. 2007) ........ 9

*Duke Power Co. v. Carolina Env't Study Grp.*,
438 U.S. 59 (1978) ........ 8, 9

*E. Enters. v. Apfel*,
524 U.S. 498 (1998) .................................................. 14, 15

*EJS Props., LLC v. City of Toledo*,
698 F.3d 845 (6th Cir. 2012) .................................................. 7

*FCC v. Beach Commc'ns, Inc.*,
508 U.S. 307 (1993) .................................................. 9

*Fisch v. Gen. Motors Corp.*,
169 F.2d 266 (6th Cir. 1948) .................................................. 10

*Gibbes v. Zimmerman*,
290 U.S. 326 (1933) .................................................. 8

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) .................................................. 6

*Haw. Hous. Auth. v. Midkiff*,
467 U.S. 229 (1984) .................................................. 14

*Hodel v. Irving*,
481 U.S. 704 (1987) .................................................. 15, 20

*Horne v. Dep't of Agric.*,
569 U.S. 513 (2013) .................................................. 14

*Horne v. Dep't of Agric.*,
576 U.S. 350 (2015) .................................................. 14, 16, 19

*Hyatt v. United States*,
207 F.3d 831 (6th Cir. 2000) .................................................. 13

*Ileto v. Glock, Inc.*,
565 F.3d 1126 (9th Cir. 2009) .................................................. 9, 16

*In re ADC Telecomms., Inc. Sec. Litig.*,
409 F.3d 974 (8th Cir. 2005) .................................................. 12

*In re Consol. U.S. Atmospheric Testing Litig.*,
820 F.2d 982 (9th Cir. 1987) .................................................. 16

*In re TMI*,
89 F.3d 1106 (3d Cir. 1996) .................................................. 9, 13



Case 3:19-cv-00736 Document 550 Filed 03/29/24 Page 4 of 30 PageID #: 42094

*Jefferson Disposal Co. v. Par. of Jefferson*,
603 F. Supp. 1125 (E.D. La. 1985) ........ 8

*Kaiser Aetna v. United States*,
444 U.S. 164 (1979) ........ 14, 16, 20

*Kelo v. City of New London*,
545 U.S. 469 (2005) ........ 14

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
480 U.S. 470 (1987) ........ 17

*Knick v. Twp. of Scott*,
139 S. Ct. 2162 (2019) ........ 13, 15

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) ........ 9, 12, 13

*Lucas v. S.C. Coastal Council*,
505 U.S. 1003 (1992) ........ 16, 17, 18

*Murr v. Wisconsin*,
582 U.S. 383 (2017) ........ 17

*N.Y. Cent. R.R. Co. v. White*,
243 U.S. 188 (1917) ........ 8

*Opdyke Inv. Co. v. City of Detroit*,
883 F.2d 1265 (6th Cir. 1989) ........ 9

*Penn Cent. Transp. Co. v. City of New York*,
438 U.S. 104 (1978) ........ 15, 17, 19

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.*,
467 U.S. 717 (1984) ........ 9, 11

*Puckett v. Lexington-Fayette Urb. Cnty. Gov't*,
833 F.3d 590 (6th Cir. 2016) ........ 15

*Ruckelshaus v. Monsanto*,
467 U.S. 986 (1984) ........ 11

*Scardina v. Wood*,
649 F. Supp. 793 (N.D. Ohio 1986) ........ 12



Case 3:19-cv-00736 Document 550 Filed 03/29/24 Page 5 of 30 PageID #: 42095

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) .......... 8, 19

*Sowell v. Am. Cyanamid Co.*,
888 F.2d 802 (11th Cir. 1989) .......... 16

*Spinelli v. Nat'l Football League*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) .......... 16

*Steven I. v. Cent. Bucks Sch. Dist.*,
618 F.3d 411 (3d Cir. 2010) .......... 13

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Plan. Agency*,
535 U.S. 302 (2002) .......... 16, 17

*Tenn. Scrap Recyclers Ass'n v. Bredesen*,
556 F.3d 442 (6th Cir. 2009) .......... 19, 20

*United States ex rel. May v. Purdue Pharma Ltd. P'ship*,
737 F.3d 908 (4th Cir. 2013) .......... 12, 13

*United States v. Darusmont*,
449 U.S. 292 (1981) .......... 11

*Usery v. Turner Elkhorn Mining Co.*,
428 U.S. 1 (1976) .......... 9

*Wheaton v. Peters*,
33 U.S. 591 (1834) .......... 8

*Zucker v. Rodriguez*,
919 F.3d 649 (1st Cir. 2019) .......... 16

**CONSTITUTION**

U.S. Const. art. I § 8 cl. 8 .......... 2

**STATUTES**

17 U.S.C. § 101 .......... 3

17 U.S.C. § 106 .......... 2

17 U.S.C. § 115 .......... *passim*

17 U.S.C. § 501 .......... 2

17 U.S.C. § 502 .......... 3

17 U.S.C. § 504 .......... 3

17 U.S.C. § 505 .......... 3

17 U.S.C. § 507 .......... 10

17 U.S.C. § 801 .......... 3

17 U.S.C. § 804 .......... 3

28 U.S.C. § 1491 .......... 14

Copyright Act of 1909
Pub. L. No. 60-349, 35 Stat. 1075 .......... 3

Music Modernization Act of 2017,
H.R. 4706, 115th Cong. (2017) .......... 11

Orrin G. Hatch-Bob Goodlatte Music Modernization Act of 2018,
Pub. L. No. 115-264, 132 Stat. 3676 .......... 1

**LEGISLATIVE HISTORY**

H.R. Rep. No. 115-651 (2018) .......... 11

S. Rep. No. 115-339 (2018) .......... 4, 5, 10, 11

*Section-by-Section Analysis of H.R. 1551 by Chairmen and Ranking Members of House and Senate Judiciary Committees* (Oct. 19, 2018),
https://perma.cc/4QSK-H2XA .......... 4

**RULES**

Fed. R. Civ. P. 5.1 .......... 6

**OTHER AUTHORITIES**

The MLC, https://perma.cc/T6P3-WNFJ (Aug. 10, 2023). .......... 10

U.S. Copyright Office, *Copyright and the Music Marketplace* (Feb. 2015),
https://perma.cc/3N84-QELE .......... 4



Case 3:19-cv-00736 Document 550 Filed 03/29/24 Page 7 of 30 PageID #: 42097

## INTRODUCTION

The United States Constitution expressly confers on Congress the authority to create and define intellectual property rights, including copyrights. Congress has long exercised that authority by delineating the contours of copyrights and defining the remedies available for copyright infringement. In particular, since 1909, Congress has enabled any person to secure a compulsory license to reproduce and distribute phonorecords of nondramatic musical works, without the copyright owner's consent, by complying with various requirements, including payment of a standard "statutory" royalty.

In the Orrin G. Hatch-Bob Goodlatte Music Modernization Act of 2018 ("MMA"), Pub. L. No. 115-264, 132 Stat. 3676, Congress updated the compulsory licensing scheme for musical works in response to the advent of digital music streaming platforms. As part of this effort, Congress retroactively limited the liability of digital music providers ("DMPs") by making recovery of unpaid statutory royalties the sole remedy for past acts of copyright infringement arising from the unauthorized reproduction and distribution of musical works —but only if those DMPs satisfied certain requirements, including engaging in good-faith, commercially reasonable efforts to identify copyright owners and making required royalty payments. In doing so, Congress intended both to limit excessively costly litigation and to incentivize DMPs to compensate owners.

Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC (collectively "Eight Mile") now argue that the retroactive elimination of other remedies for their accrued claims for copyright infringement against Spotify violates the Due Process and Takings Clauses of the Fifth Amendment. But Eight Mile's constitutional challenges lack any legal support. It has long been established that Congress may legislate retroactively to alter or eliminate accrued or pending causes of action without violating due process. Because no one has a right to the law remaining

unchanged for its benefit, Eight Mile cannot base a due process claim on a purported property interest in the remedies for copyright infringement remaining unaltered. Even if it could, due process is satisfied as long as Congress legislated with a rational basis, and Eight Mile cannot carry the heavy burden of demonstrating that Congress lacked any legitimate reason for limiting the liability of DMPs that comply with the requirements of the MMA.

Eight Mile's takings theory fares no better. As an initial matter, because Eight Mile could bring any potential takings claim against the United States under the Tucker Act, this Court lacks the authority to set aside the MMA for purposes of this litigation. Even if the Court could address Eight Mile's takings theory, however, that theory would fail for similar reasons as the due process theory. Eight Mile has no cognizable property interest in the remedies for copyright infringement remaining unchanged. Moreover, Eight Mile cannot show that the restriction on remedies has eliminated the entire value of its putative property interest or that the provision has so substantially interfered with its putative property interest to constitute a regulatory taking.

## BACKGROUND

### I. LEGAL BACKGROUND

Congress is authorized by the Constitution "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I § 8 cl. 8. Congress has exercised its constitutional power to regulate the copyright of creative works, including music, through the Copyright Act. The Copyright Act grants a copyright owner certain exclusive rights, including the rights to reproduce and distribute the copyrighted work to the public. 17 U.S.C. § 106(1), (3). An owner may license the right to exploit a copyrighted work to another party, and may sue a party for any unlicensed use. *See id.* § 501(b). In general, an owner bringing an action for copyright infringement

may seek an injunction "to prevent or restrain infringement," *id.* § 502(a); either the owner's "actual damages and any additional profits of the infringer" or statutory damages, within a specified range but at an amount subject to the court's discretion, *see id.* § 504; and costs including reasonable attorney's fees, *see id.* § 505.

Music is subject to two distinct copyrights: one for the underlying musical and lyrical composition, known as a "musical work," and one for a recorded performance of that musical work, known as a "sound recording." To lawfully make a particular track available to the public, a streaming service must license both copyrights.

The exclusive rights to reproduce and distribute phonorecords[1] of a musical work are commonly known as "mechanical" rights. Since the Copyright Act of 1909, Congress has imposed a "compulsory" licensing scheme for mechanical rights, under which any party may obtain a license to reproduce and distribute phonorecords of a musical work without the owner's consent. *See* Pub. L. No. 60-349 § 1(e), 35 Stat. 1075, 1075-76 (1909). Prior to the enactment of the MMA, once phonorecords of the musical work were publicly distributed under the authority of the owner, any person could obtain a compulsory mechanical license by serving a "notice of intention" ("NOI") on the owner, or filing it with the Copyright Office if the owner was unknown, no later than 30 days after making and before distributing any phonorecords of the work. 17 U.S.C. § 115(a)(1), (b)(1) (2017). The licensee was required to pay royalties to the owner at a standard statutory royalty rate set by the Copyright Royalty Judges. *Id.* § 115(c)(2)-(3) (2017).[2] If a

[1] The Copyright Act distinguishes between "copies" and "phonorecords," defining phonorecords as "material objects in which sounds, other than those accompanying a motion picture or other audiovisual work, are fixed . . . ." 17 U.S.C. § 101; *cf. id.* (defining copies as "material objects, other than phonorecords, in which a work is fixed").
[2] The Librarian of Congress appoints three Copyright Royalty Judges who are authorized to set, through ratemaking proceedings every five years, the rates and terms for statutory licenses under the Copyright Act, including the compulsory mechanical license. *See id.* §§ 801, 804(b)(4).

previously unknown owner was subsequently identified, she would be entitled to royalties for phonorecords "made and distributed after being so identified, but [was] not entitled to recover for any phonorecords previously made and distributed." *Id.* § 115(c)(1)(A) (2017).

The pre-MMA compulsory licensing scheme proved an ill fit for the world of online streaming. Congress "regularly heard from various parties in the music industry" that the pre-MMA scheme—which required obtaining licenses on a per-work basis—did not "functionally work to meet the needs of the digital music economy where commercial services strive to have available to their customers as much music as possible." S. Rep. No. 115-339, at 4 (2018); *Section-by-Section Analysis of H.R. 1551 by Chairmen and Ranking Members of House and Senate Judiciary Committees* at 3 (Oct. 19, 2018), https://perma.cc/4QSK-H2XA ("Conf. Rep.") (same); *see also* U.S. Copyright Office, *Copyright and the Music Marketplace* at 107 (Feb. 2015), https://perma.cc/3N84-QELE (noting "near universal concern about the inefficiencies of the mechanical licensing process"). The mismatch between the pre-MMA scheme and the new streaming technology meant that "music copyright and licensing laws [we]re too difficult to comply with and d[id] not adequately reward the artists and professionals responsible for creating American music." Conf. Rep. at 1; S. Rep. No. 115-339 at 2.

On October 11, 2018, Congress enacted the MMA to overhaul the compulsory licensing scheme for streaming and other digital transmissions. The MMA provides that on or after January 1, 2021, the "license availability date," DMPs (*e.g.*, streaming services) may obtain a "blanket" compulsory mechanical license for millions of musical works all at once, in lieu of submitting NOIs for each work. *See* 17 U.S.C. § 115(d)(1)-(2). The MMA also establishes a mechanical licensing collective ("MLC"), a non-profit entity created and endorsed by copyright owners and designated by the Register of Copyrights, which is responsible for administering blanket licenses

and collecting and distributing statutory royalties. *See id.* § 115(d)(3).

In light of Congress's belief that "continued litigation" over infringement under the pre-MMA scheme "generates unnecessary administrative costs," which "divert[] royalties from artists, S. Rep. No. 115-339, at 14, the MMA also retroactively limits the liability of DMPs for certain past acts of infringement. For any action commenced on or after January 1, 2018, arising from the alleged infringement of mechanical rights in a musical work prior to the license availability date, the "sole and exclusive remedy" is recovery of statutory mechanical royalties, but only if the DMP satisfies statutory requirements including (i) engaging in "good-faith, commercially reasonable efforts to identify and locate each copyright owner" of the musical work, and continuing those efforts on a monthly basis until the license availability date if unsuccessful; (ii) providing statements of account and paying royalties to identified owners, even for historic uses, until the license availability date; and (iii) accruing and holding unpaid royalties, calculated at the statutory rate, for unidentified owners, even for historic uses, and, if an owner is not identified before the license availability date, ultimately transferring accrued royalties to the MLC to engage in further identification efforts and to eventually distribute such royalties. 17 U.S.C. § 115(d)(10)(A)-(B); *id.* § 115(d)(3)(H)-(J) (governing distribution of accrued royalties). If a DMP cannot demonstrate compliance with the statutory requirements in § 115(d)(10)(B), however, the MMA's limitation on liability "shall not apply," and owners may seek any remedy otherwise available under the copyright law. *Id.* § 115(d)(10)(A).

## II. PROCEDURAL HISTORY

Eight Mile alleges that it owns and controls musical works written in whole or in part by the musical artist Eminem. *See* Am. Compl. ¶ 1, ECF No. 97. It filed this action on August 21, 2019, against Spotify USA Inc., an audio streaming service, and the Harry Fox Agency, a company

providing rights management, licensing, and royalty services to owners and publishers of musical works and that allegedly operated as Spotify's agent. *See* Compl., ECF No. 1. In relevant part, Eight Mile alleges that Spotify infringed Eight Mile's copyrights in 242 musical works by streaming those works billions of times without appropriate licenses. *See* Am. Compl. ¶¶ 1-7; *see also* Pls.' Mem. of Law in Supp. of Mot. for Summ. J. at 1-2, ECF No. 353 ("Pls.' Mem.").

On August 23, 2019, Eight Mile filed a notice of constitutional challenge under Federal Rule of Civil Procedure 5.1, in which it asserted that the MMA's limitation on liability, if applicable to its claims against Spotify, deprives Eight Mile of due process and constitutes a taking of property without just compensation. *See* ECF No. 8; *see also* Am. Compl. ¶¶ 29-31, 123. The United States filed an acknowledgment of the notice on October 16, 2019, which asserted that any decision on intervention was premature at that time. *See* ECF No. 30.

On October 13, 2023, the parties cross-moved for summary judgment. *See, e.g.*, ECF Nos. 317, 320, 328, 348. In its motion, Eight Mile argues in the first instance that the MMA's limitation on liability does not apply to its claims because Spotify failed to comply with the requirements of § 115(d)(10)(B), *see* Pls.' Mem. at 46-58. Eight Mile argues in the alternative that § 115(d)(10)(A) may not be applied because it deprives Eight Mile of its property without due process and takes its property without just compensation in violation of the Fifth Amendment, *see id.* at 59-75.[3]

## ARGUMENT

The Court should decline to address the constitutionality of the MMA until it resolves all nonconstitutional arguments raised in the parties' motions for summary judgment. *See, e.g.*, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("[P]rior to reaching any constitutional questions,

---

[3] In its motion, Eight Mile abandons the procedural due process argument it had asserted in its Amended Complaint and notice of constitutional challenge. *See* Am. Compl. ¶ 123.

federal courts must consider nonconstitutional grounds for decision."). Eight Mile and Spotify each raise arguments that, if correct, would obviate the need to address Eight Mile's constitutional challenge.[4] But if the Court does reach Eight Mile's constitutional arguments, it should reject them.

## I. SECTION 115(d)(10) DOES NOT VIOLATE DUE PROCESS.

Section 115(d)(10) does not unconstitutionally deprive Eight Mile of property without due process. Eight Mile lacks any constitutionally cognizable property interest in the availability of any particular remedy for its copyright infringement claims. Even if Eight Mile had a property interest, Congress has the authority to change the substantive law to restrict or eliminate accrued causes of action subject only to rational basis review, which § 115(d)(10) plainly satisfies.

A prerequisite of a due process claim is a "constitutionally protected property or liberty interest" affected by the challenged government action. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citation omitted). Eight Mile asserts that § 115(d)(10) deprives it of a property interest in its accrued claims for copyright infringement against Spotify. *See* Pls.' Mem. at 64-70. Specifically, Eight Mile argues that prior to the enactment of the MMA, it had accrued infringement claims against Spotify; that an accrued claim, or a "chose in action," is a "vested, intangible, and protected personal property right" under the Due Process Clause; and that by retroactively eliminating all remedies for those claims other than the statutory royalties to which Eight Mile would have been entitled had no infringement occurred, § 115(d)(10) deprives Eight Mile of its chose in action without due process. *See id.* at 65-67.

Eight Mile's theory founders because § 115(d)(10) does not in fact extinguish any accrued infringement claims. Eight Mile remains free to pursue those claims, as it has here, and if it prevails, it can obtain unpaid statutory royalties if Spotify complied with the requirements of

[4] The United States takes no position on the merits of these arguments.

§ 115(d)(10)(B), or any other remedy provided by Congress if not. While Eight Mile suggests that limiting its recovery to statutory royalties is akin to eliminating its claims, that makes little sense, as such a judgment would involve an actual remedy, *i.e.*, money damages.

In other words, § 115(d)(10) does not "entirely vitiate[]" Eight Mile's accrued claims, Pls.' Mem. at 63, but merely narrows the class of remedies that Eight Mile may obtain. Parties have "no property, in the constitutional sense, in any particular form of remedy." *Gibbes v. Zimmerman*, 290 U.S. 326, 332 (1933); *see also Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 724 (4th Cir. 2014) (same). Moreover, "[n]o person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit." *N.Y. Cent. R.R. Co. v. White*, 243 U.S. 188, 198 (1917); *Duke Power Co. v. Carolina Env't Study Grp.*, 438 U.S. 59, 88 n.32 (1978). Eight Mile, therefore, cannot base its due process claim on its expectation that the remedies Congress had previously provided for copyright infringement would remain unchanged. *See Carnell*, 745 F.3d at 724 (statutory cap on value of public contracts could be applied to limit damages without violating due process because it "only affects the remedy available"); *Jefferson Disposal Co. v. Par. of Jefferson*, 603 F. Supp. 1125, 1136 (E.D. La. 1985) (no due process violation where act precluded certain remedies for statutory violation but retained others). Any such expectation would ring hollow in the context of the copyright law, where "the protection given to copyrights is wholly statutory" and "[t]he remedies for infringement are only those prescribed by Congress." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 431 (1984) (citation omitted); *Wheaton v. Peters*, 33 U.S. 591, 663-64 (1834) ("No one can deny that when the legislature are about to vest an exclusive right in an author or an inventor, they have the power to prescribe the conditions on which such right shall be enjoyed . . . .").

Even if Eight Mile did have a protected property interest at stake, there still would be no

due process violation. Laws, like the MMA, that do not affect fundamental rights but merely "adjust[] the burdens and benefits of economic life" are reviewed under a rational basis standard. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976); *see also Duke Power*, 438 U.S. at 83 (provision limiting liability was "a classic example of an economic regulation"). Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993) ("Where there are plausible reasons for Congress' action, [the Court's] inquiry is at an end." (citation omitted)).

Those same principles apply when Congress legislates retroactively to affect "settled" economic expectations. *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984). The Constitution places only "limited" restrictions on retroactive civil legislation. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994). Thus, so long as Congress has "ma[d]e its intention clear" that the statute should operate retroactively, *id.* at 268, courts "address[ing] the constitutionality of retroactive legislation that either abolishes or substantially affects a plaintiff's pending . . . cause of action have reviewed such legislation on a 'rational basis' standard." *In re TMI*, 89 F.3d 1106, 1113 (3d Cir. 1996) (collecting cases); *accord Ileto v. Glock, Inc.*, 565 F.3d 1126, 1140 (9th Cir. 2009). Consistent with that "highly deferential" standard of review, *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007), courts—including the Sixth Circuit—have routinely rejected due process challenges to retroactive legislation that limits or eliminates accrued causes of action. *See, e.g.*, *Ileto*, 565 F.3d at 1140 (no due process violation where Protection of Lawful Commerce in Arms Acts preempted pending tort claims); *Opdyke Inv. Co. v. City of Detroit*, 883 F.2d 1265, 1275 (6th Cir. 1989) (upholding statute that retroactively

limited plaintiff's ability to seek antitrust damages from municipality); *Fisch v. Gen. Motors Corp.*, 169 F.2d 266, 270-71 (6th Cir. 1948) (upholding Portal-to-Portal Act's elimination of pending claims for unpaid overtime under the Fair Labor Standards Act).

Section 115(d)(10) plainly passes muster under rational basis review. The MMA was intended to alter the framework for compulsory mechanical licenses to better fit the digital music marketplace, thereby ensuring public access to a robust catalog of works and better compensation to publishers and songwriters. *See* S. Rep. No. 115-339, at 4. The limitation on liability in § 115(d)(10) is designed not only to benefit DMPs but also to benefit the broader class of copyright owners. It makes the limitation on liability conditional on DMPs engaging in substantial efforts to identify owners and to make recurring royalty payments, even for historic uses. *See* 17 U.S.C. § 115(d)(10)(A)-(B). This requirement even extends to historic uses occurring beyond the statute of limitations, for which any remedy would be unavailable. *See id.*; *id.* § 507(b). It similarly requires DMPs to accrue and hold royalties for works with unknown owners and to ultimately transfer those royalties to the MLC to engage in further identification efforts and to eventually distribute such royalties either to subsequently identified owners or other copyright owners. *Id.* § 115(d)(10)(B)(iv)(III), (d)(3). To date, DMPs have transferred hundreds of millions of dollars in accrued royalties for uses of works with unknown owners to the MLC pursuant to this provision. *See* The MLC, https://perma.cc/T6P3-WNFJ (Aug. 10, 2023). By contrast, under the pre-MMA system, licensees were not required to pay royalties for any uses prior to the identification of previously unknown owners. *See* 17 U.S.C. § 115(c)(1) (2017).

Moreover, § 115(d)(10) enables owners to obtain statutory royalties for prior unauthorized uses without resorting to costly litigation. As explained in the legislative history, Congress believed that "continued litigation" over infringement claims in this context "generates

unnecessary administrative costs, diverting royalties from artists," and Congress "routinely pre-empts such unnecessary litigation in other contexts." S. Rep. No. 115-339, at 14-15; H.R. Rep. No. 115-651, at 13-14 (2018) (same). Thus, Congress intended that § 115(d)(10)'s "imposition of detailed statutory requirements for obtaining . . . a limitation of liability" would mean that "more artist royalties will be paid than otherwise would be the case through continual litigation." S. Rep. No. 115-339, at 14-15; H.R. Rep. No. 115-651, at 14 (same).

The retroactive application of § 115(d)(10) further effectuates Congress's goal of restricting costly litigation. Congress began debating the bill that became the MMA in December 2017. *See* Music Modernization Act of 2017, H.R. 4706, 115th Cong. (2017). Absent a retroactivity provision, debate on the limitation on liability could have created a race to the courthouse, thus spurring the very litigation that Congress sought to limit and destabilizing the transition to the blanket licensing scheme. It was eminently reasonable for Congress to impose a limited period of retroactivity in § 115(d)(10) to avoid this problem. *See R.A. Gray*, 467 U.S. at 730-31 (Congress's retroactive imposition of enhanced liability for withdrawals from ERISA plans was rational in light of concern that "employers would have an even greater incentive to withdraw if they knew that legislation to impose more burdensome liability on withdrawing employers was being considered"); *United States v. Darusmont*, 449 U.S. 292, 296-98 (1981) ("customary congressional practice" of imposing tax rate changes retroactively does not violate due process).

Presumably, Eight Mile disagrees with Congress's belief that § 115(d)(10) benefits copyright owners. But the question is not "whether the provisions in fact will accomplish their stated objective. [The Court's] review is limited to determining that the purpose is legitimate and that Congress rationally could have believed that the provisions would promote that objective." *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1015 n.18 (1984). That standard is easily met here.

Eight Mile essentially ignores the long line of authority rejecting due process challenges to retroactive legislation affecting or eliminating pending causes of action. Instead, it relies on cases holding that when a newly-amended statute of limitations shortens the limitation period so as to bar accrued claims that were timely under the old statute, the new statute should be read to allow a grace period for the filing of accrued claims. *See* Pls.' Mem. at 67-70. This reliance is misplaced.

For starters, § 115(d)(10)'s restriction of the remedies available for copyright infringement is not a statute of limitations. In addition, the cases cited by Eight Mile either concern statutes that lack explicit statements of retroactive application, *see, e.g.*, *United States ex rel. May v. Purdue Pharma Ltd. P'ship*, 737 F.3d 908, 918 (4th Cir. 2013) (statute was "silent as to retroactivity"); *In re ADC Telecomms., Inc. Sec. Litig.*, 409 F.3d 974, 977 (8th Cir. 2005) ("Congress did not expressly state its intent" for statute to apply retroactively); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 440 (S.D.N.Y. 2016), and/or predate the modern conception of the constitutional limitation on retroactive legislation, *see Chapman v. Bd. of Comm'rs*, 107 U.S. 348, 358 (1883); *Scardina v. Wood*, 649 F. Supp. 793, 796-97 (N.D. Ohio 1986). In *Landgraf*, the Supreme Court recognized that the Constitution places only "limited" restrictions on retroactive civil legislation, and Congress may legislate retroactively so long as it "make[s] its intention clear." 511 U.S. at 267-68; *cf. Bank Markazi v. Peterson*, 578 U.S. 212, 215 (2016) ("Congress . . . may amend the law and make the change applicable to pending cases, even when the amendment is outcome determinative."). Here, there is no dispute that § 115(d)(10) is intended to apply retroactively, so Eight Mile's cited statute of limitations cases do nothing to support its due process claim.[5]

[5] These cases are more properly read as addressing whether, in the absence of an explicit statement of legislative intent, a statute has a retroactive effect. *Landgraf* endorses a two-part test, under which a court asks first whether "Congress has expressly prescribed the statute's reach," and, if not, "whether the new statute would have retroactive effect." 511 U.S. at 280. "If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.* The Court further recognized that while "[c]hanges

## II. THE MMA'S LIMITATION ON LIABILITY DOES NOT CONSTITUTE A TAKING WITHOUT JUST COMPENSATION.

Eight Mile's theory that § 115(d)(10) unconstitutionally takes its property without just compensation is likewise meritless. *See Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 641 (1993) ("Given that [plaintiff's] due process arguments are unavailing, it would be surprising indeed to discover the challenged statute nonetheless violating the Takings Clause." (citation omitted)). The Court lacks authority to set aside § 115(d)(10) as a taking, and, in any event, § 115(d)(10) does not effectuate a taking.

### A. This Court Cannot Set Aside § 115(d)(10) Under the Takings Clause.

Even if Eight Mile were correct that § 115(d)(10) effects a taking of its property—which it is not—it would not follow that the Court could declare § 115(d)(10) unconstitutional and set it aside for the purposes of this litigation. The Takings Clause "prevents the Legislature . . . from depriving private persons of vested property rights except for a 'public use' and upon payment of 'just compensation.'" *Landgraf*, 511 U.S. at 266. If property is taken for a "public use," the remedy for the taking is just compensation, and "there is no basis to enjoin the government's action." *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2176 (2019); *see also id.* at 2179 ("[a]s long as just compensation

---

in procedural rules may often . . . appl[y] in suits arising before their enactment without raising concerns about retroactivity," that rule is not absolute, and in some cases, procedural rules can raise retroactivity concerns. *Id.* at 275 & n.29. Although statutes of limitations are procedural rules that generally do not raise retroactivity concerns, courts have recognized that applying a new statute of limitations to bar an accrued claim that would be timely under the old statute can retroactively alter substantive rights and thus have applied a grace period for the filing of accrued claims. *See Hyatt v. United States*, 207 F.3d 831, 832-33 (6th Cir. 2000) (noting that "retroactivity concerns generally do not bar the application of a changed limitation period to a suit that is filed after" enactment, but imposing one-year grace period); *accord Purdue Pharma*, 737 F.3d at 918; *Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 414- 15 & n.7 (3d Cir. 2010). That reasoning has no bearing on statutes, like § 115(d)(10), that have clear statements of retroactivity. *See TMI*, 89 F.3d at 1113-14 ("retroactive application" of different "statute of limitations to bar properly filed and already pending causes of action" did not violate due process).

remedies are available" courts may not "set aside [government] actions as unconstitutional" under the Takings Clause).

When assessing whether property is taken for a public use, the Supreme Court has "embraced the broader and more natural interpretation of public use as 'public purpose.'" *Kelo v. City of New London*, 545 U.S. 469, 480 (2005). Courts "must defer to [the legislature's] determination that the taking will serve a public use." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 244 (1984). As discussed, § 115(d)(10) reflects Congress's intent to limit unnecessary litigation, incentivize DMPs to identify owners and pay royalties (even for historic uses for which DMPs might not otherwise have to pay), with the goal that more royalties would end up in the hands of copyright owners than would have through litigation. *See supra* pp. 10-11. The MMA thus reflects a public purpose. Eight Mile's recourse for any purported taking, then, is not an injunction against § 115(d)(10)'s application, but a claim under the Tucker Act for monetary compensation against the United States in the Court of Federal Claims. *See* 28 U.S.C. § 1491(a)(1) (Court of Federal Claims has exclusive jurisdiction over claims for money damages against the United States).

Despite this clear case law, Eight Mile claims that there is "ample support" for "invalidat[ing]" § 115(d)(10). Pls.' Mem. at 74-75. But the cases it relies on all arise in distinct circumstances not applicable here. *See Horne v. Dep't of Agric.*, 569 U.S. 513, 526 (2013) (plaintiffs could challenge imposition of monetary fine under Takings Clause where fine was levied pursuant to a "comprehensive remedial scheme that withdraws Tucker Act jurisdiction" (cited in *Horne v. Dep't of Agric.*, 576 U.S. 350, 367 (2015))); *E. Enters. v. Apfel*, 524 U.S. 498, 521 (1998) (declining to require Tucker Act lawsuit where "the challenged statute . . . requires a direct transfer of funds mandated by the Government" (citation omitted)); *Kaiser Aetna v. United States*, 444 U.S. 164, 168-69 (1979) (addressing Takings Clause challenge in defense to

government lawsuit seeking an injunction).[6] Here, a Tucker Act claim is potentially available (albeit not meritorious), so this Court lacks the authority to set aside § 115(d)(10) as a taking.

### B. Eight Mile's Takings Challenge Fails on the Merits.

In any event, Eight Mile's takings challenge fails on the merits. Eight Mile lacks a cognizable property interest affected by § 115(d)(10) and cannot show that § 115(d)(10) is either a *per se* taking that eliminates the value of Eight Mile's accrued infringement claims or a regulatory taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

#### *1. Eight Mile lacks a cognizable property interest affected by § 115(d)(10).*

Eight Mile's takings theory fails because Eight Mile has no protected property right affected by § 115(d)(10). *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 609-10 (6th Cir. 2016) (absence of protected property interest forecloses takings claim). Though Eight Mile frames the relevant property interest as its chose in action, as discussed, § 115(d)(10) does not extinguish Eight Mile's infringement claim, but merely alters the applicable remedial scheme. *See supra* pp. 7-8. Eight Mile has no protected property interest in any particular remedy for copyright infringement remaining available. *See id.*; *cf. Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 222-24 (1986) (Congress does not violate Takings Clause when "[i]n the course of regulating commercial and other human affairs," it retroactively alters law to impose greater financial burdens on some parties for the benefits of others).

Indeed, Eight Mile's interest in its chose in action is itself "inchoate and affords no definite

---

[6] Eight Mile also cites *Hodel v. Irving*, 481 U.S. 704, 718 (1987), where the Supreme Court declared a statutory provision unconstitutional under the Takings Clause. However, there the Court merely "assumed the lack of a compensatory remedy" and granted relief without considering "the applicability of the Tucker Act." *E. Enters.*, 524 U.S. at 521-22. *Irving* cannot be read to override the Court's explicit, and more recent, instruction in *Knick* that courts may "not invalidate an otherwise lawful uncompensated taking when the property owner can receive complete relief through a Fifth Amendment claim brought under the Tucker Act." 139 S. Ct. at 2179.

or enforceable property right until reduced to final judgment." *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 989-90 (9th Cir. 1987). Thus, that interest would be insufficient to sustain a takings claim. *See Zucker v. Rodriguez*, 919 F.3d 649, 659 (1st Cir. 2019) ("[F]or purposes of the Takings Clause, it is well established that a party's property right in a cause of action does not vest until a final, unreviewable judgment has been obtained." (citation omitted) (cleaned up)); *Ileto*, 565 F.3d at 1141 (rejecting takings claim where plaintiffs had no vested right in pending claim). *A fortiori*, Eight Mile cannot base its takings challenge on a supposed property interest in the availability of certain remedies for a pre-judgment copyright infringement claim.[7]

*2. Section 115(d)(10) does not take Eight Mile's property.*

Even if Eight Mile had a property interest, its takings challenge is meritless.[8]

i. A categorical regulatory taking under *Lucas* occurs only in "the extraordinary

---

[7] Eight Mile relies on *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007), for the proposition that "the moment a copyright infringement claim accrues its owner possesses a 'valuable *and vested* right to enforce her claim.'" Pls.' Mem. at 66 (quoting *Davis*, 505 F.3d at 103). However, the Second Circuit's holding in *Davis* was "narrow" and recognized only that a retroactive license provided by one co-owner to a third party that "'extinguishes the accrued infringement claims of a non-consenting co-owner by traveling back in time to undo an unlawful infringement' may be held invalid." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 124 (S.D.N.Y. 2015) (quoting *Davis*, 505 F.3d at 103). *Davis* does not speak to whether *Congress*, pursuant to its constitutional authority to regulate copyrights, may alter the remedial scheme for copyright infringement. And, in any event, the Sixth Circuit has held, contra *Davis*, that a "legal claim affords no definite or enforceable property right until reduced to final judgment." *Arbour v. Jenkins*, 903 F.2d 416, 420 (6th Cir. 1990) (quoting *Sowell v. Am. Cyanamid Co.*, 888 F.2d 802, 805 (11th Cir. 1989)).

[8] Throughout its brief, Eight Mile relies on cases involving physical takings. *See, e.g.*, Pls.' Mem. at 72-73 (citing *Kaiser Aetna*, *Horne*, and *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021)). Physical takings involve a physical appropriation or occupation of property and are distinct from the *per se* or "categorical" regulatory taking recognized in *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992), which occurs when a "regulation . . . deprives land of all economically beneficial use." Eight Mile does not raise a physical takings claim here, nor could it, as the United States has not appropriated or occupied anything. And the "longstanding distinction" between physical appropriations of property and regulations that restrict the use of property "makes it inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002) (footnote omitted).

circumstance when *no* productive or economically beneficial use of land is permitted." *Tahoe-Sierra*, 535 U.S. at 330 (quoting *Lucas*, 505 U.S. at 1017). Assuming *arguendo* that the categorical takings doctrine applies to intellectual property rights, *see A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1151-52 (Fed. Cir. 2014), Eight Mile cannot show a complete deprivation of economic value in its property.

To assess the economic impact of a government action, a court must first "define the unit of property 'whose value is to furnish the denominator of the fraction.'" *Murr v. Wisconsin*, 582 U.S. 383, 395 (2017) (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987)). Eight Mile contends that the denominator is its accrued infringement claims because they are "separate and distinct from any underlying copyright." Pls.' Mem. at 70-71. But takings jurisprudence "forecloses reliance on such legalistic distinctions within a bundle of property rights." *Keystone*, 480 U.S. at 500-01 ("support estate," which constituted the underground coal necessary to support surface land, was "part of the entire bundle of rights possessed by the owner of either the coal or the surface" and not the proper denominator, even though it was considered a "separate interest" under state law that could be "conveyed apart" from the mineral or surface estates); *Penn Cent.*, 438 U.S. at 130 ("'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated."). Eight Mile acknowledges that the right to bring an infringement claim is intertwined with the value of the underlying copyright. *See* Pls.' Mem. at 73 (asserting that infringement claims are necessary to "vindicate [owners'] infringed copyrights"); *id.* at 74 (discussing infringement claims as part of the "right to exclude" others from exploiting works). Infringement claims, then, are merely one stick in the bundle of rights accompanying a copyright. *See, e.g.*, *Andrus v. Allard*, 444 U.S. 51, 65-66 (1979) (prohibition on sale of bird feathers was not

a taking as it constituted only "the destruction of one 'strand' of the bundle [of rights]"). Eight Mile has not attempted to demonstrate that § 115(d)(10)—which applies only to mechanical rights against certain DMPs during a limited time frame—leaves its underlying copyrights valueless.

But even if the infringement claims were the denominator, § 115(d)(10) still does not extinguish all of the economic value of those claims. Section 115(d)(10) does not bar Eight Mile from bringing a claim or preclude damages for past infringement. Rather, Eight Mile is free to maintain its cause of action and recover statutory royalties (assuming Spotify's compliance with § 115(d)(10)(B)), which certainly has some economic value. *See, e.g.*, *Lucas*, 505 U.S. at 1027 (*per se* taking occurs where "regulation . . . deprives land of *all* economically beneficial use" (emphasis added)). Eight Mile argues that the statutory royalties are effectively valueless because the costs of pursuing an infringement claim would exceed any recovery. *See* Pls.' Mem. at 72. But this conclusion rests on its expert's comparison of the projected costs of litigating an infringement claim versus the statutory royalties recoverable by a single songwriter, assuming a "standard" agreement between a music publisher and two songwriters, for a single track streamed 10 million times. *See* Pls.' Statement of Undisputed Material Facts ¶ 168, ECF No. 353; *see also* Decl. of Bob Kohn ¶¶ 220-21, ECF No. 355-1. However, Eight Mile's claims here are based on 242 works, not a single work; Eight Mile is a music publisher, not a songwriter; and Eight Mile alleges that Spotify streamed the tracks billions, not millions, of times without authorization. *See* Pls.' Mem. at 2, 64. Thus, Eight Mile has not plausibly explained, even on its own terms, why § 115(d)(10) renders *its* infringement claims economically valueless.

ii. For similar reasons, Eight Mile cannot show that § 115(d)(10) effects a regulatory taking under the *Penn Central* framework, which is an "'ad hoc' factual inquiry" "considering factors such as the economic impact of the regulation, its interference with reasonable investment-backed

expectations, and the character of the government action." *Horne*, 576 U.S. at 360.

As discussed, the proper denominator for assessing the economic impact of § 115(d)(10) is Eight Mile's copyright in the works at issue, not just its infringement claims. Because Eight Mile retains all of the other sticks in the bundle of its copyrights—including all other exclusive rights, the ability to recover unpaid statutory royalties, and the ability to seek all remedies for infringement by any person other than a DMP complying with the requirements of § 115(d)(10)(B)—the economic impact of § 115(d)(10) is insufficient to constitute a taking. *See, e.g.*, *Andrus*, 444 U.S. at 66 (no taking occurred where regulation "prevent[ed] the most profitable use" of property, but where owners retained rights for other uses).

Section 115(d)(10) also does not interfere with reasonable investment-backed expectations. At most, it denies Eight Mile "'the ability to exploit a property interest'" that was previously available, which is "not sufficient to raise takings concerns." *See Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 456-57 (6th Cir. 2009) (quoting *Penn Cent.*, 438 U.S. at 130). Moreover, it was entirely foreseeable that Congress may choose, as it has done repeatedly in the past, to alter the copyright law to reflect new technological developments. *Sony*, 464 U.S. at 430-31 (recognizing that Congress has long "fashioned . . . new rules" for copyright law "in response to significant changes in technology"); *see also Connolly*, 475 U.S. at 227 ("Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." (citation omitted)).

Finally, the character of the government action is inconsistent with a taking. As discussed, § 115(d)(10) adjusts the remedial scheme for certain acts of copyright infringement in order to limit unnecessary litigation and incentivize DMPs to identify owners and pay royalties in order to increase royalty payments to copyright owners. *See Connolly*, 475 U.S. at 225 (no taking occurred

where legislation imposing new financial obligations on employers "arises from a public program that adjusts the benefits and burdens of economic life to promote the common good"); *Tenn. Scrap Recyclers*, 556 F.3d at 457 (no taking occurred where regulation "does not deny [owners] all incidents of ownership" and was promulgated for a "legitimate public purpose").

Eight Mile suggests that § 115(d)(10) is an extraordinary elimination of its "right to exclude" others from exploiting its copyrighted works, *see* Pls.' Mem. at 73-74, but that overstates the case. Since the Copyright Act of 1909, Congress has enabled parties to obtain compulsory mechanical licenses for musical works *without* the consent of owners. In other words, Congress has never conferred on owners an unrestricted right to exclude others from reproducing and distributing phonorecords of musical works. This limited right to exclude is fundamentally dissimilar to the rights attendant to ownership of real property at issue in the cases on which Eight Mile relies. *See Irving*, 481 U.S. at 716 (statute requiring escheatment of small parcels "amounts to virtually the abrogation" of the "right to pass on property," which "has been part of the Anglo-American legal system since feudal times"); *Kaiser Aetna*, 444 U.S. at 180 (regulation requiring owner to open property to the public would "result in an actual physical invasion" of property). And § 115(d)(10) does not eliminate Eight Mile's limited right to exclude, as it only applies for a limited time frame with respect to DMPs who have complied with the requirements of § 115(d)(10)(B) and Eight Mile still can seek unpaid statutory royalties from those DMPs or all available remedies against any other infringers.

## <u>CONCLUSION</u>

For the foregoing reasons, if the Court reaches the issue, the Court should reject Eight Mile's constitutional challenge.

Dated: December 12, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Federal Programs Branch

*<u>/s/ Chetan A. Patil</u>*
CHETAN A. PATIL
DC Bar No. 999948
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-4968
Fax: (202) 616-8470
Email: chetan.patil@usdoj.gov

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

MICHAEL C. TACKEFF, B.P.R.# 036953
Assistant United States Attorney
719 Church Street, Suite 3300
Nashville, TN 37203
Email: Michael.Tackeff@usdoj.gov

*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on December 12, 2023, with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system.


Aubrey B. Harwell III
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573
tharwell@nealharwell.com

Marie T. Scott (BPR # 032771)
FISHER & PHILLIPS LLP
424 Church Street, Suite 1700
Nashville, TN 37219
mtscott@fisherphillips.com

Matthew D. Ingber
Rory K. Schneider
Allison Aviki
Alina Artunian
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
mingber@mayerbrown.com
rschneider@mayerbrown.com
aaviki@mayerbrown.com
aartunian@mayerbrown.com

Andrew J. Pincus
Archis A. Parasharami
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3220
apincus@mayerbrown.com
aparasharami@mayerbrown.com

Carey R. Ramos
Rachel E. Epstein
Cory Struble
Mario O. Gazzola
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 895-2500
careyramos@quinnemanuel.com
corystruble@quinnemanuel.com
rachelepstein@quinnemanuel.com
mariogazzola@quinnemanuel.com

Allison L. Stillman
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
alli.Stillman@lw.com


*Attorneys for Defendant and Third-Party Plaintiff Spotify USA Inc.*

Richard S. Busch
Andrew H. “Drew” Davis
David M. Niemierzycki
KING & BALLOW
26 Century Boulevard, Suite NT700
Nashville, TN 37214
rbusch@kingballow.com
ddavis@kingballow.com
dniemierzycki@kingballow.com

James F. Blumstein
131 21st Avenue South
Nashville, TN 37203
James.blumstein@vanderbilt.edu

*Of Counsel*

*Attorneys for Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC*

Jay S. Bowen
Lauren Kilgore
Jacob T. Clabo
SHACKELFORD, BOWEN, MCKINLEY & NORTON, LLP
1 Music Circle South, Suite 300
Nashville, TN 37203
P: (615) 329-4440
F: (615) 329-4485
jclabo@shackelford.law
lkilgore@shackelford.law
jclabo@shackelford.law

Chris M. LaRocco
Matias Gallego-Manzano
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000
chris.larocco@bclplaw.com
matias.gallego-manzano@bclplaw.com

*Attorneys for Defendant Harry Fox Agency, LLC*

Karl M. Braun, BPR #22371
HALL BOOTH SMITH, P.C.
Fifth Third Center
424 Church Street, Suite 2950
Nashville, Tennessee 37219
kbraun@hallboothsmith.com
(615) 313-9911 (Telephone)

Brian D. Caplan
Robert W. Clarida
Julie B. Wlodinguer
REITLER KAILAS & ROSENBLATT LLP
885 Third Avenue
New York, New York 10022
Telephone: (212) 209-3050
bcaplan@reitlerlaw.com
rclarida@reitlerlaw.com
jwlodinguer@reitlerlaw.com

*Attorneys for Third-Party Defendant Kobalt Music Publishing America, Inc.*

*/s/ Chetan A. Patil*